UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JOHN SIGLER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | No. CV 18-00683 ODW (JCx)<br><br>DECLARATION OF MICHAEL S. MARQUIS |

Declaration of Michael S. Marquis

I, Michael S. Marquis, declare as follows:

1. I am the Director, Freedom of Information/Privacy Acts Division, Office of the Secretary ("OS"), U.S. Department of Health and Human Services ("HHS" or "the Department"). In this capacity, I am the Freedom of Information Officer for OS. I have held this position with the Department since 2014.

2. My duties include responding to requests under the Freedom of Information Act, 5 U.S.C. § 522 ("FOIA"), for OS records. My duties include managing searches for OS records in response to requests under the FOIA, and determining whether to release or withhold records or portions of Department records in accordance with the FOIA and the HHS regulations implementing the FOIA.

3. I make this declaration based upon my personal knowledge and information available to me in my official capacity.

4. The purpose of this declaration is to explain the Department's processing and release determinations as to Department records at issue in the above-captioned litigation.

5. HHS FOIA administration is decentralized and consists of 11 Operating Divisions ("OpDivs") and the Office of the Secretary ("OS"), all of which receive and respond to FOIA requests. ASPA, which is an OS Staff Division, responds to initial FOIA requests for records maintained by all OS Staff Divisions; ensures consultation with the HHS Office of General Counsel ("OGC") and provides review and concurrence on all departmental appeal decisions; establishes departmental FOIA policies; and monitors FOIA implementation throughout the Department.

May 10, 2017 Request

6. The ASPA Freedom of Information / Privacy Acts Division ("FOIA Office") handled the May 10, 2017 FOIA request submitted by John Sigler ("Plaintiff") at issue in this case.

7. The FOIA Office received a FOIA request from Plaintiff dated May 10, 2017 via electronic mail ("e-mail").

8. That FOIA request sought the following records:

a. All correspondences sent out by the Office of Civil Rights in their processing of HIPAA complaints numbered 16-247377 and 17-158405.

b. Correspondences sent to and received from HealthPointe Medical Group

9. HHS's formal acknowledgement letter assigning Plaintiff's request tracking number 2017-0737-FOIA-OS was sent to Plaintiff on May 11, 2017. *See* HHS Exhibit 1.

10. Upon receiving and reviewing the Plaintiff's FOIA request and the records being sought, the FOIA Office forwarded the request to the Office for Civil Rights (OCR) on May 16, 2017 for a search of records responsive to request number 2017-0737-FOIA-OS.

11. OCR enforces federal civil rights laws, conscience and religious freedom laws, the Health Insurance Portability and Accountability Act (HIPAA), Privacy, Security, and Breach Notification Rules, and the Patient Safety Act and Rule.

12. OCR maintains records having to do with complaints, reviews, and correspondence in the Program Information Management System (PIMS). PIMS is the OCR electronic system containing the complaint files and log composed of complaint allegations, information gathered during the complaint investigation, findings and results of the investigation, and correspondence relating to the investigation, as well as status information for all complaints. PIMS is organized by OCR transaction number. Because the Plaintiff requested correspondence related to two HIPAA complaints submitted to OCR, it was reasonably likely that all responsive records would be located in a search of PIMS.

13. OCR conducted searches of PIMS for any and all original records responsive to request number 2017-0737-FOIA-OS using the transaction numbers provided by the requester: 16-247377 and 17-158405.

14. On May 16, 2017, OCR provided 24 pages of responsive records to the FOIA Office.

15. Via letter dated June 22, 2017, HHS released 21 pages in their entirety, portions of 2 pages, and withheld one page in its entirety. Withholdings were made pursuant to Exemptions 5, 6, and 7(C) of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C). *See* HHS Exhibit 2.

16. Plaintiff appealed the HHS release determination for request number 2017-0737-FOIA-OS via e-mail dated September 21, 2017.

17. Via letter dated October 4, 2017, HHS acknowledged the appeal and assigned it tracking number 2017-00085-A-OS. *See* HHS Exhibit 3.

<u>September 21, 2017 Request</u>

18. Via e-mail dated September 21, 2017, the Plaintiff resubmitted the original FOIA request.

19. Via letter dated October 5, 2017, HHS acknowledged this request and assigned it tracking number 2017-01205-FOIA-OS. *See* HHS Exhibit 4.

20. Via letter dated January 12, 2018, HHS determined this request was duplicative of the May 10, 2017 request and provided that response to the Plaintiff. *See* HHS Exhibit 5.

21. On January 12. 2018, Plaintiff replied to the e-mail transmitting the duplicative request letter, in which he explained to HHS that it had only provided records associated to transaction number 16-247377.

22. Via e-mail dated January 17, 2018, HHS informed Plaintiff that it had requested the additional records responsive to the request for correspondence involving transaction number 17-158405 and that OCR was providing those records to the FOIA Office for processing. *See* HHS Exhibit 6.

23. OCR informed the FOIA Office that at the time of the original search the OCR investigation was still ongoing for transaction number 17-158405 and therefore records related to that transaction number were not provided. OCR conducted an additional search for transaction number 17-158405 in PIMS.

24. On January 23, 2018, OCR provided responsive records from PIMS regarding OCR transaction number 17-158405 to the FOIA Office.

25. After review and processing of these records, HHS provided 308 pages to the Plaintiff on February 14, 2018. Although this letter specifically responded to request number 2017-01205-FOIA-OS, the records provided would also have responded to the Plaintiff's administrative appeal. *See* HHS Exhibit 7. HHS released 190 pages in their entirety, portions of 3 pages, and withheld 115 page in its entirety. Withholdings were made pursuant to Exemptions 4, 5, 6, 7(C) and 7(E) of the FOIA, 5 U.S.C. § 552(b)(4), (b)(5), (b)(6), (b)(7)(C), (b)(7)(E).

26. Via letter dated October 31, 2018, HHS provided a supplemental release of 308 pages of records responsive to transaction numbers 16-247377 and 17-158405. HHS released 193 pages in their entirety, portions of 8 pages, and withheld 107 page in its entirety. Withholdings were made pursuant to Exemptions 4, 5, 6, 7(C) and 7(E) of the FOIA, 5 U.S.C. § 552(b)(4), (b)(5), (b)(6), (b)(7)(C), (b)(7)(E). *See* HHS Exhibit 8.

27. Via letter dated November 5, 2018, HHS provided a final supplemental release of records responsive to transaction number 17-158405, which removed the Exemption 4 withholdings from 20 pages and recoded one previous withholding as Exemptions 6 and 7(C).

28. Upon receiving an automated error message in response to the release emailed to Plaintiff on November 5, 2018, HHS mailed on November 6, 2018 via overnight delivery, the final supplemental release. *See* HHS Exhibit 9.

<u>Withholdings</u>

29. A *Vaughn* index detailing the withholdings of OCR records at issue in this case is attached hereto as HHS Exhibit 10.

30. HHS withheld certain materials under Exemptions 4, 5, 6, 7(C), and 7(E).

31. Exemption 4 to the FOIA, 5 U.S.C. § 552(b)(4), exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

32. The term "commercial" as used in Exemption 4 to the FOIA is given its ordinary meaning and includes information where the originating party has a commercial interest in information submitted to an agency. With respect to the material withheld under Exemption 4 to the FOIA, I determined that 21 pages are commercial because they are internal policies of the covered entity.

33. The term "person" as used in Exemption 4 to the FOIA has been broadly interpreted to include a wide range of entities, including corporations and non-profit organizations. I determined that the affected covered entity are "persons" such that the 21 pages were "obtained from a person" under Exemption 4 to the FOIA.

34. When records are submitted to the government voluntarily, rather than pursuant to legal mandate of the agency, the test for "confidentiality" under Exemption 4 in this jurisdiction is whether the information is of a kind that the provider would not customarily release to the public. With respect to the material withheld under Exemption 4 to the FOIA, I determined that the 21 pages of internal policies of the covered entity are not available to the public.

35. Exemption 5 to the FOIA, 5 U.S.C. § 552(b)(5), exempts from disclosure: "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The exemption applies to documents that are normally privileged in the civil litigation context. Consequently, Exemption 5 permits the withholding of all or portions of any documents that are subject to the deliberative process

privilege, the attorney-client privilege, the work-product doctrine, and the common interest doctrine, among other privileges available in the civil litigation context.

36. In this case, the deliberative process privilege was invoked to withhold portions of one document. The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, opinions, advisory guidance, and other non-factual information prepared as part of an agency decision-making process. The purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions. Thus, pre-decisional material comprising and reflecting internal deliberation may properly be withheld as release would have a chilling effect on producing quality decisions because agency personnel would be less candid in developing and sharing such opinions, recommendations or viewpoints. If agency personnel knew that their preliminary opinions, evaluations, thought processes, and comments would be released to the public, they would be more circumspect in what they put in writing, and thereby impede candid discussion and development of the issues leading to a decision. Additionally, the release of such internal deliberation and advisory material only serves to confuse the public, as the information reflects non-final policy and release positions related to actual records releases.

37. I determined that Exemption 5 should be applied to protect a predecisional, deliberative, intra-agency discussion of how to handle a certain OCR complaint. The deliberative information withheld pertains to communications between OCR employees and an OCR contractor regarding the handling and status of a complaint and interpretations of what that status means. Release of the withheld material would compromise the agency's deliberative process in investigating and considering information in civil rights complaint investigations.

38. Exemption 6 to the FOIA, 5 U.S.C. § 552(b)(6), protects information about individuals in personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. In this case, Exemption 6 was invoked with respect to personal information including names and email addresses of officials of the covered entity. The disclosure of the withheld information would constitute a clearly unwarranted invasion of personal privacy and/or subject these individuals to harassment. Release of this information does not shed light on how HHS performs its mission.

39. Exemption 7 of the FOIA protects information compiled for law enforcement purposes. In this case, Exemption 7(C) and 7(E) to the FOIA, 5 U.S.C. § 552(b)(7)(C), (b)(7)(E). Exemption 7(C) protects from disclosure records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. Exemption 7(E) protects from disclosure records or information complied for law enforcement purposes that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

40. Exemption 7(C) was invoked with respect to personal information including names and work email addresses of officials of the covered entity who provided information to OCR. The disclosure of the withheld information could reasonably be expected to constitute an unwarranted invasion of personal privacy and/or subject these individuals to harassment. Release of this information does not shed light on how HHS performs its mission.

41. Exemption 7(E) was invoked with respect to the procedures and techniques that OCR used during the investigation of Plaintiff's HIPAA complaints. Failure to protect these

techniques and procedures would allow those entities being investigated to circumvent the law by revealing the types of questions and information that OCR uses in an investigation.

42. All reasonably segregable non-exempt information was segregated and released.

I declare under penalty of perjury that the foregoing to true and correct, to the best of my information and belief. 28 U.S.C. § 1746. Executed this 13th day of November, 2018.

Michael S. Marquis