12/9/16 2:16 PM: (b)(6);(b)(7)(C)
(b)(6);(b)(7)(C)

12/19/16 10:26 AM: Received call from C. He said he got our letter and he still does not have his records. I told him we just mailed the TA letter to CE at the same time we mailed the one to him, so it may take them a few days to comply. He said he has been waiting for these records since July. I told him I was sorry for the inconvenience, but they most likely would take a few days or weeks to comply with the TA letter. I told him if he did not have his records by early January to let us know and we would investigate the matter. He said he had some other records they have yet to provide and asked if he should file a complaint on those. I told him that if they were not addressed in his initial complaint, he could file another complaint if he felt they were not in compliance with HIPAA. He thanked me and said he would be in touch. I thanked him and we ended the call.

1/19/17 10:34 AM: Received call from C. He said he still does not have his records and he wants to know what we can do about it. I told him I would note his case file and determine the next steps with management. He said he filed another complaint on January 5 related to additional records he did not receive from CE. I looked the case up and asked if he mentioned the previous complaint. He said he hadn't because it was less than a month from when the closure letters went out in this case. I told him I would note the cases with this information and determine the next steps with management. I thanked him for calling and we ended the call.



**EXHBIIT 10-4**

DEPARTMENT OF HEALTH & HUMAN SERVICES OFFICE OF THE SECRETARY

Voice - (415) 437-8310, (800) 368-1019
TDD - (415) 437-8311, (800) 537-7697
(FAX) - (415) 437-8329
http://www.hhs.gov/ocr/

Office for Civil Rights, Pacific Region
90 7th Street, Suite 4-100
San Francisco, California 94103

December 15, 2016

Mr. John Sigler
13129 Stern Avenue
La Mirada, CA 90638

Re: OCR Transaction Number: 16-247377

Dear Mr. Sigler:

On August 25, 2016, the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received your complaint alleging that HealthPointe Medical Group (HMG), the covered entity, has violated the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules). Specifically, you allege that, in June 2016 through July 2016, HMG denied your verbal and written requests for copies of your protected health information. This allegation could reflect a violation of 45 C.F.R. § 164.524.

OCR enforces the Privacy, Security, and Breach Notification Rules, and also Federal civil rights laws which prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and under certain circumstances, sex and religion.

The Privacy Rule provides that an individual or an individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right to access the individual's protected health information (PHI), maintained by a covered entity in a designated record set, for as long as the PHI is maintained in the designated record set (e.g., medical or billing records). 45 C.F.R. §§ 164.502(g) and 164.524 (a)(1). A covered entity must act on the request for access no later than 30 days after receipt of such a request and, in certain circumstances, no later than 60 days after the receipt of such a request.

An individual also has a right to direct the covered entity to transmit the PHI about the individual directly to another designated person or entity. The request to direct the PHI to another person or entity must be in writing, signed by the individual, and clearly identify the person or entity being designated to receive the PHI, and where to send the PHI. A covered entity may accept an electronic copy of a signed request (e.g., PDF), as well as an electronically executed request (e.g., via a secure web portal) that includes an electronic signature.

The right of an individual to have PHI sent directly to a third party is an extension of the individual's right of access; consequently, all of the provisions that apply when an individual obtains access to his/her PHI apply when the individual directs a covered entity to send the PHI to a third party. As a result:

- This right applies to PHI in a designated record set;

- Covered entities must take action within 30 days (or 60 days if an extension is applicable) of the request;
- Covered entities must provide the PHI in the form and format and manner of access requested by the individual if it is "readily producible" in that manner; and
- The individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4).

See 45 C.F.R. § 164.524(c).

Individuals' rights under the HIPAA Privacy Rule to access PHI about themselves extends to PHI in a designated record set maintained by a business associate on behalf of a covered entity. Thus, if an individual submits a request for access to PHI, the covered entity is responsible for providing the individual with access not only to the PHI it holds but also to the PHI held by one or more of its business associates. However, if the same PHI that is the subject of an access request is maintained in both the designated record set of the covered entity and the designated record set of the business associate, the PHI need only be produced once in response to the request for access. See 45 C.F.R. § 164.524(c)(1).

With respect to PHI in a designated record set maintained by a business associate, the business associate agreement between the covered entity and the business associate will govern whether the business associate will provide access directly to the individual or will provide the PHI that is the subject of the individual's access request to the covered entity for the covered entity to then provide access to the individual. However, regardless of how and to what extent a business associate supports or fulfills a covered entity's obligation to provide access to an individual, a request for access still must be acted upon within 30 days (or 60 days if an extension is applicable) of receipt of the request by either the covered entity, or by a business associate if the request was made directly to the business associate because the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate. Further, all of the access requirements that apply with respect to PHI held by the covered entity (e.g., the individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4)) apply with respect to PHI held by the business associate.

An individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right both to receive a copy of PHI about the individual in the designated record set(s) maintained by a covered entity and its business associates, and to direct the covered entity, or its business associate if the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate, to transmit a copy of the PHI to another person or entity, upon request, consistent with the scope of such representation and the requirements of 45 C.F.R. § 164.524. See 45 C.F.R. § 164.502(g). The same requirements for fulfilling an individual's request to send the individual's PHI to a third party (e.g., with respect to timeliness, form and format, bases for denial, fee limitations, etc.) also apply to requests made by an individual's personal representative.

We have carefully reviewed your complaint against HMG and have determined to resolve this matter informally through the provision of technical assistance to HMG. If you continue to experience the issues you described in your complaint, please contact the OCR Investigator named below. Should OCR receive a similar allegation of noncompliance against HMG in the future, OCR may initiate a formal investigation of that matter.

For your informational purposes, OCR encourages you to review its technical assistance materials regarding individuals' right to access their protected health information under 45 C.F.R. § 164.524. Those materials are located at OCR's website at: http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html.

Based on the foregoing, OCR is closing this case without further action, effective the date of this letter. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Lesley Morgan, Investigator, at (206) 615-2283 (Voice) or (206) 615-2296 (TDD).

Sincerely,

Michael Leoz
Regional Manager

**DEPARTMENT OF HEALTH & HUMAN SERVICES** **OFFICE OF THE SECRETARY**

Voice - (415) 437-8310, (800) 368-1019
TDD - (415) 437-8311, (800) 537-7697
(FAX) - (415) 437-8329
http://www.hhs.gov/ocr/

**Office for Civil Rights, Pacific Region**
**90 7th Street, Suite 4-100**
**San Francisco, California 94103**

December 15, 2016

HealthPointe Medical Group
Attn: (b)(6);(b)(7)(C)
16702 Valley View Avenue
La Mirada, CA 90638

Re: OCR Transaction Number: 16-247377

(b)(6);(b)(7)(C)

On August 17, 2016, the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received a complaint from John Sigler (Complainant) alleging that HealthPointe Medical Group (HMG), the covered entity, has violated the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules). Specifically, Complainant alleges that, from June to July 2016, HMG denied Complainant's verbal and written requests for copies of his protected health information. This allegation could reflect a violation of 45 C.F.R. § 164.524.

OCR enforces the Privacy, Security, and Breach Notification Rules, and also Federal civil rights laws which prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and under certain circumstances, sex and religion.

The Privacy Rule provides that an individual or an individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right to access the individual's protected health information (PHI), maintained by a covered entity in a designated record set, for as long as the PHI is maintained in the designated record set (e.g., medical or billing records). 45 C.F.R. §§ 164.502(g) and 164.524 (a)(1). A covered entity must act on the request for access no later than 30 days after receipt of such a request and, in certain circumstances, no later than 60 days after the receipt of such a request.

An individual also has a right to direct the covered entity to transmit the PHI about the individual directly to another designated person or entity. The request to direct the PHI to another person or entity must be in writing, signed by the individual, and clearly identify the person or entity being designated to receive the PHI, and where to send the PHI. A covered entity may accept an electronic copy of a signed request (e.g., PDF), as well as an electronically executed request (e.g., via a secure web portal) that includes an electronic signature.

The right of an individual to have PHI sent directly to a third party is an extension of the individual's right of access; consequently, all of the provisions that apply when an individual obtains access to

his/her PHI apply when the individual directs a covered entity to send the PHI to a third party. As a result:

- This right applies to PHI in a designated record set;
- Covered entities must take action within 30 days (or 60 days if an extension is applicable) of the request;
- Covered entities must provide the PHI in the form and format and manner of access requested by the individual if it is "readily producible" in that manner; and
- The individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4).

See 45 C.F.R. § 164.524(c).

Individuals' rights under the HIPAA Privacy Rule to access PHI about themselves extends to PHI in a designated record set maintained by a business associate on behalf of a covered entity. Thus, if an individual submits a request for access to PHI, the covered entity is responsible for providing the individual with access not only to the PHI it holds but also to the PHI held by one or more of its business associates. However, if the same PHI that is the subject of an access request is maintained in both the designated record set of the covered entity and the designated record set of the business associate, the PHI need only be produced once in response to the request for access. See 45 C.F.R. § 164.524(c)(1).

With respect to PHI in a designated record set maintained by a business associate, the business associate agreement between the covered entity and the business associate will govern whether the business associate will provide access directly to the individual or will provide the PHI that is the subject of the individual's access request to the covered entity for the covered entity to then provide access to the individual. However, regardless of how and to what extent a business associate supports or fulfills a covered entity's obligation to provide access to an individual, a request for access still must be acted upon within 30 days (or 60 days if an extension is applicable) of receipt of the request by either the covered entity, or by a business associate if the request was made directly to the business associate because the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate. Further, all of the access requirements that apply with respect to PHI held by the covered entity (e.g., the individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4)) apply with respect to PHI held by the business associate.

An individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right both to receive a copy of PHI about the individual in the designated record set(s) maintained by a covered entity and its business associates, and to direct the covered entity, or its business associate if the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate, to transmit a copy of the PHI to another person or entity, upon request, consistent with the scope of such representation and the requirements of 45 C.F.R. § 164.524. See 45 C.F.R. § 164.502(g). The same requirements for fulfilling an individual's request to send the individual's PHI to a third party (e.g., with respect to timeliness, form and format, bases for denial, fee limitations, etc.) also apply to requests made by an individual's personal representative.

Pursuant to its authority under 45 C.F.R. §§ 160.304(a) and (b), OCR has determined to resolve this matter informally through the provision of technical assistance to CH. To that end, please review the OCR website for material explaining the Privacy Rule provisions related to Access to Medical Records here: http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html.

You are encouraged to review these materials closely and to share them with your staff as part of the Health Insurance Portability and Accountability Act (HIPAA) training you provide to your workforce. You are also encouraged to assess and determine whether there may have been any noncompliance as alleged by the complainant in this matter, and, if so, to take the steps necessary to ensure such noncompliance does not occur in the future. In addition, OCR encourages you to review the facts of this individual request for access and provide the requested access swiftly if the request meets the requirements of the Privacy Rule. Should OCR receive a similar allegation of noncompliance against your organization in the future, OCR may initiate a formal investigation of that matter. In addition, please note that, after a period of six months has passed, OCR may initiate and conduct a compliance review of your organization related to your organization's compliance with the Access provisions of the Privacy Rule.

Based on the foregoing, OCR is closing this case without further action, effective the date of this letter. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Lesley Morgan, Investigator, at (206) 615-2283 (Voice) or (206) 615-2296 (TDD).

Sincerely,

Michael Leoz
Regional Manager



**EXHBIIT 10-10**

US Code 45 CFR Section 164.524 (Health Insurance Portability and Accountability Act, HIPAA), clearly states that: â€œExcept as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set."

In addition, under US Code 45 CFR Section 160.103 Definitions., health information is defined as: any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

Based upon the above Federal Regulations, as the patient I am entitled to copies of any information relating to the provision of my health care, which includes any and all written correspondence sent to my health care provider by my insurance carrier which authorizes treatment.

In the Nov. 2015 timeframe there was a dispute as to the timeliness of "authorization to treat" sent to my medical care provider HealthPointe Medical Group from my workers compensation insurance carrier. In June 2016 I became aware of information that could settle the question as to whether the WC carrier violated California law in not providing timely authorization, or whether HealthPointe Medical Group was negligent in processing the authorization in a timely fashion. A key piece of evidence in this determination was correspondences received by HealthPointe from my WC carrier authorizing provision of treatment.

HealthPointe refused verbal requests for these correspondences so on July 25, 2016 a Subpoena Duces Tecum (attached as file HealthPointeSubpoena-served.pdf), authorized by the California Workers Compensation Appeals Board was served on HealthPointe Medical Group's Agent for Service of process. While the subpoena asks for several items, Item 1 which states "All emails, faxes, or US postal letters received by HealthPointe Med Group La Mirada relating to authorization of, or medical treatment for, John Sigler from Nov. 1, 2015 to Dec. 31, 2015" is clearly PROTECTED HEALTH INFORMATION, which I am entitled to.

Copies of this subpoena were emailed to HealthPointe and ignored, and personal service was refused at the local clinic in La Mirada where I receive treatment and where the correspondences were received. The La Mirada employees stated the subpoena had to be served on their office in Temecula California, so on July 14 a 140 mile round trip was made to HealthPointe's Temecula office where employees refused to accept the subpoena. The entire conversation was recorded. Failing in both these attempts, the subpoena was served on HealthPointe Medical Group's Agent for service of process, Kevin Lawrence on July 25, 2016, who is required under California to accept any subpoena for HealthPointe Medical Group. Healthpointe has since refused to respond to the subpoena, including Item 1 which specifically asks for Protected Health Information covered by HIPAA. HealthPointe has also ignored all other efforts and requests to obtain copies of the stated correspondences. I am asking that HealthPointe be ordered to produce copies of all requested correspondences and that penalties and sanction be imposed upon HealthPointe for violating HIPAA regulations.

Since serving the subpoena, the quality of healthcare from HealthPointe has diminished, and I believe that in retaliation for my medical record demands under HIPAA, on 8/8/2016 HealthPointe provided notice that in 30 days they would stop providing me any medical treatment.



**EXHBIIT 10-11**

**State of California**
**Department of Industrial Relations**
**Division Of Workers' Compensation**

# WORKER'S COMPENSATION APPEALS BOARD

Case No. ADJ2498007

(IF APPLICATION HAS BEEN FILED, CASE NUMBER MUST BE INDICATED REGARDLESS OF DATE OF INJURY)

JOHN SIGLER

Claimant/Applicant

vs.

AEROJET ROCKETDYNE, INC.

Employer/Insurance Carrier/Defendant

## SUBPOENA DUCES TECUM

(When records are mailed, identify them by using above case number or attaching a copy of a subpoena)

Where no application has been filed for injuries on or after January 1, 1990 and before January 1, 1994, subpoena will be valid without case number, but subpoena must be served on claimant and employer and/or insurance carrier.

**NO PERSONAL APPEARANCE NECESSARY** - See instructions below*

*People of the State of California Send Greetings to:* Custodian of Records, HealthPointe Medical Group

We COMMAND YOU to appear before: The Claimant / Applicant in Pro Per

at 13129 Stern Ave. La Mirada, CA. 90638

On the 25 day of July 2016, at 09:00 o'clock A M. to testify in the above-entitled matter and to bring with you and produce the following described documents, papers, books, records:

1) All emails, faxes, or US postal letters received by HealthPointe Med Group La Mirada relating to authorization of, or medical treatment for John Sigler from Nov. 1, 2015 to Dec. 31, 2015.
2) All internal logs, case management notes or any other documentation relating to authorization or attempts to obtain authorization to treat John Sigler from Nov. 1, 2015 to Dec. 31, 2015.
3) All incoming fax logs produced or maintained by HealthPointe or their fax communication software for all faxes received at, or directed to HealthPointe's La Mirada facility for the time period of November 19, 2015 to December 12, 2015. Fax logs will be accepted in hardcopy or in electronic format.
4) All logs or records of incoming US Postal communications received at HealthPointe's La Mirada facility for the time period of November 19, 2015 to December 31, 2015.

(Do not produce X-rays unless specifically mentioned above.)

For failure to attend as required, you may be deemed guilty of contempt and liability to pay to the parties aggrieved all losses and damages sustained thereby and forfeit one hundred dollars in addition thereto.

This subpoena is issued at the request of the person making the declaration on the reverse hereof, or on the copy which is served herewith.

Date 7/13/16

WORKERS' COMPENSATION APPEALS BOARD
OF THE STATE OF CALIFORNIA

Secretary, Assistant Secretary, Workers' Compensation Judge




***FOR INJURIES OCCURRING ON OR AFTER JANUARY 1,1990 AND BEFORE JANUARY 1, 1994:**

If no Application for Adjudication of Claim has been filed, a declaration under penalty of perjury that the Employee's Claim for Worker's Compensation Benefits (Form DWC-1) has been filed pursuant to Labor Code Section 5401 must be executed properly.

**SEE REVERSE SIDE**
**[SUBPOENA INVALID WITHOUT DECLARATION]**

You may fully comply with this subpoena by mailing the records described (or authenticated copies, Evid. Code 1561) to the person and place stated above within ten (10) days of the date if service of this subpoena. This subpoena does not apply to any member of the Highway Patrol, Sheriffs Office or city Police Department unless accompanied by notice from this Board that deposit of the witness fee has been made in accordance with Government code 68097.2, et seq.

## DECLARATION FOR SUBPOENA DUCES TECUM

Case No. ADJ2498007

**STATE OF CALIFORNIA**, County of Los Angeles

The undersigned states:
That he/she is (one of) the attorney (s) of records/representative (s) for the applicant/defendant in the action captioned on the reverse hereof that Custodian of Records, HealthPointe Medical Group has in his/her possession or under his/her control the documents described on the reverse hereof. That the said documents are material to the issues involved in the case for the following reasons:

On November 19, 2015 a written request was submitted to patient John Sigler's Employer requesting authorization for treatment by HealthPointe provider, DR. Kirshnareddy. HealthPointe claims they did not receive authorization until on or about December 9, 2015. Mr. Sigler's Workers Compensation insurer, ESIS, claims that authorization was sent to HealthPointe on or about November 25, 2015 via fax and USPS, and the delay in treatment was due to negligence by HealthPointe employees. This subpoena seeks to discern the truth as to when authorization was provided to HealthPointe.

**Declaration for Injuries on or After January 1, 1990 and Before January 1,1994**

☐ That an Employee's Claim for Worker's Compensation Benefits (DWC Form 1) has been filed in accordance with Labor Code Section 5401 by the alleged injured worker whose records are sought, or if the worker is deceased, by the dependent (s) of the decedent, and that a true copy of the form filed is attached hereto. *(Check box if applicable and part of declaration below. See instructions on front of subpoena)*

I declare under penalty if perjury that the foregoing is true and correct.

Executed on July 17 ,2016 at La Mirada , California.

[signature] 13129 Stern Ave, La Mirada, CA 90638 714-697-8576

Signature Address Telephone

---

## DECLARATION OF SERVICE

STATE OF CALIFORNIA, County of Los Angeles

I, the undersigned, state that I served the foregoing subpoena by showing the original and delivering a true copy thereof, together with a copy of the Declaration in support thereof, to each of the following named persons, personally, at the date and place set forth opposite each name.

| Name of Person Served | Date | Place |
|---|---|---|
| Isabel Portocarrero for Kevin A. Lawrence Agent for service of process for Healthpointe Medical Group | 7/25/2016 | 28720 Roadside Dr. #231 Agoura Hills, CA. |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 25, 2016, at La Mirada, California.

[signature]
Signature

DIA WCAB 32 (Side 2) (Rev. 06/94)



EXHBIIT 10-13

Secretary of State banner

**Secretary of State Main Website** **Business Programs** **Notary & Authentications** **Elections** **Campaign & Lobbying** **State Archives**

**Business Entities (BE)**

Online Services
- **E-File Statements of Information for Corporations**
- **Business Search**
- **Processing Times**
- **Disclosure Search**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information** (annual/biennial reports)

**Filing Tips**

**Information Requests** (certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**

Customer Alerts
- **Business Identity Theft**
- **Misleading Business Solicitations**

# Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Tuesday, August 23, 2016. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| **Entity Name:** | HEALTHPOINTE MEDICAL GROUP, INC. |
| **Entity Number:** | C1386943 |
| **Date Filed:** | 09/24/1986 |
| **Status:** | ACTIVE |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | PO BOX 4499 |
| **Entity City, State, Zip:** | CERRITOS CA 90703-4499 |
| **Agent for Service of Process:** | KEVIN A LAWRENCE |
| **Agent Address:** | 28720 ROADSIDE DR #231 |
| **Agent City, State, Zip:** | AGOURA HILLS CA 91301 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search** **New Search** **Printer Friendly** **Back to Search Results**

HHS Sigler Production 18-cv-00683--000011

EXHBIIT 10-14

Form Approved: OMB No. 0990-0269.
See OMB Statement on Reverse.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

OFFICE FOR CIVIL RIGHTS (OCR)

# HEALTH INFORMATION PRIVACY COMPLAINT

| YOUR FIRST NAME | YOUR LAST NAME |
|---|---|
| john | Sigler |
| HOME / CELL PHONE (Please include area code) | WORK PHONE (Please include area code) |
| (714) 697-8576 | |

| STREET ADDRESS | CITY |
|---|---|
| 13129 Stern Ave | La Mirada |

| STATE | ZIP | E-MAIL ADDRESS (If available) |
|---|---|---|
| California | 90638 | john@SWS-LLC.com |

**Are you filing this complaint for someone else?** ☐ Yes ☒ No

If Yes, whose health information privacy rights do you believe were violated?

| FIRST NAME | LAST NAME |
|---|---|
| | |

**Who (or what agency or organization, e.g., provider, health plan) do you believe violated your (or someone else's) health information privacy rights or committed another violation of the Privacy Rule?**

PERSON/AGENCY/ORGANIZATION

HealthPointe Medical Group

| STREET ADDRESS | CITY |
|---|---|
| 16702 Valley View Ave | La Mirada |

| STATE | ZIP | PHONE (Please include area code) |
|---|---|---|
| California | 90638 | (800) 956-2663 |

**When do you believe that the violation of health information privacy rights occurred?**

LIST DATE(S)

08/24/2016

**Describe briefly what happened. How and why do you believe your (or someone else's) health information privacy rights were violated, or the privacy rule otherwise was violated? Please be as specific as possible.** (Attach additional pages as needed)

US Code 45 CFR Section 164.524 (Health Insurance Portability and Accountability Act, HIPAA), clearly states that: "Except as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set."

In addition, under US Code 45 CFR Section 160.103 Definitions., health information is defined as: any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or

This field may be truncated due to size limit. See the "Allegation Description" file in the case folder.

**Please sign and date this complaint. You do not need to sign if submitting this form by email because submission by email represents your signature.**

| SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|
| Sigler, john | 08/25/2016 |

Filing a complaint with OCR is voluntary. However, without the information requested above, OCR may be unable to proceed with your complaint. We collect this information under authority of the Privacy Rule issued pursuant to the Health Insurance Portability and Accountability Act of 1996. We will use the information you provide to determine if we have jurisdiction and, if so, how we will process your complaint. Information submitted on this form is treated confidentially and is protected under the provisions of the Privacy Act of 1974. Names or other identifying information about individuals are disclosed when it is necessary for investigation of possible health information privacy violations, for internal systems operations, or for routine uses, which include disclosure of information outside the Department for purposes associated with health information privacy compliance and as permitted by law. It is illegal for a covered entity to intimidate, threaten, coerce, discriminate or retaliate against you for filing this complaint or for taking any other action to enforce your rights under the Privacy Rule. You are not required to use this form. You also may write a letter or submit a complaint electronically with the same information. To submit an electronic complaint, go to OCR's Web site at: **www.hhs.gov/ocr/privacy/hipaa/complaints/index.html**. To mail a complaint see reverse page for OCR Regional addresses.

**The remaining information on this form is optional. Failure to answer these voluntary questions will not affect OCR's decision to process your complaint.**

**Do you need special accommodations for us to communicate with you about this complaint?** (Check all that apply)

☐ Braille ☐ Large Print ☐ Cassette tape ☐ Computer diskette ☐ Electronic mail ☐ TDD

☐ Sign language interpreter (specify language): ______

☐ Foreign language interpreter (specify language): ______ ☐ Other: ______

**If we cannot reach you directly, is there someone we can contact to help us reach you?**

| FIRST NAME | LAST NAME |
|---|---|
| HOME / CELL PHONE (Please include area code) | WORK PHONE (Please include area code) |

| STREET ADDRESS | CITY |
|---|---|

| STATE | ZIP | E-MAIL ADDRESS (If available) |
|---|---|---|

**Have you filed your complaint anywhere else? If so, please provide the following.** (Attach additional pages as needed)

PERSON/AGENCY/ORGANIZATION/ COURT NAME(S)

| DATE(S) FILED | CASE NUMBER(S) (If known) |
|---|---|

**To help us better serve the public, please provide the following information for the person you believe had their health information privacy rights violated (you or the person on whose behalf you are filing).**

ETHNICITY (select one)

☐ Hispanic or Latino

☒ Not Hispanic or Latino

RACE (select one or more)

☐ American Indian or Alaska Native ☐ Asian ☐ Native Hawaiian or Other Pacific Islander

☐ Black or African American ☒ White ☐ Other (specify): ______

PRIMARY LANGUAGE SPOKEN (if other then English) ______

**How did you learn about the Office for Civil Rights?**

☒ HHS Website/Internet Search ☐ Family/Friend/Associate ☐ Religious/Community Org ☒ Lawyer/Legal Org ☐ Phone Directory ☐ Employer

☐ Fed/State/Local Gov ☐ Healthcare Provider/Health Plan ☐ Conference/OCR Brochure ☐ Other (specify): ______

**To mail a complaint, please type or print, and return completed complaint to the OCR Regional Address based on the region where the alleged violation took place. If you need assistance completing this form, contact the appropriate region listed below.**

| | | |
|---|---|---|
| **Region I - CT, ME, MA, NH, RI, VT**<br>Office for Civil Rights, DHHS<br>JFK Federal Building - Room 1875<br>Boston, MA 02203<br>(617) 565-1340; (617) 565-1343 (TDD)<br>(617) 565-3809 FAX | **Region V - IL, IN, MI, MN, OH, WI**<br>Office for Civil Rights, DHHS<br>233 N. Michigan Ave. - Suite 240<br>Chicago, IL 60601<br>(312) 886-2359; (312) 353-5693 (TDD)<br>(312) 886-1807 FAX | **Region IX - AZ, CA, HI, NV, AS, GU, The U.S. Affiliated Pacific Island Jurisdictions**<br>Office for Civil Rights, DHHS<br>90 7th Street, Suite 4-100<br>San Francisco, CA 94103<br>(415) 437-8310; (415) 437-8311 (TDD)<br>(415) 437-8329 FAX |
| **Region II - NJ, NY, PR, VI**<br>Office for Civil Rights, DHHS<br>26 Federal Plaza - Suite 3312<br>New York, NY 10278<br>(212) 264-3313; (212) 264-2355 (TDD)<br>(212) 264-3039 FAX | **Region VI - AR, LA, NM, OK, TX**<br>Office for Civil Rights, DHHS<br>1301 Young Street - Suite 1169<br>Dallas, TX 75202<br>(214) 767-4056; (214) 767-8940 (TDD)<br>(214) 767-0432 FAX | |
| **Region III - DE, DC, MD, PA, VA, WV**<br>Office for Civil Rights, DHHS<br>150 S. Independence Mall West - Suite 372<br>Philadelphia, PA 19106-3499<br>(215) 861-4441; (215) 861-4440 (TDD)<br>(215) 861-4431 FAX | **Region VII - IA, KS, MO, NE**<br>Office for Civil Rights, DHHS<br>601 East 12th Street - Room 248<br>Kansas City, MO 64106<br>(816) 426-7277; (816) 426-7065 (TDD)<br>(816) 426-3686 FAX | |
| **Region IV - AL, FL, GA, KY, MS, NC, SC, TN**<br>Office for Civil Rights, DHHS<br>61 Forsyth Street, SW. - Suite 16T70<br>Atlanta, GA 30303-8909<br>(404) 562-7886; (404) 562-7884 (TDD)<br>(404) 562-7881 FAX | **Region VIII - CO, MT, ND, SD, UT, WY**<br>Office for Civil Rights, DHHS<br>999 18th Street, Suite 417<br>Denver, CO 80202<br>(303) 844-2024; (303) 844-3439 (TDD)<br>(303) 844-2025 FAX | **Region X - AK, ID, OR, WA**<br>Office for Civil Rights, DHHS<br>701 Fifth Avenue, Suite 1600, MS - 11<br>Seattle, WA 98104<br>(206) 615-2290; (206) 615-2296 (TDD)<br>(206) 615-2297 FAX |

**Burden Statement**

Public reporting burden for the collection of information on this complaint form is estimated to average 45 minutes per response, including the time for reviewing instructions, gathering the data needed and entering and reviewing the information on the completed complaint form. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: HHS/OS Reports Clearance Officer, Office of Information Resources Management, 200 Independence Ave. S.W., Room 531H, Washington, D.C. 20201. **Please do not mail complaint form to this address.**

# COMPLAINANT CONSENT FORM

The Department of Health and Human Services' (HHS) Office for Civil Rights (OCR) has the authority to collect and receive material and information about you, including personnel and medical records, which are relevant to its investigation of your complaint.

To investigate your complaint, OCR may need to reveal your identity or identifying information about you to persons at the entity or agency under investigation or to other persons, agencies, or entities.

The Privacy Act of 1974 protects certain federal records that contain personally identifiable information about you and, with your consent, allows OCR to use your name or other personal information, if necessary, to investigate your complaint.

Consent is voluntary, and it is not always needed in order to investigate your complaint; however, failure to give consent is likely to impede the investigation of your complaint and may result in the closure of your case.

Additionally, OCR may disclose information, including medical records and other personal information, which it has gathered during the course of its investigation in order to comply with a request under the Freedom of Information Act (FOIA) and may refer your complaint to another appropriate agency.

Under FOIA, OCR may be required to release information regarding the investigation of your complaint; however, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

Please read and review the documents entitled, *Notice to Complainants and Other Individuals Asked to Supply Information to the Office for Civil Rights* and *Protecting Personal Information in Complaint Investigations* for further information regarding how OCR may obtain, use, and disclose your information while investigating your complaint.

**In order to expedite the investigation of your complaint if it is accepted by OCR, please read, sign, and return one copy of this consent form to OCR with your complaint. Please make one copy for your records.**

- As a complainant, I understand that in the course of the investigation of my complaint it may become necessary for OCR to reveal my identity or identifying information about me to persons at the entity or agency under investigation or to other persons, agencies, or entities.



EXHBIIT 10-17

- I am also aware of the obligations of OCR to honor requests under the Freedom of Information Act (FOIA). I understand that it may be necessary for OCR to disclose information, including personally identifying information, which it has gathered as part of its investigation of my complaint.

- In addition, I understand that as a complainant I am covered by the Department of Health and Human Services' (HHS) regulations which protect any individual from being intimidated, threatened, coerced, retaliated against, or discriminated against because he/she has made a complaint, testified, assisted, or participated in any manner in any mediation, investigation, hearing, proceeding, or other part of HHS' investigation, conciliation, or enforcement process.

**After reading the above information, please check ONLY ONE of the following boxes:**

[X] **CONSENT:** I have read, understand, and agree to the above and give permission to OCR to reveal my identity or identifying information about me in my case file to persons at the entity or agency under investigation or to other relevant persons, agencies, or entities during any part of HHS' investigation, conciliation, or enforcement process.

[ ] **CONSENT DENIED:** I have read and I understand the above and do not give permission to OCR to reveal my identity or identifying information about me. I understand that this denial of consent is likely to impede the investigation of my complaint and may result in closure of the investigation.

Signature: Sigler, john Date: 08/25/2016

**Please sign and date this complaint. You do not need to sign if submitting this form by email because submission by email represents your signature.*

Name (Please print): Sigler, john

Address: 13129 Stern Ave, La Mirada, California, 90638

Telephone Number: (714) 697-8576 (H)

# NOTICE TO COMPLAINANTS AND OTHER INDIVIDUALS ASKED TO SUPPLY INFORMATION TO THE OFFICE FOR CIVIL RIGHTS

**Privacy Act**

The Privacy Act of 1974 (5 U.S.C. §552a) requires OCR to notify individuals whom it asks to supply information that:

— OCR is authorized to solicit information under:

(i) Federal laws barring discrimination by recipients of Federal financial assistance on grounds of race, color, national origin, disability, age, sex, religion under programs and activities receiving Federal financial assistance from the U.S. Department of Health and Human Services (HHS), including, but not limited to, Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794), the Age Discrimination Act of 1975 (42 U.S.C. §6101 et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. §1681 et seq.), and Sections 794 and 855 of the Public Health Service Act (42 U.S.C. §§295m and 296g);

(ii) Titles VI and XVI of the Public Health Service Act (42 U.S.C. §§291 et seq. and 300s et seq.) and 42 C.F.R. Part 124, Subpart G (Community Service obligations of Hill-Burton facilities);

(iii) 45 C.F.R. Part 85, as it implements Section 504 of the Rehabilitation Act in programs conducted by HHS; and

(iv) Title II of the Americans with Disabilities Act (42 U.S.C. §12131 et seq.) and Department of Justice regulations at 28 C.F.R. Part 35, which give HHS "designated agency" authority to investigate and resolve disability discrimination complaints against certain public entities, defined as health and service agencies of state and local governments, regardless of whether they receive federal financial assistance.

(v) The Standards for the Privacy of Individually Identifiable Health Information (The Privacy Rule) at 45 C.F.R. Part 160 and Subparts A and E of Part 164, which enforce the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. §1320d-2).

OCR will request information for the purpose of determining and securing compliance with the Federal laws listed above. Disclosure of this requested information to OCR by individuals who are not recipients of federal financial assistance is voluntary; however, even individuals who voluntarily disclose information are subject to prosecution and penalties under 18 U.S.C. § 1001 for making false statements.

Additionally, although disclosure is voluntary for individuals who are not recipients of federal financial assistance, failure to provide OCR with requested information may preclude OCR from making a compliance determination or enforcing the laws above.

OCR has the authority to disclose personal information collected during an investigation without the individual's consent for the following routine uses:

(i) to make disclosures to OCR contractors who are required to maintain Privacy Act safeguards with respect to such records;
(ii) for disclosure to a congressional office from the record of an individual in response to an inquiry made at the request of the individual;
(iii) to make disclosures to the Department of Justice to permit effective defense of litigation; and
(iv) to make disclosures to the appropriate agency in the event that records maintained by OCR to carry out its functions indicate a violation or potential violation of law.

Under 5 U.S.C. §552a(k)(2) and the HHS Privacy Act regulations at 45 C.F.R. §5b.11 OCR complaint records have been exempted as investigatory material compiled for law enforcement purposes from certain Privacy Act access, amendment, correction and notification requirements.

**Freedom of Information Act**
A complainant, the recipient or any member of the public may request release of OCR records under the Freedom of Information Act (5 U.S.C. §552) (FOIA) and HHS regulations at 45 C.F.R. Part 5.

**Fraud and False Statements**
Federal law, at 18 U.S.C. §1001, authorizes prosecution and penalties of fine or imprisonment for conviction of "whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations or makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry".

# PROTECTING PERSONAL INFORMATION IN COMPLAINT INVESTIGATIONS

To investigate your complaint, the Department of Health and Human Services' (HHS) Office for Civil Rights (OCR) will collect information from different sources. Depending on the type of complaint, we may need to get copies of your medical records, or other information that is personal to you. This Fact Sheet explains how OCR protects your personal information that is part of your case file.

## HOW DOES OCR PROTECT MY PERSONAL INFORMATION?

OCR is required by law to protect your personal information. The Privacy Act of 1974 protects Federal records about an individual containing personally identifiable information, including, but not limited to, the individual's medical history, education, financial transactions, and criminal or employment history that contains an individual's name or other identifying information.

Because of the Privacy Act, OCR will use your name or other personal information with a signed consent and only when it is necessary to complete the investigation of your complaint or to enforce civil rights laws or when it is otherwise permitted by law.

Consent is voluntary, and it is not always needed in order to investigate your complaint; however, failure to give consent is likely to impede the investigation of your complaint and may result in the closure of your case.

## CAN I SEE MY OCR FILE?

Under the Freedom of Information Act (FOIA), you can request a copy of your case file once your case has been closed; however, OCR can withhold information from you in order to protect the identities of witnesses and other sources of information.

## CAN OCR GIVE MY FILE TO ANY ONE ELSE?

If a complaint indicates a violation or a potential violation of law, OCR can refer the complaint to another appropriate agency without your permission.

If you file a complaint with OCR, and we decide we cannot help you, we may refer your complaint to another agency such as the Department of Justice.

## CAN ANYONE ELSE SEE THE INFORMATION IN MY FILE?

Access to OCR's files and records is controlled by the Freedom of Information Act (FOIA). Under FOIA, OCR may be required to release information about this case upon public request. In the event that OCR receives such a request, we will make every effort,

as permitted by law, to protect information that identifies individuals, or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If OCR receives protected health information about you in connection with a HIPAA Privacy Rule investigation or compliance review, we will only share this information with individuals outside of HHS if necessary for our compliance efforts or if we are required to do so by another law.

**DOES IT COST ANYTHING FOR ME (OR SOMEONE ELSE) TO OBTAIN A COPY OF MY FILE?**

In most cases, the first two hours spent searching for document(s) you request under the Freedom of Information Act and the first 100 pages are free. Additional search time or copying time may result in a cost for which you will be responsible. If you wish to limit the search time and number of pages to a maximum of two hours and 100 pages; please specify this in your request. You may also set a specific cost limit, for example, cost not to exceed $100.00.

If you have any questions about this complaint and consent package,
Please contact OCR at http://www.hhs.gov/ocr/office/about/contactus/index.html

*OR*

Contact your OCR Regional Office
(see Regional Office contact information on page 2 of the Complaint Form)

RECEIVED
JAN 31 2017

# Fax

Date: Tuesday, January 31, 2017
Time: 7:51:14 AM

| | | | |
|---|---|---|---|
| To: | OCR - Michael Leoz -Pacifiic Region | From: | John Sigler |
| Fax: | 1,202,619,3818 | Fax: | 562-902-9867 |
| | | Phone: | 714-697-8576 |

Regarding: **OCR Complaint to Congresswoman Linda Sanchez**

URGENT - TIME DEPENDENT

Dear Mr. Leoz,
On Wednesday, February 1, 2017 at 4:00pm Congresswoman Linda Sanchez will be holding Community Office Hours at the Whittier Public Library. As you can see from the attached correspondence, I have already contacted her about the improper processing of a HIPAA Complaint filed with your office. Unless your office takes action by 3:00pm tommorrow, I will be attending said Community Office Hours and demanding that Congresswoman Sanchez take action against such misconduct that appears to be occurring in your office under your direction.

If you believe that you and your office staff can simply ignore valid HIPAA complaints with no consequences, you are sadly mistaken. I will be pressuring the Congresswoman, and if need be, I will embarass the Congresswoman in front of the other constituents present, if that is want it takes to get her to force your office to do its job.

If your office is willing to do its job, you can contacat me at 714- 697-8576 prior to 3:00pm tomorrow; otherwise, the Congresswoman will be hearing from me and eventually you will be hearing from her.

Regards,

John Sigler

Attachments: Letter to Congresswoman Linda Sanchez without attachments
Reference: OCR Transaction Number 16-247377



EXHBIIT 10-23

To: Congresswoman Linda Sanchez
Thirty-eight District – California

January 23, 2016

From: John W. Sigler
13129 Stern Ave.
La Mirada, CA. 90638
Ph. No. 714-697-8576

Dear Matt Rumley, Casework Manager for Congresswoman Sanchez,

Thank you very much for talking with me on January 19, 2016. I very much appreciate Congresswoman Sanchez's assistance in resolving this problem I am having in getting the Office for Civil Rights, Pacific Region to act upon a HIPAA compliant I filed with them on August 25, 2016. I believe that what is occurring with the Office of Civil Rights (OCR) is not only negligence and laziness on the part of the staff in the OCR's Pacific Region Office, but may even constitute willful fraud by the OCR to falsely inflate their performance reviews. In addition to asking Congresswoman Sanchez for assistance, the more I look at the behavior of the OCR the more I think that this is willful fraud on the part of the OCR's Pacific Region Office and that this is a case of Government Worker Fraud that should be brought to the attention of the news media. Hopefully between inquires by Congresswoman Sanchez and possibly the news media, something can be done to get the Office of Civil Rights, Pacific Region Office to properly process HIPAA complaints that are filed with that office.

**FEDERAL REGULATIONS**

US Code 45 CFR Section 164.524 (Health Insurance Portability and Accountability Act, HIPAA), states that: "Except as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set."

In addition, under US Code 45 CFR Section 160.103 Definitions., health information is defined as: any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.



EXHBIIT 10-24

Following is some background information concerning the HIPAA violations that made up the complaints I filed with the Office of Civil Rights, and a discussion of the failed response I received from the OCR.

**BACKGROUND**

Based upon the above Federal Regulations, as the patient I am entitled to copies of any information relating to the provision of my health care, which includes any and all written correspondences sent to my health care provider by my insurance carrier, as well as copies of all correspondences sent to my insurance company by said healthcare provider. I am currently trying to get my Healthcare Provider, HealthPointe Medical Group (HMG) and Dr. Kirshnarredy to provide me with copies of the following two recordsets from my Protected Health Information (PHI):

1. **Copies of emails received by HMG during the month of December 2015 from my insurance carrier ESIS.** In November 2015 I requested ESIS to authorize a return visit to HMG for my worker's compensation injury. California law requires ESIS to provide authorization within 5 business days. Authorization was not provided as required by law. ESIS claims they sent it and HMG lost the authorization. HMG claims ESIS never sent authorization. I have seen an email sent on or about December 9, 2015 which contains proof as to who is telling the truth. That email contains information regarding the provision of healthcare to the patient, and under Federal law, HMG is required to provide me a copy of said correspondence.
2. **Copies of all Requests for Authorization (RFA) for medical treatment sent to my insurance company ESIS by my healthcare provider, HealthPointe Medical Group (HMG).** Over the last two years HMG has sent multiple RFA's to my insurance company ESIS requesting authorization for a variety of treatments. In June 2016 I obtained a copy of one such RFA and found out that while HMG sent in the basic form, they provided none of the required backup justification that they claimed they were sending in. Without reasonable backup justification, the RFA is denied. Not sending in reasonable justification is simply a way of the doctor doing less work and being able to process more patients per day. This was clearing fraud and I believe this fraud has been occurring for over two years. The RFA paperwork being sent to my insurance company is PHI that clearly regards the provision of healthcare to the patient, and under Federal law, HMG is required to provide me a copy of said correspondences.

**OCR COMPLAINTS**

On August 25, 2016 I filed a HIPAA violation compliant with the Office for Civil Rights (OCR), Pacific Region, a sub division of the U.S. Department of Health and Human Services. The complaint was against

the HealthPointe Medical Group (HMG) who since July 2016 has refused to provide me copies of the PHI described in Recordset 1. On December 15, 2016, four months after I filed this complaint, OCR sent out a letter stating that in response to my complaint, they had "determined to resolve the matter informally through the provision of technical assistance to HMG". In plain language this means that OCR sent HMG a letter saying that they are legally required to provide patients their PHI. OCR also stated that they were closing out my complaint, even though they never actually talked to the healthcare provider, nor had OCR received any evidence that the healthcare provider was complying with Federal Laws.

Obviously this is a clear attempt by OCR personnel to be able to claim a high closure rate on complaints filed with their office while not actually doing the work. If Michael Leoz, (the regional manager of the Office of Civil Rights, Pacific Region), has performance reviews and bonuses based upon his office's Closure Rate, then this appears to be a case of Mr. Leoz and his employee's falsely closing out OCR complaints for the sole purpose of artificially inflating his office's performance. This would be no different than the scandal that all America saw with the Veteran's Administration in 2015 when Government employees falsely closing out cases, claims, and complaints for the sole purpose of artificially inflating their performance reviews.

On December 17, 2016 I contacted OCR after receiving their initial letter stating that they were doing nothing other than sending HMG a letter and then closing out my complaint with absolutely no effort to follow up and insure that Federal Laws were being followed. I was told I had to give HMG a month to comply with OCR's "provision of technical assistance". On January 19, 2017, after still not receiving copies of my medical records from HMG, I contacted OCR for further assistance. In that conversation I was told by OCR Investigator Lesley Morgan that OCR would have to re-open my complaint and see what they could do to get HMG to comply with Federal Law. The fact that OCR has to "RE-OPEN" my complaint is quite disturbing since HMG never provided me copies of my medical records and OCR had no justification to close out my complaint in the first place.

Since HMG continues to refuse to comply with Federal Laws, on January 5, 2017 I filed another complaint with OCR against HMG for not providing me the PHI previously listed as Recordset 2. It should be noted that I have been requesting both of these Recordsets from my PHI since July 2016. I even went as far as getting the California Worker's Compensation Appeals Board to issue a subpoena against HMG to produce the information of Recordset 1, and still HMG refused to comply with the law. I have sent numerous emails to HMG, and I even delivered a written demand and had HMG personnel

sign for receipt of my demand; and still HMG refuses to respond. Dealing with a Healthcare Provider who refuses to comply with Federal Laws is one thing, but what makes matters worse is that a Government Agency, tasked with enforcing Federal Regulations, refuses to do their job and falsely closing out complaints without any evidence of compliance. It is no wonder that HMG refuses to comply with Federal Law. They probably know that the Office of Civil Rights will not take any substantial action to enforce Federal Laws and when there is the chance that a patient is requesting Protected Health Information that could be embarrassing to the Healthcare Provider, the Healthcare Provider can simply refuse to comply with Federal Laws because they know the Office of Civil Rights is not going to enforce those laws.

As you can see from the attachments provided, I have made every possible effort to get this Healthcare Provider to comply with Federal Laws and provide me my requested healthcare information. When the Healthcare Provider refused to comply with Federal Laws I took the next step and filed HIPAA complaints with the OCR, but so far they are refusing to enforce Federal Laws. I desperately need Congresswoman Sanchez to intercede on my behalf with OCR and demand honest handling of valid complaints submitted to this agency. In addition to getting the OCR to honestly process my HIPAA complaint, the Congresswoman may also wish to look into the policy of the Office of Civil Rights, Pacific Region Office's policy of closing out complaints without any evidence that Federal Laws have been complied with.

Feel free to call me at 714-697-8576 should you have any questions or need further information.

Regards,

John W. Sigler

Attachments.

- HIPAA complaint filed with Office of Civil Rights on August 25, 2016
- Office of Civil Rights Response, dated December 15, 2016
- HIPPA complaint filed with Office of Civil Rights on January 5, 2017.
- First WCAB subpoena served on HealthPointe Medical Group, July 23, 2016
- Second WCAB subpoena served on HealthPointe Medical Group, October 26, 2016.
- Written request for Protected Healthcare Information provided to HMG on August 24, 2016.

**From:** JWSigler
**Sent:** 20 Jun 2017 10:44:56 -0700
**To:** OS FOIA Request (HHS/ASPA)
**Cc:** 'Rumley, Matt';Morgan, Lesley (HHS/OCR) (CTR)
**Subject:** Violation of the Freedom of Information Act - HHS Office of Civil Rights

Dear HHS,

On May 10, 2017 I submitted the below listed FOIA Request which you accepted and logged in as FOIA request #'2017-00737-FOIA-OS'.

The DOJ guidelines for FOIA requests requires you to respond to such requests within 20 business days. As of today you are well past this deadline and have failed to respond to this legally submitted FOIA request.

The truly troubling thing about your failure to respond to this FIOA request is that this request was submitted to gain information regarding the lack of action by the Pacific Region Office of OCR and their failure, or possibly cover up of a HIPAA violation complaint originally filed with their office in August 2016. You are committing a violation of Federal law in order to cover up another violation of Federal law.

I have even had to ask Congresswoman Linda Sanchez's office to intercede on my behalf regarding the complaint filed with OCR and it has appeared that OCR has even chosen to lie to the staff of a member of Congress regarding the handling of these below listed HIPAA complaints.

You have one week to comply with the FIOA and provide the requested documents, even if those documents show that your Pacific Region Office of OCR, or your contractor LEIDOS who is handling the paperwork, is purposely refusing to process a HIPAA complaint: or even worse, if your Pacific Region Office or your Contractor LEIDOS has taken a bribe to bury these complaints.

If you do not comply within the one week time period I will be escalating this matter to the Inspector General's Office, to the DOJ, and to the news media. I have also corresponded with Congresswoman Sanchez's staff members about this violation of the FIOA law and supposedly they are pursuing this matter through their channels.

If you want this to end up in the next news cycle, continue trying to cover up the apparent incompetency, or possibly the criminal acts of covering up these HIPAA complaints.

Regards,

John Sigler

---

**From:** JWSigler [mailto:jwsigler@sws-llc.com]
**Sent:** Wednesday, May 10, 2017 8:25 AM
**To:** 'foiarequest@hhs.gov'
**Cc:** 'Rumley, Matt'; 'Morgan, Lesley (HHS/OCR) (CTR)'
**Subject:** Freedom of Information Act Request - HHS Office of Civil Rights

Dear HHS,

Following is my Request for Information under the Freedom of Information Act. I have tried numerous times to submit this request through your online PAL system and your system has continually failed to function.

Requester Information:
John W. Sigler
13129 Stern Ave
La Mirada, CA 90638
Cell No. (714) 697-8576
Email: jwsigler@SWS-LLC.com

Requester Status: non-Profit / advocacy

HHS Agency: OFFICE OF CIVIL RIGHTS

Request Description:
In August 2016 a HIPAA complaint was filed by John Sigler against HealthPointe Medical Group (transaction numbers 16-247377 and 17-258405). To date no significant progress has been made on this complaint. Congresswoman Linda Sanchez and her office have gotten involved to advocate for the complainant, and have talked to the OCR's Pacific Regional Office and still no progress. It has been approximately ten months since these HIPAA complaints were filed. I am requesting copies of all correspondences sent out by the Office of Civil Rights in their processing of these complaints to determine what, if any, effort is being made by OCR to respond to these HIPAA complaints. Specifically I am interested in correspondences sent to and received from HealthPointe Medical Group, to determine if OCR is even doing their job. This requested information will also be shared with Congresswoman Sanchez's office, especially if it shows that OCR has made false and misleading statements to the Congresswoman's office concerning their efforts in handling these complaints.

FEE WAIVER REQUEST
Under the DOJ Guidelines for FOIA Fees and Fee Waivers, I am requesting a waiving of all fees because release of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. The Office of Civil Rights has failed to handle this HIPAA complaint in a timely manner. The information requested is going to be provided to Congresswoman Sanchez's Office to show evidence that OCR is not handling HIPAA complaints in a timely manner and to determine whether OCR employees have lied to a member of Congress's office personnel. The information is also going to be incorporated into a free-lance news article being submitted to Los Angeles Channel 7 news in support of a news article disclosing how HIPAA complaints are not being timely processed by OCR. While the requester is also the victim in this case, the requester has an established record of disclosing information to the general public for the public's best interest. In 2003 the requester was the victim of a timeshare scam and used his personal experience to create and maintain for the past 14 years a public website disclosing to the public vital information as to victims' rights and governmental and legal options for other U.S. citizens who have been scammed. The requester will be doing the same thing with this information. In addition to passing this information on to Congresswoman Sanchez's office and the news media, the requester / victim will also use the

information to publish another website based upon his experience with the OCR to educate the public on what to do when their HIPAA complaints to OCR are ignored and / or untimely delayed.

Regards,

John W. Sigler
13129 Stern Ave
La Mirada, CA 90638
Office / Cell No. (714) 697-8576
Email: jwsigler@SWS-LLC.com

**From:** John
**Sent:** 10 May 2017 04:32:48 -0700
**To:** 'Rumley, Matt'
**Cc:** Morgan, Lesley (HHS/OCR) (CTR)
**Subject:** RE: OCR Failure to enforce HIPAA regulations

Matt,

It is now almost two months since you spoken to the Pacific Regional Office of OCR. The last time you spoke to them they told you that HealthPointe would have 20 days to respond and maybe HealthPointe could request a short extension.

Like I said it is almost 60 days and I have received nothing. I contacted the OCR investigator for an update and was told they do not provide updates. I think it is time for you to make another call to the Pacific Regional Office. It is ridiculous that OCR is taking so long to enforce the law. If you look at the time of my original complaint in August 2016, which OCR took close to 6 months to respond to, this matter is coming up on a full year soon.

Please see if you can find out the status of my complaint and when OCR will be forcing HealthPointe to provide me copies of my health care information that I requested from HealthPointe. I am also trying to demand copies of any documents that OCR has sent to HealthPointe through the Freedom of Information Act. I am tired of simply waiting on OCR to do apparently nothing. I have made a contact at Channel 7 and once I get OCR documents I am going to see if the news media can put pressure on OCR to actually do their job.

Thanks again for yours and the Congresswoman's assistance in this matter. It was good to meet you the other evening at the town hall meeting.

Regards,
John Sigler

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Thursday, March 16, 2017 12:23 PM
**To:** 'John'
**Subject:** RE: OCR Failure to enforce HIPAA regulations

Good afternoon John,

I've spoken with the Pacific Regional Office of OCR and got the sense that it is highly uncommon for an organization not to comply with their obligations under HIPAA after receiving initial technical assistance from OCR. In light of HealthPointe's nonresponse, OCR has opened a new investigation into this matter. I'm told you will be receiving a letter in the mail within the next few days outlining this. OCR has made an additional data request to HealthPointe to which they have 20 days to respond (though they may be able to request a short extension). I will continue to be in contact with OCR and request regular updates on the progress of this investigation and keep you updated as I receive new information.

Regards,

Matt



**EXHBIIT 10-31**

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Wednesday, March 15, 2017 9:36 AM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** OCR Failure to enforce HIPAA regulations

Dear Matt,

Thanks for your help.

I should let you know that I have also contacted the District Attorney's office because California State Law also says that a doctor shall provide the patient with copies of his medical records upon written request.

I have asked the District Attorney about filing charges against HealthPointe Medical Group for violating California law. The reason this could be of importance is that if at trial I have to state what efforts I made to get my medical records, the fact that I contacted Congresswoman Sanchez would become a matter of public record. I am tired of being caught in the middle in this affair. If a defense lawyer claims I did not do enough to pursue my records, I will fight back and show that I made every possible effort to get my records and it was the Government and HealthPointe who failed to follow the law.

I should also tell you that I am working on a Plan C which will entail filing a civil lawsuit against HealthPointe. While I cannot sue HealthPointe for violating HIPAA laws, it seems that I can sue them with the cause for action being negligence and the negligent act being their failure to follow HIPAA laws. This has been done in other States and it becomes a fine point as to how the Plaintiff states the lawsuit as to whether a lawsuit is allowed to move forward. I am reading up on how to do this and if I go with Plan C, I will have no choice but to disclose every effort I have made to obtain my records and have everyone end up in court as a witness. Again, please make sure you exhaust every possible approach because HealthPointe's only possible defense will be that I did not make a reasonable effort to demand my medical records, and I will fight them and prove that I made every possible effort.

I appreciate the efforts you are making and I ask that you make sure you make every possible effort so if finger-pointing does occur during a trial, you and the Congresswoman are protected. Assuming you are on my team in this matter, I ask that you make sure you do everything possible so no one on my team can be accused of negligence or "dropping the ball".

Thanks again.

John Sigler

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Tuesday, March 14, 2017 2:49 PM
**To:** 'John'
**Subject:** RE: Privacy Release Form

John,
I'm looking into it further and I will get back with you before the end of the week,
Matt



**EXHBIIT 10-32**

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Monday, March 6, 2017 12:27 PM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Matt,

Thanks for the response. Luckily I did the flu thing back at the start of December.

I did receive the February 2, 2017 letter from OCR and I have already responded to OCR and provided them the information that they requested. According to my records my response went out on February 8, 2017.

Just in case you have not figured it out, you and Congresswoman Sanchez are being conned. This letter from OCR is a bunch of double talk and they are refusing to address the problem which is OCR's refusal to enforce Federal regulations. The continuing problem is that OCR is not doing anything productive regarding my complaints. I already sent you a copy of the December 15, 2016 letter that OCR sent me. As I previously stated, OCR's approach of "providing technical assistance to HealthPointe" never solved the problem. HealthPointe ignored their letter and HealthPointe has still not provided me my healthcare information as requested and it has been three months since OCR "provided technical assistance".

You need to look at the incompetent way that OCR has responded to this complaint. What do you think our world would be like if law enforcement only "provided technical assistance" to criminals. If law enforcement acted the same way OCR has, law enforcement would simply give everyone a warning and never follow up to make sure the criminals are not continuing to break the law. Essentially what OCR did was tell HealthPointe that the law requires them to provide me copies of my healthcare information, and HealthPointe basically is ignoring OCR and continuing to do as they please, which is to violate Federal regulations.

Maybe the question you need to be asking OCR is what are they doing to enforce the HIPAA regulations since their decision to "provide technical assistance" to HealthPointe three months ago has not worked. Since HealthPointe has not taken to heart OCR's decision to "provided technical assistant", is OCR going to do anything about that ; or is OCR simply going to let HealthPointe continue to violate Federal regulations? Someone at OCR is too lazy to do their job, and you and Congresswoman Sanchez are being played.

Please let me know what Plan B is. There has to be some action that can be taken to force OCR to enforce the law.

Thanks for your help.

John Sigler

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Monday, March 06, 2017 9:37 AM



**EXHBIIT 10-33**

**To:** 'John'
**Subject:** RE: Privacy Release Form

John,

Apologies, I've been out with the flu for several days. We did receive a response from OCR while I was out which is attached. Did you receive the February 2 letter referenced in this response requesting additional info?

Matt

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Thursday, March 2, 2017 9:28 AM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Mr. Rumley,

Please reference the January 31 response that you sent me regarding Congresswoman Sanchez's assistance in getting the Department of Health and Human Services Office for Civil Rights (OCR) to do their job.

It has now been over 30 days and I have heard nothing from the OCR. Have you? My guess is that your inquiries are also being ignored.

I believe you and the Congresswoman need to look at this in the same light as the VA scandal that occurred a couple of years ago. I would be willing to bet that management personnel at the OCR received performance based bonuses and those bonus are tied into the number of closed and open complaints. In order to maximize their yearend bonuses I believe these management personnel have employees close out complaints without ever verifying that federal laws are being complied with. In my case the OCR simply sent the doctor a letter telling them that the law requires them to release my medical records to me and then the OCR closed out the case falsely claiming that the complaint had been handled. I also believe that there is a strong possibility that the OCR is not responding to your inquiry because you will be exposing their scheme to falsely inflate their performance numbers in order to obtain undesired bonuses.

I believe there is sufficient evidence here to indicate that all is not right at the OCR, especially their San Francisco branch. So what would be the next step? Do you and Congresswoman Sanchez have a Plan B? Would going to the news media be an appropriate next step? If so, would the Congresswoman be agreeable to publicly side with me, or is that an inappropriate political move and I need to go to the media all on my own?

As you stated in your previous email I am very frustrated with the experience. It is maddening that a Government office like the OCR, who is tasked with enforcing Federal regulations, is more concerned about covering up their lack of performance then actually doing their job. This is the OFFICE FOR CIVIL RIGHTS. This should be the absolutely last federal agency who is refusing to do their job.



**EXHBIIT 10-34**

Please let me know what your Plan B is. Hopefully you have one, and if not, can we team up and try mine.

Regards,

John Sigler

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Tuesday, January 31, 2017 4:38 PM
**To:** 'John'
**Subject:** RE: Privacy Release Form

Mr. Sigler,

When we receive cases from constituents we make an initial contact with the federal agency involved, in this case the Department of Health and Human Services Office for Civil Rights. The agency is then given 30 days to provide an official response to our office addressing your concerns. In most cases, but not always we receive a response sooner than this. As soon as I receive any responses I will update you. I understand your frustration with this experience completely— please be assured we have not simply passed the buck.

Additionally, Congresswoman Sanchez will not be in attendance at community office hours in Whittier tomorrow (one of our staffers will be present to assist constituents). It is a public event and you are of course welcome to come, I just wanted to let you know.

Thank you,
Matt

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Tuesday, January 31, 2017 3:03 PM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Mr. Rumley,

I regards to your question, how am I to know what, if anything, the Congresswoman's office has done. Did you ever contact me back telling me you had submitted an inquiry? NO. And if you did submit an inquiry, who did you submit it to? Based upon my experience with Government officials, there is a good chance you are doing the exact thing that OCR did. You send out a letter and then mark the complaint as handled.

Let's be clear here; a Government agency (OCR) responsible for enforcing Federal regulations receives a complaint and all they do is send out a letter to the party violating the law, and then they make the complaint as closed. They never once actually contacted the party violating the law. They never once made any effort to insure that the offending party took corrective action. The whole way OCR has handled this complaint stinks of fraud. These Government employees are claiming that they closed out a complaint when they really did basically nothing. I would bet that their annual performance review, and their merit increase is tied to the percentage of cases that they claim have been closed. There really needs to be a criminal investigation into the working of the Pacific Regional office of the OCR.



EXHBIIT 10-35

As I told you, I am not going to let this matter lie. It has been almost six months since I first filed my HIPAA complaint, and it took OCR five months to simply tell me that they sent out a letter and then closed out my compliant. I have sat back and been patient and see how that has worked for me. Absolutely nothing got accomplished.

I am sure I am not a special case, so that means there are hundreds of US citizens who have also filed complaints with the office of OCR and have had their complaints closed out when nothing has actually been resolved. Putting pressure on Congresswoman Sanchez and on the offices of Senators Feinstein and Harris is the only recourse I have to force these Federal employees to do their jobs. I am going to show up tomorrow to voice my complaint in person so the Congresswoman understands that this is fraud. No Government employee should be allowed to simply send out a letter without any follow up whatsoever, and then claim a complaint has been resolved.

John Sigler

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Tuesday, January 31, 2017 10:35 AM
**To:** 'John'
**Subject:** RE: Privacy Release Form

I confirmed receipt of your email on January 25th, I've submitted an inquiry. Not sure why your being so aggressive with me when I have offered to assist.

---

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Tuesday, January 31, 2017 8:04 AM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Mr. Rumley,

I have not heard back from the Congresswoman's office regarding my issue with OCR.

I am not simply going to go away. I will be showing up to the Congresswoman's Community Office Hours tomorrow, February 1, 2017 at the Whittier Public Library to ask the Congresswoman in front of her constituents why such negligence and fraud is being allowed to exist within a branch of the Federal Government, especially a branch whose sole job is to respond to citizen complaints about violations of Federal Regulations.

Regards,

John Sigler

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Wednesday, January 25, 2017 1:18 PM



EXHBIIT 10-36

**To:** 'John'
**Subject:** RE: Privacy Release Form

Confirming receipt

---

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Monday, January 23, 2017 2:33 PM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Mr. Rumley,

I am returning a copy of the signed Privacy Release form you sent me on January 9th.

To fully explain the issue I need Congresswoman Sanchez's assistance with, I have attached the following documents:

1. SanchezLetter-01.pdf – Letter describing my current problems with the Office of Civil Rights
2. CaseworkAuthorizationForm.pdf - signed privacy release form
3. OCR-HIPAA-Complaint-8-25-2016.pdf - HIPAA complaint filed with Office of Civil Rights on August 25, 2016
4. OCR-Letter-12-15-2016.pdf - Office of Civil Rights Response, dated December 15, 2016
5. OCR-HIPPA-Complaint-1-5-2017.pdf - HIPPA complaint filed with Office of Civil Rights on January 5, 2017.
6. HealthPointe-Subpoena-7-25-2016.pdf - First WCAB subpoena served on HealthPointe Medical Group, July 25, 2016
7. HealthPointe-Subpoena-10-26-2016.pdf - Second WCAB subpoena served on HealthPointe Medical Group, October 26, 2016.
8. RecordsRelease.pdf - Written request for Protected Healthcare Information provided to HMG on August 24, 2016.

Please let me know if you need any further information. You can email me or call me at 714-697-8576.

Thanks again for your help.

John W. Sigler
13129 Stern Ave
La Mirada, CA 90638
Cell No. (714) 697-8576

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Thursday, January 19, 2017 11:04 AM
**To:** 'john@sws-llc.com'
**Subject:** Privacy Release Form

Mr. Sigler,

Please complete/sign the attached privacy form and return it to me along with the relevant documents we discussed. I'll make an inquiry on your behalf once I have received them.

Thank you,

Matt Rumley
Casework Manager
Office of Congresswoman Linda T. Sánchez (CA-38)
12440 E. Imperial Hwy., Ste. 140, Norwalk CA 90650
**P** (562) 860 5050
**F** (562) 924 2914

**From:** John
**Sent:** 11 Jan 2018 23:10:34 -0800
**To:** Leoz, Michael (HHS/OCR)
**Cc:** Bell, Michael (OS/ASPA);Morgan, Lesley (HHS/OCR) (CTR);OS FOIA Request (HHS/ASPA);Williams, Wakema (HHS/ASPA);HHS FOIA Public Liaison (OS/ASPA);ogis@nara.gov;Marquis, Michael (OS/ASPA);Noonan, Timothy (OS/OCR);HHS Chief FOIA Officer (OS/ASPA);ogis@nara.gov;Folsom, Kia (OS/ASA/OCIO/OIS);OS OCRMail, Reg2 (HHS/OS);shirlene.peterson@hhs.gov;Stimson, Brian (HHS/OGC);Davis, Jeffrey (HHS/OGC);Flick, Heather (OS/OGC);OCR Mail;'Rumley, Matt';USACAC.CV-CivilRights@usdoj.gov;thom.mrozek@usdoj.gov;nicola.hanna@usdoj.gov
**Subject:** RE: Fraud within HHS / OCR and multiple FOIA Violations
**Attachments:** Attachment-Two.zip, Attachment-One.zip

Dear Mr. Leoz,

You coward. You did not even have the decency to contact me directly regarding your fraudulent investigation of my January 5, 2017 HIPAA complaint and your office's refusal to comply with multiple FOIA requests. The next time you send an underling to cover for you, I would suggest that you select someone smarter who does not so easily get caught in stupid lies, like telling me that your office required multiple correspondences with the alleged violator.

I am positive that it did not take 10 months for you to conduct a thorough investigation of my HIPAA complaint #17-258405, and your underling claiming that your office had to exchange multiple correspondences with HealthPointe regarding my allegation of a HIPAA violation was ludicrous. We will see how that lie holds up when your office is ordered to comply with my FOIA request and produce all documents relating to my HIPAA Complaint. Every single correspondence you sent to HealthPointe will have to be part of the FOIA release, or there will be additional complaints filed with the Federal Court. There are no exceptions under the FOIA which will allow you to withhold any correspondence you sent to HealthPointe requesting written documentation. We will see whether there are any correspondences dating from the September – October 2017 timeframe which justify you waiting until November 2017 to make a determination.

Secondly, if you did send multiple correspondences to HealthPointe, then you can explain why there are not similar correspondences sent to me regarding HealthPointe's denial of the alleged HIPAA violations. A fair investigation would have allowed me to at least respond to HealthPointe's fraudulent statements. Unfortunately for you I do have physical evidence that the statements you made claiming that HealthPointe never knew I filed a HIPAA complaint prior to terminating my healthcare on August 8, 2016 were false. In the attached file named ATTACHMENT-TWO.ZIP, there is physical evidence of two emails prior to August 8, 2016, and one email on August 1, 2016 to HealthPointe which clearly contains notification to HealthPointe that I had filed a HIPAA complaint. I am looking forward to your explanation for this physical evidence. Simply claiming that HealthPointe lied to you will not be sufficient since you have had this information for about a month now and you have taken no action. It is quite clear to me that you have no interest in conducting a fair and unbiased investigation and that your goal from the very start was to find that HealthPointe committed no HIPAA violation, regardless of the physical evidence.

I look forward to seeing what a Federal Judge and the US Attorney has to say about the false statements contained in your November 6, 2017 letter, about why it took you ten months to respond to my January

5, 2107 complaint, and why you and your office continue to attempt to cover up these fraudulent acts by refusing to comply with a FOIA request for all the investigative documents concerning your investigation. Finally, you should note that I am expanding my distribution list to include the Department of Justice since I have had a response from Congresswoman Linda Sanchez's office stating that her office supports me going to the US Attorneys' Office regarding these violations.

Regards,
John Sigler
714-697-8576

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Monday, December 18, 2017 5:09 PM
**To:** 'Rumley, Matt'
**Cc:** 'michael.bell@hhs.gov'; 'Morgan, Lesley (HHS/OCR) (CTR)'; 'FOIAREQUEST@HHS.GOV'; 'Wakema.Williams@hhs.gov'; 'HHS_FOIA_Public_Liaison@hhs.gov'; 'ogis@nara.gov'; 'Michael.Marquis@hhs.gov'; 'timothy.noonan@hhs.gov'; 'michael.leoz@hhs.gov'; 'hhs.acfo@hhs.gov'; 'ogis@nara.gov'; 'kia.folsom@hhs.gov'; 'Reg2.ocrmail@hhs.gov'; 'shirlene.peterson@hhs.gov'; 'brian.stimson@hhs.gov'; 'Jeffrey.Davis@hhs.gov'; 'heather.flick@hhs.gov'; 'ocrmail@hhs.gov'
**Subject:** Fraud within HHS / OCR and multiple FOIA Violations

Dear Matt (Casework Manager, Office of Congresswoman Linda T. Sánchez (CA-38)),

Sorry for the long email. In addition to asking for yours and Congresswoman Sanchez's assistance in talking to the U.S. Attorney regarding clear acts of fraud within OCR and numerous FOIA violations by HHS / OCR in covering-up the fraud, I am also providing the details of the fraudulent acts in case HHS / OCR wishes to actually up-hold the laws of the United States.

I am getting ready to take action against HHS and OCR for fraud and violation of the Freedom of Information Act. Currently I have two FOIA requests that HHS / OCR are refusing to respond to and one FOIA Appeal that again HHS / OCR is refusing to respond to. All three cases are asking for files related to my recent HIPAA violation complaints and I believe the main reason HHS / OCR are refusing to provide the FOIA information is because the files will provide physical evidence that the medical providers committed fraud during the OCR investigations and that the OCR investigators intentionally looked the other way when fraudulent statements were made.

There is also a serious question in regards to the actions of OCR's Pacific Regional Manager Michael Loez and his personal handling of my complaint against HealthPointe Medical Group (HMG). Mr. Loez needs to explain why his investigation took eight months, but his final determination letter was written only 7 days after I sent you my October 31, 2017 email which copied a dozen other HHS employees / managers. Did Mr. Loez have HMG's responses eight months ago and just buried the investigation, or did he do nothing for eight months and do a rush job after I went extremely public with his incompetence in my October 31st email? Either way, the actions of Mr. Loez were clearly arbitrary and capricious which is the Government standard for employee sanctions to be imposed, up to and including termination.

I am copying Mr. Loez, all the other Oct. 31st people, as well as several HHS attorneys on this email which will document the fraud that took place within Mr. Loez's investigation as well as

the FOIA violations which HHS / OCR have committed in order to cover up the investigation's fraud. I will give HHS and OCR until January 5, 2018 to take action concerning these acts of fraud and FIOA violations. Mr. Loez can either prove that it was solely HMG that committed the fraud by reopening the investigation and filing criminal charges against HMG for lying to a Federal investigator, or Mr. Loez can do nothing which will be a clear indication that he was complacent in the acts of fraud. If no action is taken in regards to the clear acts of fraud, then the HHS attorneys will need to justify Mr. Loez's actions to a judge as well as explaining why OCR refused my FOIA requests in order to cover up the fraud.

Like my HIPAA complaints and my FOIA requests, these Government employees are probably going to do absolutely nothing even though the evidence presented in this email will clearly show that fraud was committed. What I need from you and Congresswoman Sanchez is for you to pick a side. Either you support the laws and regulations of the United States and the rights of individual citizens; or you support Government employees participating in fraud and cover ups. Unless HHS and OCR take immediate actions, on January 8th I intend to file a lawsuit against HHS and OCR in the Federal District Court in Santa Ana for violations of the FOIA. Where you and Congresswoman Sanchez come in, is that after January 8th I would like to schedule a telecon with you and / or Congresswoman Sanchez, and the U.S. attorney's office in Los Angeles to discuss the acts of fraud that are rampant throughout Mr. Loez's investigation, the intentional coverup of these criminal acts through violation of the FOIA, and criminal charges against all individuals involved. I have also found the contact information for the AP (Associated Press) so I am going to attempt to bring them on-board. I am hoping some up and coming writer will take a stab at a clear case of fraud and Government complicity in the fraud and the covering up of the fraud.

Following are the key issues relating to the acts of Fraud:

1. On November 10, 2017 I received a letter from Michael Leoz, the Regional Manager for OCR's Pacific Region terminating my HIPAA complaint against HealthPointe Medical Group (see Attachment One). I have highlighted within Mr. Leoz's letter the multiple false statements made regarding the facts in my HIPAA complaint against HealthPointe Medical Group (HMG). The false statements include:

    a. HMG had no knowledge of a HIPAA complaint prior to their termination of treatment and prior to HMG making false statement to the insurance company which resulted in my loss of benefits.

    b. HMG provided my all my medical records and did not leave out all the WCAB RFA's (Requests for Authorizations) which could be used as evidence of fraud in a civil suit against HMG.

    c. HMG provided me copies of all letters, faxes, and correspondences it sent or received relating to insurance authorization or denial of treatment.

    d. Details of these false statements are discussed in items 3-5.

2. I submitted three complaints to OCR regarding HealthPointe Medical Group (HMG).

   a. Complaint One was sent via USPS mail to HHS's Central Intake Unit on July 29, 2017, and that letter "magically" disappeared.

   b. Compliant Two was filed electronically on August 24, 2017 via HHS's website, and that complaint was ignored until December 15, 2017; when OCR's response was to "provide technical assistance", but no actions was taken against HMG to force the release of my medical records.

   c. Compliant Three was filed electronically on January 5, 2017 and no action was taken until November 6, 2017; seven days after I sent out my October 31, 2017 email to Congresswoman Linda Sanchez and a dozen people at HHS documenting the lack of action on my HIPAA complaint and HHS / OCR's refusal to comply with multiple FOIA requests.

3. In my dealings with OCR and the legal system in general I have learned to never show all my evidence. Always show enough to make your claim, but hold back key evidence so you can prove fraud and perjury if your opponent decides to lie. In Mr. Loez's letter (Attachment One page 2, paragraph 3), Mr. Loez states that HMG was unaware of any complaint to OCR on or before August 8, 2017 when they terminated me as a patient. On April 20, 2017 I sent OCR a copy of the July 29, 2016 letter I sent to OCR (Attachment Two) and that letter clearly states in the cc section that the letter was copied to HMG's corporate office. Since that letter "magically" disappeared from OCR, I believe that OCR communicated this information to HMG so HMG then felt safe in also claiming that they never received any notification. What I held back was two additional emails sent to HMG on July 27, 2016 and on August 1, 2016 that are also contained in Attachment Two and are physical proof that HMG knew about my HIPAA Complaint. In the July 27, 2107 email I clearly quoted several sections of the HIPAA regulations regarding disclosure of my medical records and I also discussed some of HMG's responses to retaliating against me for demanding my medical records. Mr. Loez's real problem comes with my August 1, 2016 letter to HMG's office manager Yvette Madrigal, where I clearly informed her I was filing a HIPAA complaint and I also sent her a copy of the July 29, 2016 letter as an attachment.

   Attachment Two not only contains pdf files of these two emails, but I have also included screenshots from within Microsoft Outlook proving the emails were sent. While anyone can take a word processor program and fake an email, the screenshots from within Microsoft Outlook cannot be faked and show both of these outgoing emails to HMG and

clearly show the first couple paragraphs of each email on the right-hand side the screenshot. For the August 1, 2016 email the complete text is shown as well as at the top of the text it clearly indicates that the July 29, 2016 HIPAA letter was sent as an attachment. WHAT WE HAVE HERE IS CLEAR PHYSICAL EVIDENCE OF FRAUD AND THAT HMG LIED WHEN THEY SAID THEY HAD NO KNOWLEDGE ABOUT MY HIPAA COMPLAINT PRIOR TO AUGUST 8, 2016.

If Mr. Leoz's has written statements from HMG claiming that they knew nothing about a HIPAA complaint prior to August 8, 2016; then we have a violation of multiple Federal laws by HMG including mail fraud, Obstruction of Justice, and Witness Tampering. If Mr. Loez has no proof that HMG actually made these statements, then the case of fraud is against Mr. Loez for making false statement in his determination letter. I firmly believe that OCR and Mr. Loez knew these statements were false and that is also the main reason why my FOIA requests for all documentation regarding these HIPAA complaints are being refused. OCR does not want me getting physical proof that they knew these statements were fraudulent and that OCR purposely sat on my HIPAA complaint. Unfortunately for OCR, now that I have the false statements made by Mr. Loez in his November 6, 2016 letter, and since I have physical proof that those statements regarding HMG knowledge of my HIPAA complaint were lies, I actually have sufficient physical evidence to prove fraud. On January 8, 2017 I am going to a Federal judge and show that Mr. Loez was up to his eyeballs in fraud, and if he did not know in the past, he knows about the fraud as of the date of this email. If Mr. Loez and OCR does nothing in regards to these acts of fraud, that simply proves my case that OCR is covering up these acts of fraud and that is the reason HHS and OCR are refusing my FOIA requests.

4. Mr. Loez's second act of fraud occurs in his statement which claims that "OCR also confirmed with HMG that no documents were excluded from the records sent to the Complainant" (Attachment One, page 2, paragraph 2). HMG did truthfully state that the records sent to me contained 185 pages. In Attachment Three I have provided an Excel Spreadsheet containing an index of the medical records that were sent. The index groups the documents by subject matter and lists the page count for each separate record. (The whole set of medical records has been scanned electronically and can be made available, although it is an 80mb file.) The total page count is 185 as stated, but there was only one RFA (item 47) which was included. There should be at least one corresponding RFA for each of the ESIS Reviews listed in items 40 – 46. A typical complete RFA will contain at least 8 pages as shown in Attachment Four; therefore, assuming an average of eight pages for each RFA, and that there should be a total of at least seven RFA's to correspond with the seven ESIS reviews (40 -46), that would mean there are at least 56 pages of medical records missing. It is also a false statement to claim that "the accompanying documents / reports are present but not packaged together"( Loez Letter, page 2, para. 1). By not provide a complete grouping of each RFA, it is impossible to determine what accompanying documentation was sent out with each RFA and the

medical records are useless. A complete grouping of each RFA and its accompanying documentation is vital because it is believed that many of the submitted RFA's had accompanying documents that made no reference to the requested treatment. As such, the RFA was basically a fraudulent submission by HMG which resulted in my benefits being denied. These RFA's were sent by fax (i.e. wire) and claimed that the accompanying documents substantiate the requested treatment. If the accompanying documents never discussed the requested treatment, this is a case of wire fraud and a violation of 18 U.S.C. 1343; which is why HMG is refusing to provide these records. AGAIN WE HAVE PHYSICAL EVIDENCE THAT Mr. Loez intentionally made false statements in his determination letter when he claimed that "OCR confirmed with HMG that no documents were excluded". The definition of confirmation is "the process of supporting a statement by evidence" and clearly the physical evidence shows that HMG lied about releasing my medical records, and therefore, Mr. Loez lied about confirming that no records were missing.

5. In regards to OCR stating that HMG had provided all emails, letters, and faxes; I provide the following evidence that those statements were also false. If one reviews the medical records index in Attachment Three, one will notice an eight month gap in treatment based upon the progress reports listed in items 29 – 30. HMG requires a new "Authorization to Treat" letter following a gap in treatment of more than three months. <u>Where is the copy of the letter of authorization that HMG received to resume treatment in December 2015?</u> Attachment Five contains a copy of a November 25, 2015 letter which supposedly was sent to HMG via email on December 9, 2015. I obtained this much of the correspondence, but where is the full email with the text? HMG falsely stated there are no emails referring to insurance authorization, but so far I have half on one of those emails. The real reason HMG is refusing to turn over this email is because within the text of the email the insurance carrier stated that the letter of authorization was faxed to HMG on November 25, 2017. HMG does not want to disclose the fact that they were negligent in processing this letter of authorization. Attachment Five also contains a copy of the fax transmission request submitted by Ms. Snetzinger through her company's internal fax messaging software requesting the faxing of the November 25, 2015 letter. In the "TO" address it names Dr. Kirshnareddy who was the treating doctor at HMG. Again there is physical proof that HMG has made false statements to OCR and OCR has lied about verifying the truthfulness of these statements, and continues to cover-up the false statements made by HMG by refusing to comply with FOIA requests for all correspondence related to this OCR complaint.

The December 9, 2015 email that HMG is concealing would be the physical proof that the insurance company committed wire fraud, by falsely claiming they had sent a fax

when they did not. I can only assume that HMG is hiding this email because the think in proves negligence on their part, or HMG is working with ESIS to cover up evidence of fraud. Either way, obviously there was some form of communication between ESIS and HMG during December 2015 regarding authorization to treat, as my copy of the authorization letter proves. HMG, with Mr. Loez's support, has falsely stated that they have provide copies of all letters, faxes, and email relating to authorization, when clearly they have not.

6. THE FINAL POINT REGARDING MR. LOEZ'S AND HIS ACTS OF FRAUD AND CONSPIRACY TO COMMIT FRAUD will be provided by Mr. Loez himself within the next 15 days. This email contains sufficient physical evidence to prove that at the very least HMG has lied to a Federal Investigator on multiple accounts. Mr. Loez can prove he was not complicit in these acts of fraud by reopening the original HIPAA complaint based upon fraud committed by HMG, and by filing criminal charges against HMG for lying to a Federal Investigator. If Mr. Loez does nothing and continues to cover-up HMG's fraudulent statements, then his actions clearly show he was complacent in the fraud, and he has acted arbitrarily and capriciously in refusing a FIOA request in order to cover up these acts of fraud. Mr. Loez and OCR have on three occasions violated the FOIA in order to cover up these acts of fraud and under Federal regulations these are violations that should result in sanctions, up to and including termination.

PROOF OF CONSPIRACY TO COMMIT FRAUD AND COVER-UP FRAUD

Since January 2017 I have suspected that OCR has never intended to impartially investigation my HIPAA complaints . The previous discussions (specifically Items 3-5) show that Mr. Loez made no attempt to verify any facts and on several occasions made false statements within his own letter of determination. HMG clearly knew of a HIPAA complaint prior to August 8, 2016 and Mr. Loez has supported their fraudulent statements. HMG clearly did not provide all available medical records and Mr. Loez clearly made false statements in his determination letter claiming that OCR confirmed that no documents had been excluded.

The most telling evidence of Mr. Loez's complicity in supporting the fraudulent statements and claims by HMG is the fact that HHS and OCR have refused to comply with numerous FIOA requests for copies of all documents submitted to OCR regarding these HIPAA complaint investigation and has willfully violated the FIOA in the following manner:

1. On May 10, 2107 I submitted a FOIA request '2017-00737-FOIA-OS' asking for all documents related to my August 25, 2017 HIPAA complaint (OCR Transaction #16-247377) and to my January 5, 2017 HIPAA Complaint (OCR Transaction #17-258405). HHS / OCR response was late and in violation of the FIOA HHS / OCR withheld all documents legally damaging to HMG from their release of documents for #16-247377 (even when those damaging document were documents that I had submitted as part of my initial complaint), and HHS / OCR provided zero documents in regards to the request for document relating to OCR Transaction #17-258405.

2. On September 21, 2017 I filed an appeal '2017-00085-A-OS' in response to the delayed response to my May 5, 2017 FIOA request and cited the improperly redacted response on OCR Transaction #16-247377, and the complete lack of any response for document relating to OCR Transaction #17-258405. HHS / OCR has to-date refused to respond to this appeal although on October 4, 2107 Michael Bell, Deputy Director acknowledged receipt of the Appeal and state it would be processed within 30 working days.

3. Also on September 21, 2017 I accidentally resubmitted my original FOIA request from May 5, 2017. Since HHS / OCR never provided half of the requested information (documents relating to OCR Transaction #17-258405) I let this request continue. This was logged in as a second FOIA #2017-01205-FOIA-OS and has yet to be responded to. A Ms. Kia Folsom specifically asked to be assigned this FOIA Request, probably in order to cover up the fact that HHS ? OCR faield to respond to my first request, was attempting to cover-up my appeal of their improper response to my first request, and finally, to cover-up the fact that OCR was complacent in cover-up the fraudulent statements made by HMG in response to my OCR Complaint # 17-258405. It should be noted that to date HHS / OCR has failed to respond to this FOIA request and again is in violation of FOIA regulations.

4. On November 8, 2017 I submitted a third FOIA request asking for OCR documents relating to another HIPAA complaint filed with OCR. This third HIPAA complaint was against CVS Pharmacy and as in the HIPAA complaints against HMG, I found evidence of false statements made by CVS cited in the final OCR determination letter. I sent OCR proof on these fraudulent statements and then requested via the FOIA all documents relating to the OCR investigation. To-date HHS / OCR has refused to provide any documents. By the end of this week HHS / OCR's 20 working days, plus 10 working day extension will have expired based upon the initial date HHS accepted the FOIA request on November 8, 2017.

In support of these FOIA violations by HHS and OCR I have included Attachments FOIA-1, FOIA-2, FOIA-3, and FOIA-4. Each attachment contains copies of the original FOIA requests as well as copies of all emails received from HHS / OCR acknowledging receipt of said requests, and emails stating my requests are being processed. Even though HHS and OCR have stated that my requests are being processed, in cases 2-4 nothing is being done. It should be noted that in all of these three cases (2-4), I stated within the FOIA requests that I was working with Matt Rumley from Congresswoman Linda Sanchez's office and that I believed OCR was purposely covering up acts of fraud. It is clear to me that HHS / OCR is purposely refusing to comply with all of these FOIA requests as part of a cover-up of OCR's complacency in knowingly supporting false and fraudulent statements made but the alleged violators in the filed HIPAA complaints.

For all the HHS / OCR attorneys on distribution who will also be having to defend HHS / OCR's violations of the FOIA in court; be advised that FOIA-3, Case Number 2017-01205-FOIA-OS, specifically states "I am requesting copies of all correspondences sent out by the Office of Civil

Rights in their processing of these complaints to determine what, if any, effort is being made by OCR to respond to these HIPAA complaints." Since this FOIA request's Status is still "Assigned for Process" a full and complete response to this FOIA request will include under "all correspondences sent out by the Office of Civil Rights in their processing of these complaints" all emails, internal memo, faxes, or any other form of correspondence between Michael Loez and his investigator Lesley Morgan, who is an outside contractor working for LEIDOS. This includes all incriminating correspondences which took place between October 31, 2017 and November 6, 2017 which would shed light onto why these OCR Complaints sat inactive for eight months and then suddenly were resolved 6 days after I emailed Congresswoman Linda Sanchez's office and the HHS world on October 31, 2017.

Conclusion

Matt, in conclusion I am sure you can see from the evidence listed that rampant fraud has been occurring within HHS and OCR. The physical evidence included as attachments in this email clearly shows that many statements made by OCR Regional Manager Michael LOEZ in his November 6, 2017 letter are false. You can also see that HHS and OCR have acted to cover-up these acts of fraud by purposely violating the FOIA and refusing to provide requested documents. The sole purpose of the FOIA is to insure honesty and transparency within our Government and HHS / OCR has ignored FOIA request in order to cover-up the fraud which their employees, regional managers, and outside contractors have been engaged in. I hope for, and expect, that you and Congresswoman Sanchez stand behind your past declarations that you are willing to fight for the civil rights of your constituents. I fully expect that one or both of you are willing to assist me in fighting these flagrant violations of Federal laws by HHS / OCR employees and that you will show your support by participating in a telecon with the U.S. Attorney's Office to address the bringing of criminal charges against the appropriate Government employees for Obstruction of Justice as well as criminal charges against HMG for lying to Federal Investigators. Please let me know in writing that you are will to help with the U.S. Attorney and let me know what days in January 2018 will be convenient for you. Once you can provide available dates, I will take the initiative to contact the U.S. Attorney's Office and sent up a telecon on a day which is convenient for you.

Thanks for all your assistance and Happy Holidays.

Regards,
John Sigler
714-697-8576

**JWSigler**

**From:** John [John@SWS-LLC.com]
**Sent:** Monday, August 01, 2016 6:47 AM
**To:** Yvette Madrigal
**Subject:** HIPAA notification
**Attachments:** HIPAA-Letter-July29-2016.pdf

DEar Ms. Madrigal,

I have tried multiple times to get you and Healthpointe to simply provide me a copy of my Protected Health Information. I asked nicely back in December 2015 when you showed me the ESIS email on your computer screen, and you refused. You have run me all over Southern California claiming I had to go to various locations where I had to serve you a subpoena to legally force you to give me the emails, and healthpointe still continues to refuse to provide me my the requested email which are part of my medical records. The emails you exchanged with ESIS in December 2015 dealt with authorization for treatment and payment and ARE PART OF MY HEALTH INFORMATION and the US government says under HIPAA regulations that you must provided me copies.

I have tried everything else so now I am going to try to get the US government to force you to obey HIPAA laws and give me the emails which are my medical records. Attached is a copy of my letter to HIPAA asking that they get involved and force you to turn over the requested emails to me. I am also sending a copy to your corporate offices so they can see the trouble you are causing by refusing to give me my records. Let's see if you and healthpointe are still willing to violate HIPAA laws when the government is involved. You can still get out of this by simply sending me copies of the emails from December 2015 that I have requested.

Regards,

John Sigler

---

**From:** John [mailto:john@sws-llc.com]
**Sent:** Tuesday, July 26, 2016 9:17 AM
**To:** Yvette Madrigal
**Subject:** Resubmission of RFA for Prescription Drugs

Dear Ms. Madrigal,

Previously I sent you a copy of the subpoena I was serving on HealthPointe for information regarding the way authorization was handled back in November 2015. On Monday, July 18th, that subpoena was served on HealthPointe's agent of service. Since notifying you that I was subpoena HealthPointe's record in order to determine the truth as to who was responsible for delaying my access to treatment back in November 2015, it appears that HealthPointe has decided to retaliate by refusing to provide even the most basic healthcare support.

As you know, on June 23, 2016 a Request for Authorization was submitted to ESIS for prescription medications and as of the last time we exchanged emails on July 8th, ESIS had failed to respond to the RFA, a clear violation of California's Labor Code. On July 13th I again saw Dr. Kirshnareddy and after discussing the RFA issue, Dr. Kirshnareddy agreed to order a second RFA to be submitted to ESIS to again request authorization for the prescription medications. I had a followup appointment with Dr. Kirshnareddy on July 20th for cortisone injections and at that time the assistant informed me that HealthPointe had not followed Dr. Kirshnareddy's instruction and that HealthPointe had not resubmitted the RFA for medications. The assistant did say that on July 19th, HealthPointe did send in an inquiry to ESIS to find out who my adjuster was, but that was all the effort HealthPointe made to follow-up. HealthPointe sat on Dr. Kirshnareddy's instructions for a week and did nothing while I have suffered in pain, and there is the strong possibility that HealthPointe



EXHBIIT 10-48

**JWSigler**

**From:** John [john@sws-llc.com]
**Sent:** Tuesday, July 26, 2016 9:17 AM
**To:** Yvette Madrigal
**Subject:** Resubmission of RFA for Prescription Drugs

Dear Ms. Madrigal,

Previously I sent you a copy of the subpoena I was serving on HealthPointe for information regarding the way authorization was handled back in November 2015. On Monday, July 18th, that subpoena was served on HealthPointe's agent of service. Since notifying you that I was subpoena HealthPointe's record in order to determine the truth as to who was responsible for delaying my access to treatment back in November 2015, it appears that HealthPointe has decided to retaliate by refusing to provide even the most basic healthcare support.

As you know, on June 23, 2016 a Request for Authorization was submitted to ESIS for prescription medications and as of the last time we exchanged emails on July 8th, ESIS had failed to respond to the RFA, a clear violation of California's Labor Code. On July 13th I again saw Dr. Kirshnareddy and after discussing the RFA issue, Dr. Kirshnareddy agreed to order a second RFA to be submitted to ESIS to again request authorization for the prescription medications. I had a followup appointment with Dr. Kirshnareddy on July 20th for cortisone injections and at that time the assistant informed me that HealthPointe had not followed Dr. Kirshnareddy's instruction and that HealthPointe had not resubmitted the RFA for medications. The assistant did say that on July 19th, HealthPointe did send in an inquiry to ESIS to find out who my adjuster was, but that was all the effort HealthPointe made to follow-up. HealthPointe sat on Dr. Kirshnareddy's instructions for a week and did nothing while I have suffered in pain, and there is the strong possibility that HealthPointe did this solely as retaliation for the fact that I am subpoenaing my own health information records in order to discern the truth about who was responsible for the willful delay in providing me medical treatment back in November 2015.

In regards to the subpoena served on HealthPointe, not only do I have the legal right to subpoena records via the Workers Compensation Court critical to issues that will be heard before a WCAB judge, but US Code 45 CFR Section 164.524 (Health Insurance Portability and Accountability Act, HIPAA), clearly states that:

"(a) Standard: Access to protected health information—(1) Right of access. Except as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set,

And As per US Code 45 CFR Section 160.103 Definitions., health information is defined as:
Health information means any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

In accordance with these statues from HIPAA, all the information I requested in the subpoena is also covered under HIPAA and HealthPointe is legally required to provide to me upon my written request. While a subpoena is a little overkill for a standard HIPAA request, it leaves absolutely no doubt that this health information was requested from HealthPointe. HealthPointe's refusal to provides the requested information will be treated as not only HealthPointe's refusal to comply with a legal subpoena, but also as a violation of HIPAA regulations. As far as HealthPointe's apparent retaliatory actions in refusing to promptly respond to Dr. Kirshnareddy's July 13th agreement to resubmit the RFA in order to force ESIS to respond and approve the requested medications, I would point out US Code 45 CFR Section 164.530(g) which states:



**EXHBIIT 10-49**

"(g) Standard: Refraining from intimidating or retaliatory acts. A covered entity— (1) May not intimidate, threaten, coerce, discriminate against, or take other retaliatory action against any individual for the exercise by the individual of any right established, or for participation in any process provided for, by this subpart or subpart D of this part, including the filing of a complaint under this section;

Concerning HealthPointe's efforts to identify my adjuster, during the last half hour since calling your La Mirada Clinic and basically getting the run around as to whether HealthPointe was making any effort to obtain authorization for my prescriptions, I was able to write this email and also make sufficient phone calls to identify my adjuster. According to my information, ESIS has switched adjusters and the new adjuster is someone named Levi Young, and his phone number is 406-422-5754. I am under the impression that the mailing address and the fax numbers remain the same since those are universal company established contact points; although, HealthPointe should verify all this information.

As I am writing this email, I received a phone call from Walgreens. While HealthPointe has made little or no effort to follow up on the RFA for medications, Walgreens has made an effort to stay after ESIS and obtain authorization themselves. Walgreens has confirmed that they were able to finally get approval for the requested medications today. Walgreens efforts in no way mitigates the fact that HealthPointe appears to be willfully dragging their feet ever since they were notified that I want the truth about November 2015.

From the very beginning I told you that I was not interested in persecuting HealthPointe for a possible oversight regarding the withholding of medical treatment back in November 2015, but HealthPointe has refused to co-operate in my search for the truth and it seems that HealthPointe has now taken the stance of retaliating against me for my efforts to uncover the truth. As I told you in my emailed dated June 24, 2016, my primary goal was to respond to my former employer's and ESIS's efforts to withhold treatment because they want to intimidate me and dissuade me from continuing to talk to US Government authorities concerning the submission of fraudulent data to the Government on DOD contracts, as well as the cover-up of test failures which according to Aerojet's own internal Report, released radioactive material into residential neighborhoods (these acts were documented in the "Profits Before Principle" attachment sent to you in the June 24th email). Based upon the information you previously sent me, you know that Aerojet and ESIS have committed unlawful acts by refusing to respond to the June 23rd RFA as required by California Labor law. If your comments about November incident are true and that HealthPointe never received the fax and letter that ESIS claims they sent on November 25th, then you also know firsthand about a second unlawful act by Aerojet to intimidate me. There was also a third incident in March when a UR determination approved medications that were requested on a RFA submitted on or about March 5, and after receiving the UR approval, ESIS refused for almost two weeks to provide authorization to the pharmacy.

Aerojet and ESIS are burying themselves further and further every time they commit an act that violates any law or regulation which can in anyway be interpreted as harassment. US Federal code, 18 USC 1512, Tampering with a witness, victim, or an informant, section (d) clearly states:

> (d) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from— (1) attending or testifying in an official proceeding; (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.

Because witness tampering is such a heinous act and undermines the basic foundation of the US legal system, Federal Code 18 USC 1512, section (e) further states:

> (e) In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

If HealthPointe refuses to respond to my requests for available health information as listed in the July 18th subpoena and violates HIPAA regulations, HealthPointe may place themselves on the path to becoming a co-defendant along with



EXHBIIT 10-50

Aerojet. All I ask is that HealthPointe remain a neutral third party and simply provide the information requested, but if HealthPointe wishes to side with Aerojet and ESIS, and harass me simply because I am seeking the truth, then HealthPointe, and any identifiable employee, needs to be prepared to be named in future litigation. You may wish to forward this email to HealthPointe's legal department because when I have sufficient evidence to file a lawsuit against Aerojet and ESIS for witness tampering, it will cost me nothing to also named HealthPointe and any HealthPointe employee in the litigation.

Finally, as you know, I do have a copy of ESIS's November 25th letter which they claim they faxed and mailed to HealthPointe on November 25th and ESIS has claimed in front of a WCAB judge that it was HealthPointe who was negligent in providing me healthcare back in November 2015. On August 17 I have another hearing before the WCAB judge and if needed, I will again raise the November issue with the goal of getting ESIS's lawyer on the record stating that her client did provide timely authorization and it was HealthPointe who was negligent. With ESIS's letter, and with ESIS's attorney's statement on the record, I will have sufficient cause to file a lawsuit against HealthPointe for negligence, and if filing a lawsuit is what it takes to eventually get at the truth, I will do it. Provide me with the truth and HEalthPointe will avoid a lawsuit.

Regards,

John Sigler



**EXHBIIT 10-51**

To: HHS Office for Civil Rights
Central Intake Unit
200 Independence Avenue, S.W., Room 509 F
Washington, D.C. 20201

July 29, 2016

From: John Sigler
13129 Stern Ave
La Mirada, CA 90638
PH. No. 714-697-8576

Dear Sir/Madame,

I would like to file a HIPAA complaint against my current medical provider HealthPointe Medical Group. I have been attempting to get HealthPointe to disclose to me copies of emails, faxes, or US postal letters received by HealthPointe from my Workers Compensation Insurance carrier with no success. HealthPointe employee Yvette Madrigal has copies of at least some of the listed email and she continues to refuse to send me a copy. I have even gone so far as to serve HealthPointe with a subpoena for this information last week and I have attached a copy of said subpoena.

I ask that HHS take whatever action is necessary to force HealthPointe to turn over the requested information to me as soon as possible.

Feel free to call me at 714-697-8576 if you have any questions.

Regards

John Sigler

cc. HealthPointe Medical Group –Corporate office



sent

| From | To | Subject | Received | Size |
|---|---|---|---|---|
| John | Yvette Madrigal | HIPPA Violation | Mon 12/19/2016 1... | 14 ... |
| John | Yvette Madrigal | RE: Time Dependent Information — Correspondence to H... | Tue 8/9/2016 4:20 ... | 95 ... |
| John | Yvette Madrigal | RE: Time Dependent Information — Correspondence to H... | Tue 8/9/2016 8:20 ... | 61 ... |
| John | Yvette Madrigal | RE: Time Dependent Information — Correspondence to H... | Mon 8/8/2016 5:0... | 40 ... |
| John | Yvette Madrigal | RE: Resubmission of RFA for Prescription Drugs | Thu 8/4/2016 3:36 ... | 46 ... |
| John | Yvette Madrigal | HIPAA notification | Mon 8/1/2016 6:4... | 80 ... |
| John | Yvette Madrigal | Resubmission of RFA for Prescription Drugs | Tue 7/26/2016 9:1... | 44 ... |
| John | cyndyiazalde@healthpointe.net ... | HealthPointe Subpoena | Thu 7/14/2016 12:... | 343... |
| John | Yvette Madrigal | Subpoena Request | Wed 7/13/2016 10:... | 356... |
| John | Yvette Madrigal | RE: Urgent RFA Required - possible drug side effects | Fri 7/8/2016 8:20 A... | 95 ... |
| John | Yvette Madrigal | RE: Urgent RFA Required - possible drug side effects | Wed 7/6/2016 9:4... | 61 ... |
| John | Yvette Madrigal | RE: Urgent RFA Required - possible drug side effects | Tue 7/5/2016 9:40 ... | 48 ... |
| John | ymadrigal@healthpointemd.net'... | Urgent RFA Required - possible drug side effects | Thu 6/23/2016 10:... | 5 MB |

**Resubmission of RFA for Prescription Drugs**

John [john@sws-llc.com]

You forwarded this message on 12/18/2017 9:05 AM.

Sent: Tue 7/26/2016 9:17 AM

To: Yvette Madrigal

Dear Ms. Madrigal,

Previously I sent you a copy of the subpoena I was serving on HealthPointe for information regarding the way authorization was handled back in November 2015. On Monday, July 18th, that subpoena was served on HealthPointe's agent of service. Since notifying you that I was subpoena HealthPointe's record in order to determine the truth as to who was responsible for delaying my access to treatment back in November 2015, it appears that HealthPointe has decided to retaliate by refusing to provide even the most basic healthcare support.

As you know, on June 23, 2016 a Request for Authorization was submitted to ESIS for prescription medications and as of the last time we exchanged emails on July 8th, ESIS had failed to respond to the RFA, a clear violation of California's Labor Code. On July 13th I again saw Dr. Kirshnareddy and after discussing the RFA issue, Dr. Kirshnareddy agreed to order a second RFA to be submitted to ESIS to again request authorization for the prescription medications. I had a followup appointment with Dr. Kirshnareddy on July 20th for cortisone injections and at that time the assistant informed me that HealthPointe had not followed Dr. Kirshnareddy's instruction and that HealthPointe had not resubmitted the RFA for medications. The assistant did say that on July 19th, HealthPointe did send in an inquiry to ESIS to find out who my adjuster was, but that was all the effort HealthPointe made to follow-up. HealthPointe sat on Dr. Kirshnareddy's instructions for a week and did nothing while I have suffered in pain, and there is the strong possibility that HealthPointe did this solely as retaliation for the fact that I am subpoenaing my own health information records in order to discern the truth about who was responsible for the willful delay in providing me medical treatment back in November 2015.

In regards to the subpoena served on HealthPointe, not only do I have the legal right to subpoena records via the Workers Compensation Court critical to issues that will be heard before a WCAB judge, but US Code 45 CFR Section 164.524 (Health Insurance Portability and Accountability Act, HIPAA), clearly states that:

"(a) Standard: Access to protected health information—(1) Right of access. Except as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set.

And As per US Code 45 CFR Section 160.103 Definitions., health information is defined as:
Health information means any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

In accordance with these statues from HIPAA, all the information I requested in the subpoena is also covered under HIPAA and HealthPointe is legally required to provide to me upon my written request. While a subpoena is a little overkill for a standard HIPAA request, it leaves absolutely no doubt that this health information was requested from HealthPointe. HealthPointe's refusal to provides the requested information will be treated as not only HealthPointe's refusal to comply with a legal subpoena, but also as a violation of HIPAA regulations. As far as HealthPointe's apparent retaliatory actions in refusing to promptly respond to Dr. Kirshnareddy's July 13th agreement to resubmit the RFA in order to force ESIS to respond and approve the requested medications, I would point out US Code 45 CFR Section 164.530(g) which states:

"(g) Standard: Refraining from intimidating or retaliatory acts. A covered entity— (1) May not intimidate, threaten, coerce, discriminate

13 Items



**EXHBIIT 10-53**



**sent**

Click here to enable Instant Search

| From | To | Subject | Received | Size |
|---|---|---|---|---|
| John | Yvette Madrigal | HIPPA Violation | Mon 12/19/2016 1... | 14 ... |
| John | Yvette Madrigal | RE: Time Dependent Information — Correspondence to H... | Tue 8/9/2016 4:20 ... | 93 ... |
| John | Yvette Madrigal | RE: Time Dependent Information — Correspondence to H... | Tue 8/9/2016 8:20 ... | 61 ... |
| John | Yvette Madrigal | RE: Time Dependent Information — Correspondence to H... | Mon 8/8/2016 5:0... | 40 ... |
| John | Yvette Madrigal | RE: Resubmission of RFA for Prescription Drugs | Thu 8/4/2016 3:56 ... | 46 ... |
| John | Yvette Madrigal | HIPAA notification | Mon 8/1/2016 6:4... | 80 ... |
| John | Yvette Madrigal | Resubmission of RFA for Prescription Drugs | Tue 7/26/2016 9:1... | 44 ... |
| John | cyndylazalde@healthpointe.net <... | HealthPointe Subpoena | Thu 7/14/2016 12:... | 343... |
| John | Yvette Madrigal | Subpoena Request | Wed 7/13/2016 10:... | 356... |
| John | Yvette Madrigal | RE: Urgent RFA Required - possible drug side effects | Fri 7/8/2016 8:20 A... | 95 ... |
| John | Yvette Madrigal | RE: Urgent RFA Required - possible drug side effects | Wed 7/6/2016 9:4... | 61 ... |
| John | Yvette Madrigal | RE: Urgent RFA Required - possible drug side effects | Tue 7/5/2016 9:40 ... | 48 ... |
| John | ymadrigal@healthpointemd.net'<... | Urgent RFA Required - possible drug side effects | Thu 6/23/2016 10:... | 5 MB |

**HIPAA notification**

John [John@SWS-LLC.com]

Sent: Mon 8/1/2016 6:47 AM

To: Yvette Madrigal

Message | HIPAA-Letter-July29-2016.pdf (32 KB)

DEar Ms. Madrigal,

I have tried multiole times to get you and Healthpointe to simply provide me a copy of my Protected Health Information. I asked nicely back in December 2015 when you showed me the ESIS email on your computer screen, and you refused. You have run me all over Southern California claiming I had to go to various locations where I had to serve you a subpoena to legally force you to give me the emails and healthpointe still continues to refuse to provide me my the requested email which are part of my medical records. The emails you exchanged with ESIS in December 2015 dealt with authorization for treatment and payment and ARE PART OF MY HEALTH INFORMATION and the US government says under HIPAA regulations that you must provided me copies.

I have tried everything else so now I am going to try to get the US government to force you to obey HIPAA laws and give me the emails which are my medical records. Attached is a copy of my letter to HIPAA asking that they get involved and force you to turn over the requested emails to me. I am also sending a copy to your corporate offices so they can see the trouble you are causing by refusing to give me my records. Let's see if you and healthpointe are still willing to violate HIPAA laws when the government is involved. You can still get out of this by simply sending me copies of the emails from December 2015 that I have requested.

Regards,

John Sigler

**From:** John [mailto:john@sws-llc.com]
**Sent:** Tuesday, July 26, 2016 9:17 AM
**To:** Yvette Madrigal
**Subject:** Resubmission of RFA for Prescription Drugs

Dear Ms. Madrigal,

Previously I sent you a copy of the subpoena I was serving on HealthPointe for information regarding the way authorization was handled back in November 2015. On Monday, July 18th, that subpoena was served on HealthPointe's agent of service. Since notifying you that I was subpoena HealthPointe's record in order to determine the truth as to who was responsible for delaying my access to treatment back in November 2015, it appears that HealthPointe has decided to retaliate by refusing to provide even the most basic healthcare support.

As you know, on June 23, 2016 a Request for Authorization was submitted to ESIS for prescription medications and as of the last time we exchanged emails on July 8th, ESIS had failed to respond to the RFA, a clear violation of California's Labor Code. On July 13th I again saw Dr. Kirshnareddy and after discussing the RFA issue, Dr. Kirshnareddy agreed to order a second RFA to be submitted to ESIS to again request authorization for the prescription medications. I had a followup appointment with Dr. Kirshnareddy on July 20th for cortisone injections and at that time the assistant informed me that HealthPointe had not followed Dr. Kirshnareddy's instruction and that HealthPointe had not resubmitted the RFA for medications. The assistant did say that on July 19th, HealthPointe did send in an inquiry to ESIS to find out who my adjuster was, but that was all the effort HealthPointe made to follow-up. HealthPointe sat on Dr. Kirshnareddy's instructions for a week and did nothing while I have suffered in pain, and there is the strong possibility that HealthPointe did this solely as retaliation for the fact that I am subpoenaing my own health information records in order to discern the truth about who was responsible for the willful delay in



**EXHBIIT 10-54**

DEPARTMENT OF HEALTH & HUMAN SERVICES
Voice - (800) 368-1019
TDD - (800) 537-7697
FAX - (415) 437-8329
http://www.hhs.gov/ocr/

OFFICE OF THE SECRETARY
Office for Civil Rights, Pacific Region
90 7th Street, Suite 4-100
San Francisco, CA 94103

November 6, 2017

Mr. John Sigler
13129 Stern Avenue
La Mirada, CA 90638

Mr. Joe O'Neill, Privacy Official
HealthPointe Medical Group
16702 Valley View Avenue
La Mirada, CA 90638

Re: John Sigler vs. HealthPointe Medical Group
OCR Transaction Number: 17-258405

Dear Mr. Sigler and Mr. O'Neill:

The U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received a complaint on January 5, 2017, from Mr. John Sigler (Complainant). The Complainant alleged that HealthPointe Medical Group (HMG) was not in compliance with the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules).

Specifically, the Complainant alleged that HMG refused to provide complete copies of Complainant's protected health information, and that HMG retaliated against Complainant for filing a complaint with OCR by terminating him as a patient on or about August 8, 2016. These allegations reflected potential violations of 45 C.F.R. § 164.524 (individual access to protected health information) and 164.530(g) (refraining from intimidating or retaliatory acts). OCR notified HMG of this complaint by letter dated March 14, 2017.

OCR enforces the Privacy and Security Rules and also enforces Federal civil rights laws that prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and, under certain circumstances, sex and religion.

The Privacy Rule states that an individual has the right to access his/her protected health information (PHI), maintained by a covered entity in a designated record set, for as long as the PHI is maintained in the designated record set (e.g., medical or billing records). *See* 45 C.F.R. § 164.524(a)(1). The individual's right of access to his/her PHI maintained by the covered entity includes all PHI maintained by the covered entity, regardless of whether the covered entity created the PHI or not. *See* 65 Fed. Reg. 82462, 82731-82732 (Dec. 28, 2000). The Privacy Rule prohibits a covered entity from retaliating against anyone for submitting a privacy complaint, assisting or testifying in an investigation, or opposing any act or practice prohibited by the Privacy Rule as long as the manner of opposition is reasonable and the person had a good faith belief that the practice opposed is unlawful. 45 C.F.R. § 164.530(g).

## DISCUSSION AND ANALYSIS

In response to OCR's contact, HMG stated that it provided Complainant with a complete copy of his records within its designated record set, totaling 185 pages of documents, on August 24, 2016, and



EXHBIIT 10-55

provided documentation of mailing the records to the Complainant by certified mail. The Complainant confirmed that he had received some of his records from HMG, but alleged that missing from the records he received were Requests for Authorization (RFA) of treatment and related correspondence (letters, emails and faxes) between HMG and his insurance provider regarding authorization or denial of treatment for him. HMG, however, told OCR it provided the Complainant with all of his RFAs, although they were not packaged together with their supporting documentation (doctor's progress notes), but that all RFAs were provided. HMG also told OCR that it provided the Complainant with copies of all correspondence, including letters and faxes, it sent or received regarding insurance authorization or denial of his treatment. HMG said it did not provide the Complainant with any email messages, as there were none in his designated record set because none existed related to insurance authorization or denial of treatment or any other medical decision-making regarding the Complainant.

As part of this investigation, OCR requested and reviewed HMG's policies and procedures regarding access to records, designated record set, retaliation, and patient termination. OCR provided technical assistance to HMG regarding its designated record set policy and HMG agreed to revise its policy to include images, such as X-rays. OCR also confirmed with HMG that no documents were excluded from the records sent to Complainant under this policy prior to its revision, as HMG reported that it has no images or X-ray records for the Complainant created by HMG or any other health care provider.

HMG stated that it terminated the doctor-patient relationship with Complainant by letter dated August 8, 2016, prior to learning of any HIPAA complaints made by Complainant. Complainant stated that he filed an initial complaint with OCR in July 2016; however, OCR has no record of receiving this complaint. HMG stated it was unaware of any complaint made to OCR on or before August 8, 2016. HMG further stated it terminated the doctor-patient relationship because Complainant became increasingly threatening in his communications with HMG staff. It appears HMG followed its provided policy on terminating patient care when terminating Complainant's care.

## CONCLUSION

After carefully considering all of the information gathered in this investigation, OCR is not able to substantiate Complainant's allegation that HMG has not provided him with a complete copy of his PHI maintained by HMG. Further, OCR is not able to substantiate Complainant's allegation that HMG retaliated against him by terminating him as a patient, because HMG was unaware of any of Complainant's HIPAA complaints before it made its decision. Therefore, OCR is closing this case. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Lesley Morgan, the investigator assigned to this complaint, at 206-615-2283 (Voice) or by email at Lesley.Morgan@hhs.gov. When calling this office, please reference the transaction number we have given this file, which is located at the top left corner of this page.

Sincerely,

Michael Leoz
Regional Manager



EXHBIIT 10-56

**From:** Morgan, Lesley (HHS/OCR) (CTR)
**Sent:** 16 Jun 2017 21:20:58 +0000
**To:** 'Rumley, Matt'
**Cc:** Zeller, Evelyn (HHS/OCR);Leoz, Michael (HHS/OCR);Nious, Lionel (HHS/OCR)
**Subject:** RE: constituent John Sigler follow-up

Mr. Rumley,

Thank you for your email. The investigation is currently ongoing and the FOIA request is on hold as a result. I am unable to provide more specific updates on open investigations.

Sincerely,

Lesley Morgan, JD
Investigator
Contractor for Office for Civil Rights
U.S. Department of Health and Human Services
Ph: 206-615-2283
Fax: 206-615-2297
leidos

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Friday, June 16, 2017 12:55 PM
**To:** Morgan, Lesley (HHS/OCR) (CTR)
**Cc:** Zeller, Evelyn (HHS/OCR); Leoz, Michael (HHS/OCR); Nious, Lionel (HHS/OCR)
**Subject:** RE: constituent John Sigler follow-up

Hi again Lesley,

I'm just following up on this issue. I know from your last email that you are unable to give step-by-step updates on ongoing investigations, but I've received several emails from this constituent since your response below, as I'm sure you have. Is there anything you can share with me at this point, either regarding the inquiry or his FOIA request? I know you mentioned that it may be placed on hold, is that still the case?

Regards,
Matt

**From:** Morgan, Lesley (HHS/OCR) (CTR) [mailto:Lesley.Morgan@hhs.gov]
**Sent:** Friday, May 12, 2017 2:24 PM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Cc:** Zeller, Evelyn (HHS/OCR) <Evelyn.Zeller@HHS.GOV>; Leoz, Michael (HHS/OCR) <Michael.Leoz@HHS.GOV>; Nious, Lionel (HHS/OCR) <Lionel.Nious@HHS.GOV>
**Subject:** RE: constituent John Sigler follow-up



EXHBIIT 10-57

Mr. Rumley,

Thank you for contacting me regarding this matter. I am in the process of reviewing the documentation provided by the parties. In the meantime, I have responded to several emails from Mr. Sigler. In an email response dated April 14, 2017, I explained to Mr. Sigler that the investigation was ongoing, but pursuant to OCR policy, I am unable to provide complainants with step-by-step updates on the status of an investigation. At that time I requested additional information and he responded. Mr. Sigler subsequently requested information on how to file a FOIA request and I provided him with the URL to file a request, explaining that his request may be placed on hold while the investigation is open. He filed the request yesterday. Please let me know if you need additional information.

Sincerely,

Lesley Morgan, JD
Investigator
Contractor for Office for Civil Rights
U.S. Department of Health and Human Services
Ph: 206-615-2283
Fax: 206-615-2297
leidos

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Friday, May 12, 2017 11:50 AM
**To:** Morgan, Lesley (HHS/OCR) (CTR)
**Subject:** constituent John Sigler follow-up

Hi Lesley,

I was cc'd on Mr. Sigler's most recent email to you requesting a status update and I'm just checking in regarding this matter.

Thanks,

Matt Rumley
Casework Manager
Office of Congresswoman Linda T. Sánchez (CA-38)
12440 E. Imperial Hwy., Ste. 140, Norwalk CA 90650
**P** (562) 860 5050
**F** (562) 924 2914



**EXHBIIT 10-58**

**From:** Nious, Lionel (HHS/OCR)
**Sent:** 13 Feb 2017 20:24:39 +0000
**To:** Morgan, Lesley (HHS/OCR) (CTR)
**Subject:** RE: 16-247377, 17-258405

Thanks. Always a good reason to follow-up.

---

**From:** Morgan, Lesley (HHS/OCR) (CTR)
**Sent:** Thursday, February 09, 2017 5:58 PM
**To:** Nious, Lionel (HHS/OCR)
**Subject:** 16-247377, 17-258405

Lionel,

I spoke to (b)(6);(b)(7)(C) at HealthPointe this afternoon and asked if they received our letter dated December 15, 2016. She said they do not have any record of receiving OCR's letter from December. I emailed a PDF of the letter to her at her request. She said she would communicate with her manager about this matter and I gave my phone number for them to call.

Thanks,

Lesley Morgan, JD
Investigator
Contractor for Office for Civil Rights
U.S. Department of Health and Human Services
Ph: 206-615-2283
Fax: 206-615-2297
leidos



EXHBIIT 10-59

**From:** Zeller, Evelyn (HHS/OCR)
**Sent:** 27 Feb 2017 22:19:19 +0000
**To:** Morgan, Lesley (HHS/OCR) (CTR)
**Subject:** FW: Question re Lesley's Sigler case(s) - 258405

(b)(5)

Thanks,
Evelyn

*Evelyn Zeller, Esq.*
Supervisor
HHS/Office for Civil Rights
206-615-3869 (voice); 206-615-2297 (fax)

NOTICE: This message (including any attachments) from the U.S. Department of Health and Human Services, Office for Civil Rights, contains information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by reply email.

---

**From:** Lee, Yun-kyung (HHS/OCR)
**Sent:** Monday, February 27, 2017 2:16 PM
**To:** Zeller, Evelyn (HHS/OCR)
**Subject:** RE: Question re Lesley's Sigler case(s) - 258405

Evelyn,

(b)(5)

Peggy

---

**From:** Zeller, Evelyn (HHS/OCR)
**Sent:** Monday, February 27, 2017 1:06 PM
**To:** Lee, Yun-kyung (HHS/OCR)
**Subject:** Question re Lesley's Sigler case(s) - 258405

Hi Peggy,

(b)(5)

(b)(5)

Thanks in advance, Peggy!

Evelyn

*Evelyn Zeller, Esq.*
Supervisor
Office for Civil Rights, Pacific Region
U.S. Department of Health & Human Services
701 Fifth Avenue, Suite 1600, MS-11
Seattle, WA 98104
Voice: 206-615-3869, Fax: 206-615-2297

NOTE: The information contained in this message may be privileged and confidential. If you are NOT the intended recipient, please notify the sender immediately with a copy to OCRPrivacy@hhs.gov and destroy this message.

Please be aware that email communication can be intercepted in transmission or misdirected. Your use of email to communicate protected health information or other information of a confidential nature to us indicates that you acknowledge and accept the possible risks associated with such communication. Please consider communicating any sensitive information by telephone, fax or mail. If you do not wish to have your information sent by email, please contact the sender immediately.

| | |
|---|---|
| English | If you speak a non-English language, call 1-800–368–1019 (TTY: 1-800-537-7697), and you will be connected to an interpreter who will assist you with this document at no cost. |
| Español - Spanish | Si usted habla español marque 1-800-368-1019 (o a la línea de teléfono por texto TTY 1-800-537-7697) y su llamada será conectada con un intérprete que le asistirá con este documento sin costo alguno. |
| 中文 - Chinese | 如果你讲中文，请拨打1-800-368-1019（打字电话：1-800-537-7697)，你将被连接到一位讲同语种的翻译员为你提供免费服务。 |
| Tiếng Việt - Vietnamese | Nếu bạn nói tiếng Việt, xin gọi 1-800-368-1019 (TTY: 1-800-537-7697), và bạn sẽ được kết nối với một thông dịch viên, người này sẽ hỗ trợ bạn với tài liệu này miễn phí. |
| 한국어 - Korean | 한국어를 하시면 1-800-368-1019 (청각 장애용: 1-800-537-7697) 로 연락 주세요. 통역관과 연결해서 당신의 서류를 무료로 도와 드리겠습니다. |
| Tagalog (Filipino) | Kung ikaw ay nagsasalita nang Tagalog, tumawag sa 1-800-368-1019 (TTY: 1-800-537-7697) para makonek sa tagapagsalin na tutulong sa iyo sa dokumentong ito na walang bayad. |
| Русский - Russian | Если вы говорите по- русски, наберите 1-800-368-1019. Для клиентов с ограниченными слуховыми и речевыми возможностями: 1-800-537-7697), и вас соединят с русскоговорящим переводчиком, который вам поможет с этим документом безвозмездно. |

**From:** John
**Sent:** 11 Apr 2017 13:41:54 -0700
**To:** Morgan, Lesley (HHS/OCR) (CTR)
**Subject:** FW: OCR Failure to enforce HIPAA regulations - Transaction Number 17-258405
**Attachments:** OCRLetter-Mar14-2017.pdf

Dear Ms. Morgan,

I am writing to inquire about the status of my HIPAA complaint against HealthPointe Medical Group, transaction Number 17-258405.

Attached is the letter I received from OCR dated March 14, 2017. In this letter I was informed that you are the individual who will be handling my complaint against HealthPointe Medical Group for refusing to provide PHI upon request. As you can see from the included email history on this correspondence, I am working with Matt Rumley who is on the staff of my congresswoman, Linda Sanchez. I had to get the Congresswoman involved because, prior to getting the Congresswoman involved, OCR was refusing to take my complaint seriously and force HMG to produced the requested PHI.

Mr. Rumley, one of Congresswoman Sanchez's assistants, was informed that OCR would be accepting my complaint and taking action, and that HMG would have approximately 20 days to produce the requested PHI. By my counting that twenty days is pretty much over and I am writing to inquire about what progress has been made by OCR on the basic complaint and in forcing HMG to produce the requested PHI.

I would also like to know if OCR has reconsidered their position regarding the fact that HMG and their doctor, Dr. Kirshnarredy, made false statements to my WCAB insurance carrier; statements which I believe were retaliatory and resulted in my loss of insurance coverage. On March 22, 2017 I sent Mr. Rumley a detailed email explaining the whole situation regarding the fraudulent statements and how although the statements are acts of fraud, which is not regulated by OCR, the goal of the statements, which was to cause a loss of insurance benefits to me, was to retaliate against me for all of my complaints. I copied you on that earlier email to Mr. Rumley in the hope that OCR would take action on their own to update my complaint to include these retaliatory acts without my having to ask the Congresswoman to again step in. While I would rather simply have my complaint properly handled, I am not opposed to having the Congresswoman and her aids step in if that is what it takes to make progress.

Please respond and let me know what progress has been made. I wish to pass on this information to Mr. Rumley in case the Congresswoman needs to get involved again.

Thank you very much for your attention to this matter.

John Sigler

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Friday, March 24, 2017 10:50 AM
**To:** 'John'
**Subject:** RE: OCR Failure to enforce HIPAA regulations - Transaction Number 17-258405



EXHBIIT 10-62

Ok, John,

I've reviewed your email and attachments and definitely understand what you are saying. I'll keep you posted if I receive anything new from OCR.

Sincerely,

Matt

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Wednesday, March 22, 2017 5:15 PM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Cc:** Lesley.morgan@hhs.gov
**Subject:** RE: OCR Failure to enforce HIPAA regulations - Transaction Number 17-258405

Dear Mat,

I wanted to update you and Congresswoman Sanchez on the progress of getting OCR to investigate my complaint against HealthPointe Medical Group (HMG). Attached is a copy of a letter I received from OCR over the weekend. I apologize for not being more punctual, but my email sever crashed and I have been struggling to get it back up and running. From reading OCR's position, it appears this is one of those "two steps forward, one step back" scenarios. With yours and Congresswoman Sanchez's help it does look like we are making some progress, but it will be an uphill battle.

While it appears that OCR is going to accept my complaint for investigation, they are going to ignore one of the key elements of my complaint which is that HMG's intentionally made false statements to the insurance company which resulted in my loss of insurance coverage. Based upon correspondence I have received from HMG, I firmly believe that these statements were made as a form of intentional retaliation because of my HIPAA complaint activity. If you review the third complaint I filed with OCR on January 5, 2017, I believe I clearly explained that the treating physician at HMG, Dr. Kirshnarredy, made false statements to the insurance company's review doctor claiming that I no longer needed access to pain relieving medications because I was being referred to pain management (See highlighted text on top of page two of HighlightedUR-Review 271474).

None of these statements were true and in the three preceding physician reports, and the one physician report following the discussion between the insurance doctor and Dr. Kirshnarredy (see attached reports), there is absolutely no mention of pain management or weaning me off of vital medications I have been on for years to control my pain. Based upon Dr. Kirshnarredy's statements, the insurance company denied coverage of my pain relieving medications.

Under California Workers Comp law, I do have the right to an Independent Medical Review (IMR) if I do not agree with the insurance company's doctor; which I did request. As part of my defense for the IMR, I sent Dr. Kirshnarredy and HMG a letter on October 5, 2016 asking them to make a statement to the IMR concerning these claims that I did not need pain relieving medication because of pain management. Both Dr. Kirshnarredy and HMG refused to make any written statement to the IMR unit (see HMG letter dated October 6, 2016). From this response I think we can conclude the following:

1. If Dr. Kirshnarredy never made these statements, why didn't he tell the IMR that was not what he said?
2. If the insurance company doctor was confused and falsely reported what Dr. Kirshnarredy actually told him, why didn't Dr. Kirshnarredy correct the miscommunication?
3. If Dr. Kirshanrredy had gotten my case confused with another patient, why didn't Dr. Kirshnarredy clear up the confusion?

The fact that Dr. Kirshnarredy refused to make a single statement to the IMR clearly speaks volumes. It says that the comments the insurance company doctor reported Dr. Kirshnarredy making, were true. It says that there was no confusion or miscommunication on the part of the insurance doctor. Falsely claiming that I was going to pain management was exactly what Dr. Kirshnarredy intended. Finally, it says that Dr. Kirshnarredy had not made any mistake; Dr. Kirshnarredy clearly intended to make false statements to the insurance company which resulted in my loss of coverage and since these statements were false, and Dr. Kirshnarredy made no effort to claim an error or misunderstanding, the only explanation left is that he intentionally made these false statements and the only reason to do this would be as retaliation because of my HIPAA complaint activity.

I have copied Ms. Lesley Morgan, who is the OCR investigator, on this email in the hope that she will take the time to review the attachments and see for herself that the act of making fraudulent statements perpetrated by Dr. Kirshnarredy and HMG was clearly an act of retaliation against me. Yes, their actions were violations of Federal laws which do not fall within OCR's enforcement authority, but their unlawful acts were also acts of retaliation against a patient who made a HIPAA complaint and acts of retaliation DO fall under OCR's enforcement authority.

If I can not get Ms. Morgan and OCR to revisit all of my allegations and made an honest evaluation of the content of my claims, I may need you and Congresswoman Sanchez to step in again and get my complaint escalated up to a higher authority. I have actually done my homework and I know that Congresswoman Sanchez was an attorney specializing in labor law. She should be able to clearly see that Dr. Kirshnarredy's statements were false and that his and HMG's refusal to "correct" the record as a clear admission that the statements to the insurance company were not errors or miscommunications, and that those statements were a clear attempt to use the Worker's Comp system as a vehicle of retaliation. If OCR will not reconsider their decision to drop the most serious of the acts of retaliation that Dr. Kirshnarredy and HMG perpetrated, maybe the Congresswoman can explain to OCR the difference between prosecuting HMG and Dr. Kirshnarrdy for fraud (which OCR can not do), and prosecuting HMG and Dr. Kirshnarredy for retaliating against a patient for filing a HIPAA complaint by committing an act of fraud.

Plese stay in touch and let me know if you learn anything new from OCR. I will let you know if I hear anything on my end and we will see of OCR will revisit their decision regarding Dr. Kirshnarredy and HMG's actions to torpedo my insurance coverage in retaliation for me filing a HIPAA complaint.

Thanks for your time and effort.

John Sigler

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Thursday, March 16, 2017 12:23 PM



EXHBIIT 10-64

**To:** 'John'
**Subject:** RE: OCR Failure to enforce HIPAA regulations

Good afternoon John,

I've spoken with the Pacific Regional Office of OCR and got the sense that it is highly uncommon for an organization not to comply with their obligations under HIPAA after receiving initial technical assistance from OCR. In light of HealthPointe's nonresponse, OCR has opened a new investigation into this matter. I'm told you will be receiving a letter in the mail within the next few days outlining this. OCR has made an additional data request to HealthPointe to which they have 20 days to respond (though they may be able to request a short extension). I will continue to be in contact with OCR and request regular updates on the progress of this investigation and keep you updated as I receive new information.

Regards,

Matt

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Wednesday, March 15, 2017 9:36 AM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** OCR Failure to enforce HIPAA regulations

Dear Matt,

Thanks for your help.

I should let you know that I have also contacted the District Attorney's office because California State Law also says that a doctor shall provide the patient with copies of his medical records upon written request.

I have asked the District Attorney about filing charges against HealthPointe Medical Group for violating California law. The reason this could be of importance is that if at trial I have to state what efforts I made to get my medical records, the fact that I contacted Congresswoman Sanchez would become a matter of public record. I am tired of being caught in the middle in this affair. If a defense lawyer claims I did not do enough to pursue my records, I will fight back and show that I made every possible effort to get my records and it was the Government and HealthPointe who failed to follow the law.

I should also tell you that I am working on a Plan C which will entail filing a civil lawsuit against HealthPointe. While I cannot sue HealthPointe for violating HIPAA laws, it seems that I can sue them with the cause for action being negligence and the negligent act being their failure to follow HIPAA laws. This has been done in other States and it becomes a fine point as to how the Plaintiff states the lawsuit as to whether a lawsuit is allowed to move forward. I am reading up on how to do this and if I go with Plan C, I will have no choice but to disclose every effort I have made to obtain my records and have everyone end up in court as a witness. Again, please make sure you exhaust every possible approach because HealthPointe's only possible defense will be that I did not make a reasonable effort to demand my medical records, and I will fight them and prove that I made every possible effort.

I appreciate the efforts you are making and I ask that you make sure you make every possible effort so if finger-pointing does occur during a trial, you and the Congresswoman are protected. Assuming you are

on my team in this matter, I ask that you make sure you do everything possible so no one on my team can be accused of negligence or "dropping the ball".

Thanks again.

John Sigler

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Tuesday, March 14, 2017 2:49 PM
**To:** 'John'
**Subject:** RE: Privacy Release Form

John,
I'm looking into it further and I will get back with you before the end of the week,
Matt

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Monday, March 6, 2017 12:27 PM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Matt,

Thanks for the response. Luckily I did the flu thing back at the start of December.

I did receive the February 2, 2017 letter from OCR and I have already responded to OCR and provided them the information that they requested. According to my records my response went out on February 8, 2017.

Just in case you have not figured it out, you and Congresswoman Sanchez are being conned. This letter from OCR is a bunch of double talk and they are refusing to address the problem which is OCR's refusal to enforce Federal regulations. The continuing problem is that OCR is not doing anything productive regarding my complaints. I already sent you a copy of the December 15, 2016 letter that OCR sent me. As I previously stated, OCR's approach of "providing technical assistance to HealthPointe" never solved the problem. HealthPointe ignored their letter and HealthPointe has still not provided me my healthcare information as requested and it has been three months since OCR "provided technical assistance".

You need to look at the incompetent way that OCR has responded to this complaint. What do you think our world would be like if law enforcement only "provided technical assistance" to criminals. If law enforcement acted the same way OCR has, law enforcement would simply give everyone a warning and never follow up to make sure the criminals are not continuing to break the law. Essentially what OCR did was tell HealthPointe that the law requires them to provide me copies of my healthcare information, and HealthPointe basically is ignoring OCR and continuing to do as they please, which is to violate Federal regulations.

Maybe the question you need to be asking OCR is what are they doing to enforce the HIPAA regulations since their decision to "provide technical assistance" to HealthPointe three months ago has not worked.

Since HealthPointe has not taken to heart OCR's decision to "provided technical assistant", is OCR going to do anything about that ; or is OCR simply going to let HealthPointe continue to violate Federal regulations? Someone at OCR is too lazy to do their job, and you and Congresswoman Sanchez are being played.

Please let me know what Plan B is. There has to be some action that can be taken to force OCR to enforce the law.

Thanks for your help.

John Sigler

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Monday, March 06, 2017 9:37 AM
**To:** 'John'
**Subject:** RE: Privacy Release Form

John,

Apologies, I've been out with the flu for several days. We did receive a response from OCR while I was out which is attached. Did you receive the February 2 letter referenced in this response requesting additional info?

Matt

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Thursday, March 2, 2017 9:28 AM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Mr. Rumley,

Please reference the January 31 response that you sent me regarding Congresswoman Sanchez's assistance in getting the Department of Health and Human Services Office for Civil Rights (OCR) to do their job.

It has now been over 30 days and I have heard nothing from the OCR. Have you? My guess is that your inquiries are also being ignored.

I believe you and the Congresswoman need to look at this in the same light as the VA scandal that occurred a couple of years ago. I would be willing to bet that management personnel at the OCR received performance based bonuses and those bonus are tied into the number of closed and open complaints. In order to maximize their yearend bonuses I believe these management personnel have employees close out complaints without ever verifying that federal laws are being complied with. In my case the OCR simply sent the doctor a letter telling them that the law requires them to release my medical records to me and then the OCR closed out the case falsely claiming that the complaint had been handled. I also believe that there is a strong possibility that the OCR is not responding to your

inquiry because you will be exposing their scheme to falsely inflate their performance numbers in order to obtain undesired bonuses.

I believe there is sufficient evidence here to indicate that all is not right at the OCR, especially their San Francisco branch. So what would be the next step? Do you and Congresswoman Sanchez have a Plan B? Would going to the news media be an appropriate next step? If so, would the Congresswoman be agreeable to publicly side with me, or is that an inappropriate political move and I need to go to the media all on my own?

As you stated in your previous email I am very frustrated with the experience. It is maddening that a Government office like the OCR, who is tasked with enforcing Federal regulations, is more concerned about covering up their lack of performance then actually doing their job. This is the OFFICE FOR CIVIL RIGHTS. This should be the absolutely last federal agency who is refusing to do their job.

Please let me know what your Plan B is. Hopefully you have one, and if not, can we team up and try mine.

Regards,

John Sigler

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Tuesday, January 31, 2017 4:38 PM
**To:** 'John'
**Subject:** RE: Privacy Release Form

Mr. Sigler,

When we receive cases from constituents we make an initial contact with the federal agency involved, in this case the Department of Health and Human Services Office for Civil Rights. The agency is then given 30 days to provide an official response to our office addressing your concerns. In most cases, but not always we receive a response sooner than this. As soon as I receive any responses I will update you. I understand your frustration with this experience completely— please be assured we have not simply passed the buck.

Additionally, Congresswoman Sanchez will not be in attendance at community office hours in Whittier tomorrow (one of our staffers will be present to assist constituents). It is a public event and you are of course welcome to come, I just wanted to let you know.

Thank you,
Matt

---

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Tuesday, January 31, 2017 3:03 PM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Mr. Rumley,



**EXHBIIT 10-68**

I regards to your question, how am I to know what, if anything, the Congresswoman's office has done. Did you ever contact me back telling me you had submitted an inquiry? NO. And if you did submit an inquiry, who did you submit it to? Based upon my experience with Government officials, there is a good chance you are doing the exact thing that OCR did. You send out a letter and then mark the complaint as handled.

Let's be clear here; a Government agency (OCR) responsible for enforcing Federal regulations receives a complaint and all they do is send out a letter to the party violating the law, and then they make the complaint as closed. They never once actually contacted the party violating the law. They never once made any effort to insure that the offending party took corrective action. The whole way OCR has handled this complaint stinks of fraud. These Government employees are claiming that they closed out a complaint when they really did basically nothing. I would bet that their annual performance review, and their merit increase is tied to the percentage of cases that they claim have been closed. There really needs to be a criminal investigation into the working of the Pacific Regional office of the OCR.

As I told you, I am not going to let this matter lie. It has been almost six months since I first filed my HIPAA complaint, and it took OCR five months to simply tell me that they sent out a letter and then closed out my compliant. I have sat back and been patient and see how that has worked for me. Absolutely nothing got accomplished.

I am sure I am not a special case, so that means there are hundreds of US citizens who have also filed complaints with the office of OCR and have had their complaints closed out when nothing has actually been resolved. Putting pressure on Congresswoman Sanchez and on the offices of Senators Feinstein and Harris is the only recourse I have to force these Federal employees to do their jobs. I am going to show up tomorrow to voice my complaint in person so the Congresswoman understands that this is fraud. No Government employee should be allowed to simply send out a letter without any follow up whatsoever, and then claim a complaint has been resolved.

John Sigler

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Tuesday, January 31, 2017 10:35 AM
**To:** 'John'
**Subject:** RE: Privacy Release Form

I confirmed receipt of your email on January 25th, I've submitted an inquiry. Not sure why your being so aggressive with me when I have offered to assist.

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Tuesday, January 31, 2017 8:04 AM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Mr. Rumley,

I have not heard back from the Congresswoman's office regarding my issue with OCR.

I am not simply going to go away. I will be showing up to the Congresswoman's Community Office Hours tomorrow, February 1, 2017 at the Whittier Public Library to ask the Congresswoman in front of her constituents why such negligence and fraud is being allowed to exist within a branch of the Federal Government, especially a branch whose sole job is to respond to citizen complaints about violations of Federal Regulations.

Regards,

John Sigler

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Wednesday, January 25, 2017 1:18 PM
**To:** 'John'
**Subject:** RE: Privacy Release Form

Confirming receipt

---

**From:** John [mailto:John@SWS-LLC.com]
**Sent:** Monday, January 23, 2017 2:33 PM
**To:** Rumley, Matt <Matt.Rumley@mail.house.gov>
**Subject:** RE: Privacy Release Form

Dear Mr. Rumley,

I am returning a copy of the signed Privacy Release form you sent me on January 9th.

To fully explain the issue I need Congresswoman Sanchez's assistance with, I have attached the following documents:

1. SanchezLetter-01.pdf – Letter describing my current problems with the Office of Civil Rights
2. CaseworkAuthorizationForm.pdf - signed privacy release form
3. OCR-HIPAA-Complaint-8-25-2016.pdf - HIPAA complaint filed with Office of Civil Rights on August 25, 2016
4. OCR-Letter-12-15-2016.pdf - Office of Civil Rights Response, dated December 15, 2016
5. OCR-HIPPA-Complaint-1-5-2017.pdf - HIPPA complaint filed with Office of Civil Rights on January 5, 2017.
6. HealthPointe-Subpoena-7-25-2016.pdf - First WCAB subpoena served on HealthPointe Medical Group, July 25, 2016
7. HealthPointe-Subpoena-10-26-2016.pdf - Second WCAB subpoena served on HealthPointe Medical Group, October 26, 2016.
8. RecordsRelease.pdf - Written request for Protected Healthcare Information provided to HMG on August 24, 2016.

Please let me know if you need any further information. You can email me or call me at 714-697-8576.

Thanks again for your help.

John W. Sigler
13129 Stern Ave
La Mirada, CA 90638
Cell No. (714) 697-8576

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Thursday, January 19, 2017 11:04 AM
**To:** 'john@sws-llc.com'
**Subject:** Privacy Release Form

Mr. Sigler,

Please complete/sign the attached privacy form and return it to me along with the relevant documents we discussed. I'll make an inquiry on your behalf once I have received them.

Thank you,

Matt Rumley
Casework Manager
Office of Congresswoman Linda T. Sánchez (CA-38)
12440 E. Imperial Hwy., Ste. 140, Norwalk CA 90650
**P** (562) 860 5050
**F** (562) 924 2914

**DEPARTMENT OF HEALTH & HUMAN SERVICES** **OFFICE OF THE SECRETARY**
Voice - (415) 437-8310, (800) 368-1019
TDD - (415) 437-8311, (800) 537-7697
FAX - (415) 437-8329
http://www.hhs.gov/ocr/

**Office for Civil Rights, Pacific Region**
**90 7th Street, Suite 4-100**
**San Francisco, CA 94103**

March 14, 2017

Mr. John Sigler
13129 Stern Avenue
La Mirada, CA 90638

OCR Transaction Number: 17-258405

Dear Mr. Sigler:

On January 5, 2017, the Office for Civil Rights (OCR), Department of Health and Human Services (HHS), received your complaint alleging that HealthPointe Medical Group (HMG) is not in compliance with the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules). Specifically, you allege that HMG refused to provide you with a complete copy of your medical records despite written and verbal attempts to obtain copies. You further allege that HMG retaliated against you for filing a complaint with OCR by terminating you as a patient on or about August 8, 2016. OCR has accepted your complaint for investigation because these allegations could reflect violations of 45 C.F.R. §§ 164.524 and 164.530(g). Please be advised, however, that OCR cannot accept your allegations of fraud by HMG, as such allegations do not fall within OCR's enforcement authority.

OCR enforces the Privacy and Security Rules, and the Breach Notification Rule. OCR also enforces Federal civil rights laws that prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and, under certain circumstances, sex, and religion.

OCR is responsible for enforcing the Privacy and Security Rules as they apply to "covered entities" and "business associates." Covered entities are health care clearinghouses, health plans, and health care providers that transmit health information in electronic form in connection with a transaction for which HHS has adopted standards. See 45 C.F.R. Part 162. Business associates are persons or entities that provide certain services to or perform functions on behalf of covered entities, or other business associates of covered entities, that require access to protected health information.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions, please do not hesitate to contact Ms. Lesley Morgan, J.D., Investigator, at (206) 615-2283 (Voice) or Lesley.Morgan@hhs.gov (Email). When contacting this office, please remember to include the transaction number that we have given this file.

Sincerely,

Michael Leoz
Regional Manager

**From:** John
**Sent:** 31 Oct 2017 16:37:25 -0800
**To:** 'Rumley, Matt'
**Cc:** Bell, Michael (OS/ASPA);Morgan, Lesley (HHS/OCR) (CTR);OS FOIA Request (HHS/ASPA);Williams, Wakema (HHS/ASPA);HHS FOIA Public Liaison (OS/ASPA);ogis@nara.gov;Marquis, Michael (OS/ASPA);Noonan, Timothy (OS/OCR);Leoz, Michael (HHS/OCR);Teti, Catherine (HHS/OS/ASPA);HHS Chief FOIA Officer (OS/ASPA);ogis@nara.gov
**Subject:** FW: HHS Refusal to comply with FOIA Request 2017-01205-FOIA-OS
**Attachments:** HHS FOIA Request -Acknowledgement Letter1.Docx, FOIA Denial Response Template.pdf

Dear Mr. Matt Rumley (Staff member for Congresswoman Linda Sanchez),

Matt, I need you and Congresswoman Sanchez to make some more phone calls regarding OCR refusing to process HIPAA complaints and HHS refusal to process FOIA requests. Once you have made some phone calls, I need you to send me a brief record documenting all the people you have talked to at OCR and HHS. I am fed up with the incompetence and the corruption that I have encountered with OCR refusing to act on formally submitted HIPAA complaints, and then HHS covering up the evidence of OCR's non-performance by refusing to respond to legal FOIA requests. I am going to escalate this matter to the HHS Inspector General's office as well as the US Attorney's office in Los Angeles.

Let's review the following complaints concerning OCR refusing to process properly submitted HIPAA violation complaints and HHS employees refusing to respond to FOIA requests asking for complaint records which would prove OCR is ignoring lawfully filed complaints. **I am also highlighting the specific Government employees involved in each complaint so you will know who is not doing their job.**

OCR VIOLATIONS

1) HIPAA violation complaint #16-247377 was filed with OCR on August 25, 2016 against HealthPointe Medical Group for refusing to provide copies of my medical records. OCR responded on December 15, 2016 by sending a letter to HealthPointe to "provide technical assistance" and closed the file. HealthPointe ignored OCR and has continued to refuse to provide copies of my medical records. **(Michael Leoz, Regional Manager OCR Pacific Region)**
2) HIPAA violation complaint #17-258405 was filed with OCR on January 5, 2017 regarding HealthPointe's continued refusal to provide my medical records. It is now ten months later and OCR has taken no action against HealthPointe for violating HIPAA regulations and ignoring OCR's December 15, 2016 letter. There should be a $10,000 fine for each HIPAA violation. **(Michael Leoz, Regional Manager OCR Pacific Region, Lesley Morgan, private contractor with Leidos)**
3) HIPAA violation complaint #17-270034 was filed with OCR on May 9, 2017 against CVS Pharmacy for failing to provide copies of my medical records. OCR responded on May 26, 2017 by sending a letter to CVS to "provide technical assistance" and closed the file. CVS ignored OCR and has continued to refuse to provide copies of my medical records. **(Timothy Noonan – Acting Director, CCMO)**
4) HIPAA violation complaint #17-276291 was filed with OCR on July 17, 2017 regarding CVS's continued refusal to provide my medical records. In is now three months later and OCR is still trying to "decide whether OCR has authority and is able to take action". On May 26, 2017 OCR told CVS to follow the law and provide my medical records and CVS has refused. How much brain power does it take to see that OCR needs to follow up when their orders to a medical

provider are ignored. There should be a $10,000 fine for this HIPAA violation. **(Shirlene Peterson - OCR Eastern Region)**

HHS VIOLATIONS

1) It is now 28 working days since I filed an appeal of my last FOIA request on September 21, 2017 (Case No. 2017-00737-FOIA-OS) and HHS is still refusing to comply. In the attached letter signed by Mr. Bell for Michael Marquis, Director of FOI/Privacy Acts Division, Mr. Bell clearly states that FOIA requests will be processed within 20 working days, but because of unusual circumstances like 1) dealing with external field offices, and heavy volume of FIOA requests, Mr. Bell is utilizing a 10 working day extension rule to process my request. 28 days later and Mr. Bell has still not responded and I doubt that Mr. Bell, his Supervisor Micheal Marquis, or Ms. Catherine Teti are going to respond in the next two days. **(Michael Bell - HHS FOIA Public Liaison, Michael Marquis – Director FOI/Privacy Acts Division, Catherine Teti - Deputy Agency Chief FOIA Officer, HHS).**
2) HHS failed to respond to my FOIA request submitted on May 10, 2017 when I requested all documents regarding my two HIPAA complaints filed with OCR (complaint #16-247377 and complaint # 17-258405). HHS / OCR completely refused to provide any information regarding my OCR Complaint #17-258405 which was filed on January 5, 2017, and they only provided copies of the original complaint I sent in for the Complaint#16-247377; although, it should be noted that HHS redacted any information that provided physical proof that my medical provider had violated HIPAA laws even when the proof was documents that I had submitted to OCR. **(Wakema Williams – HHS, Michael Bell - HHS FOIA Public Liaison, Michael Marquis – Director FOI/Privacy Acts Division)**

Matt I need you to contact the following people and find out why they are not doing their jobs.

1) Michael Bell –Deputy Director HHS - 202-690-7453, find out why HHS refuses to provide all documents regarding my OCR complaint #16-247377 and complaint # 17-258405.
2) Michael Leoz – Regional Manager OCR Pacific Region -415-437-8310, ask him why no action has been taken against HealthPointe for refusing to provide my medical records, OCR Complaint #17-258405.
3) Timothy Noonan – Acting Director, CCMO OCR Eastern Region – 800-368-1019 ask him why no action has been taken against CVS for continuing to refuse to provide my medical records OCR Complaint #17-276291. You can also try calling Shirlene Peterson at 212-264-3321 and ask her the same questions.

The interesting thing is that if you can get Michael Bell and Timothy Noonan off their fat behinds and get them to do their jobs and go after HealthPointe and CVS respectively, there would not have been any FOIA issue with HHS. The only reason there is a FOIA issue is because HHS is covering up for the incompetence of OCR not doing their job.

After you make these phone calls, please email me and tell me what results you get. I will want to include your response in the complaints I am going to file with the Inspector General's office as well as with the US Attorney's Office, unless you actually find some Government workers who are going to do their jobs.

As always, thanks for your assistance.

John Sigler
714-697-8576

**From:** michael.bell@hhs.gov [mailto:michael.bell@hhs.gov]
**Sent:** Thursday, October 05, 2017 5:37 AM
**To:** john@SWS-LLC.com
**Subject:** HHS FOIA Request 2017-01205-FOIA-OS

RE: **2017-01205-FOIA-OS**

**Mr. John Sigler**
**13129 Stern Ave**
**La Mirada, CA 90638**

Dear **Mr. Sigler:**

This is in response to your Freedom of Information Act (FOIA) request, dated: **May 10, 2017**, concerning **"This is an OCR Transaction numbers #16-247377 and 17-258405. In August 2016 a HIPAA complaint was filed by John Sigler against HealthPointe Medical Group (transaction numbers 16-247377 and 17-258405)."** We received your request on **September 21, 2017** and have begun processing your request.

Sincerely,
**Michael Bell**
**Deputy Director**
**Main Office Line: 202-690-7453**



**EXHBIIT 10-75**

DEPARTMENT OF HEALTH & HUMAN SERVICES

Office of the Secretary

Assistant Secretary for Public Affairs
Washington, D.C. 20201

Refer to: Request Number **2017-01205-FOIA-OS**

**October 5, 2017**

Mr. John W Sigler
13129 Stern Ave
La Mirada, CA 90638

Dear Mr. Sigler:

This acknowledges receipt of your May 10, 2017, Freedom of Information Act (FOIA) request, submitted to the Department of Health and Human Services (HHS), FOI/Privacy Acts Division concerning:

**"OCR Transaction numbers #16-247377 and 17-258405."**.

We received your request on **September 21, 2017**.

We have initiated a search to locate records falling within the scope of your request. If our searching units advise us that you have requested a voluminous amount of records that require extensive search and examination, my staff will contact you shortly to discuss your willingness to modify your request.

The FOIA requires that we respond to your request within 20 working days of its receipt in this office. Please note the following unusual and exceptional circumstances that will impact our response time: (1) we will need to search for and collect records from components and/or field offices external to this office; and (2) because we receive a very heavy volume of FOIA requests, we will process your request in line with our established policy of "first in, first out" case processing. If either of these circumstances prevents our office from responding within the 20 working day timeframe, we will utilize a 10 working day extension to process your request, as permitted pursuant to the FOIA. This policy is consistent with court decisions regarding FOIA's time limits.

The law authorizes us to collect fees for responding to FOIA requests and assume that you are willing to pay any applicable fees for processing this request unless you have stated otherwise. If at any time the fee for processing your request is estimated to exceed $250.00, we will send you an invoice for the estimated fee and suspend further processing until payment of the invoiced amount is received. If the estimated processing fee does not exceed $250.00, we will send you an invoice for the actual fee with our response.

Please note the following:

If you believe that we should expedite the processing of your request because the requested records are needed in light of a compelling need; i.e., an imminent threat to the life and safety of an individual; an urgency to inform the public concerning government activity (provided you are a member of the media); a deadline in litigation; a deadline for commenting on proposed regulations; or other urgent matters, you must ask for expedited processing in writing and provide to this office as much relevant information as possible. In line with 5 U.S.C. § 552(a)(6)(E)(vi), you must demonstrate the compelling need in a statement certified to be true and correct to the best of your knowledge and belief. Attach any supporting documentation to your statement, including a court scheduling order if your request is based upon a litigation deadline. (Fax supporting documentation to the FOIA/PA Division at (202) 690-8320).

If your request seeks a waiver or reduction of the fees that we would customarily charge for furnishing agency records and your request does not contain sufficient information to enable us to determine whether a waiver or reduction of fees is warranted, you should provide such information to this office within 10 working days of receipt of this letter. In line with 45 C.F.R. § 5.45, such information must include a detailed explanation of how disclosure to you: (1) is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and (2) is not primarily in the commercial interest of the requester. I especially need to know how you intend to disseminate the information to the public.

When submitting this additional information, please refer to the case number listed at the top left-hand corner of this letter, and send it to:

FOI/Privacy Acts Division
U.S. Department of Health and Human Services
200 Independence Avenue S.W.
Room 729H
Washington, DC 20201

If you are not satisfied with any aspect of the processing and handling of this request, you have the right to seek dispute resolution services from:

Michael Bell
HHS FOIA Public Liaison
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Public Affairs
Room 729H
200 Independence Avenue, S.W.
Washington, DC 20201

Telephone: (202) 260-0793
E-mail: HHS_FOIA_Public_Liaison@hhs.gov

and/or:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road – OGIS
College Park, MD 20740-6001

Telephone: 202-741-5770
Toll-Free: 1-877-684-6448
E-mail: ogis@nara.gov
Fax: 202-741-5769

Any questions regarding the status of this request should be directed to our office at 202-690-7453.

Sincerely yours,

For Michael Bell

Michael S. Marquis
Director
FOI/Privacy Acts Division

DEPARTMENT OF HEALTH & HUMAN SERVICES

Office of the Secretary

Assistant Secretary for Public Affairs
Washington, D.C. 20201

**Case No. 2017-00737-FOIA-OS**

**June 22, 2017**

Mr. John W. Sigler
13129 Stern Ave
La Mirada, CA 90638

Dear Mr. Sigler:

This letter is the final response to your May 10, 2017, Freedom of Information Act (FOIA) request. Specifically, you requested the following records: "This request has two OCR Transaction #(1)16-247377; (2)17-258405; Requesting any and all complaint against HealthPointe Medical Group."

The Office for Civil Rights (OCR) conducted a search and located **24 pages** of responsive records. After a careful review of these pages, I have determined to release **21 pages** to you in their entirety, and I am further releasing **two (2) pages** in part, with portions redacted, pursuant to Exemptions 5, 6, and 7C of the FOIA (5 U.S.C. §552 (b)(5), (b)(6), and (b)(7)(C)). I have also determined to withhold **one (1) page** in its entirety, pursuant to Exemption 4 of the FOIA (5 U.S.C. §552 (b)(4)).

FOIA exemption (b)(4) permits the withholding of trade secrets and commercial or financial information that is privileged or confidential. Please note that the one (1) page denied pursuant to Exemption (b)(4) consist of an internal business form from the HealthPointe Medical Group, Incorporated.

FOIA exemption (b)(5) protects inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency. This exemption protects documents that would be covered by any privilege an agency could assert in a civil proceeding. These privileges include, among others, the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. In this instance, the deliberative process privilege applies.

FOIA exemption (b)(6) permits a Federal agency to withhold information and records about individuals in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The definition of "similar files" has historically been broadly interpreted to include a wide variety of files, and the United States Supreme Court has held that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. I have analyzed these records and find they meet the threshold requirement of this exemption. Additionally, I have reviewed and weighed the public interest in disclosure of this information against the privacy interest in nondisclosure, and found that the privacy interest outweighs the public's interest in disclosure.

FOIA exemption (b)(7)(C) provides protection for personal information in records compiled for law enforcement purposes, for witnesses, third parties, and others, when such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

If you believe that the information withheld should not be exempt from disclosure, or this response constitutes an adverse determination, you may appeal. By filing an appeal, you preserve your rights under FOIA and give the agency a chance to review and reconsider your request and the agency's decision.

Your appeal must be mailed within 90 days from the date of receipt of this letter, to:

Ms. Catherine Teti
Deputy Agency Chief FOIA Officer
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Public Affairs
Room 729H
200 Independence Avenue, S.W.
Washington, DC 20201

Please clearly mark both the envelope and your letter "Freedom of Information Act Appeal." You may also e-mail your appeal to: HHS.ACFO@hhs.gov.

If you would like to discuss our response before filing an appeal to attempt to resolve your dispute without going through the appeals process, you may contact the HHS FOIA Public Liaison for assistance at:

Michael Bell
HHS FOIA Public Liaison
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Public Affairs
Room 729H
200 Independence Avenue, S.W.
Washington, DC 20201

Telephone: (202) 260-0793
E-mail: HHS_FOIA_Public_Liaison@hhs.gov

If you are unable to resolve your FOIA dispute through our FOIA Public Liaison, the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, offers mediation services to help resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is: