Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road–OGIS
College Park, MD 20740-6001

Telephone: 202-741-5770
Toll-Free: 1-877-684-6448
E-mail: ogis@nara.gov
Fax: 202-741-5769

There are no charges in this instance because the billable costs are less than our threshold of $25.

Sincerely yours,

For

Michael S. Marquis
Director
FOI/Privacy Acts Division

Enclosure(s)



EXHIBIT 10-80

**From:** John
**Sent:** 12 Jan 2018 13:25:35 -0800
**To:** Bell, Michael (OS/ASPA)
**Cc:** Morgan, Lesley (HHS/OCR) (CTR);OS FOIA Request (HHS/ASPA);Williams, Wakema (HHS/ASPA);HHS FOIA Public Liaison (OS/ASPA);ogis@nara.gov;Marquis, Michael (OS/ASPA);Noonan, Timothy (OS/OCR);Leoz, Michael (HHS/OCR);HHS Chief FOIA Officer (OS/ASPA);ogis@nara.gov;Folsom, Kia (OS/ASA/OCIO/OIS);OS OCRMail, Reg2 (HHS/OS);shirlene.peterson@hhs.gov;Stimson, Brian (HHS/OGC);Davis, Jeffrey (HHS/OGC);Flick, Heather (OS/OGC);OCR Mail;'Rumley, Matt';USACAC.CV-CivilRights@usdoj.gov;thom.mrozek@usdoj.gov;nickthanna@gmail.com
**Subject:** FW: FOIA Request # 2017-01205-FOIA-OS - FAILURE TO RESPOND BY HHS AND OCR
**Attachments:** Duplicate Response Letter1.Docx, 2017-00737-FOIA-OS.ZIP

Dear Mr. Bell

Attached you will find a copy of the zip file sent out by HHS in response to my FOIA request for records pertaining to OCR transaction Numbers 16-247377 and 17-258405. If you actually take the time to read what was sent by HHS, you will see that there are no records or any reference whatsoever regarding OCR transaction Number 17-258405. HHS and OCR have NEVER responded to my FOIA for records regarding OCR transaction Number 17-258405. HHS and OCR are covering up these records because they will prove that HealthPointe Medical Group (HMG) lied in their responses to OCR regarding my HIPAA violation complaint, and these records will most likely also show that OCR and Mr. Loez have a) propagated these lies, b) made no effort whatsoever to verify HMG's statements which were lies, c) have taken no action whatsoever when I finally found out about the lies in Mr. Loez's November 5, 2017 letter and sent OCR and Mr. Loez physical evidence proving HMG's statements were lies, and d) attempted to bury my HIPAA complaint. An embarrassing problem is that the FOIA records requested will probably show that Mr. Loez did nothing to address my HIPAA complaint until after I sent out my October 30, 2017 email to Congresswoman Linda Sanchez and multiple government officials regarding his failure to perform.

In the OCR determination letter sent out by Mr. Loez on November 5, 2017 (contained in my December 18, 2017 email), Mr. Loez specifically refers to statements made by HealthPointe medical group claiming: 1) that HMG never knew I filed a HIPAA complaint prior to August 8, 2016, 2) HMG has provided me copies of all RFA's within my medical records, and 3) that no records pertaining to authorization to treat have been excluded. On December 18, 2017 I sent all of you people copies of records proving each of these statements made by Mr. Loez and HealthPointe were false. You will also note that none of this alleged correspondence between OCR and HealthPointe was provided in the 2017-00737FOIA-OS release of records. ANYONE WHAT TO EXPLAIN THAT? Requests sent to HMG by OCR requesting documents pertaining to my allegations of HIPAA violations should absolutely be part of any response to a FOIA request for records pertaining to OCR transaction Number 17-258405. It should also be noted that any response from HMG should also be part of the FOIA recordset. HHS and OCR have provided not one single page of records pertaining to OCR transaction Number 17-258405. At the very least you should have provided a copy of the original complaint that I had filed.

On September 21, 2017 I filed an appeal specifically regarding the lack of a FOIA response concerning OCR transaction Number 17-258405 and HHS has refused to respond to that appeal. Also on September 21, 2017 I resubmitted my original FOIA request, which again included a request for all records

pertaining to OCR transaction Number 17-258405. While OCR may claim that back in June 2017 they were still investigating OCR transaction Number 17-258405, they can not make that same claim in regards to my FOIA sent on September 21, 2017, and most certainly HHS and OCR can not make that same claim for today's response. We have all seen OCR's written response closing out OCR transaction Number 17-258405 on November 6, 2017, so there is now absolutely no excuse for not producing all the records regarding OCR transaction Number 17-258405 . HHS and OCR continue to refuse to respond to my request for all records pertaining to OCR transaction Number 17-258405 because those records will prove fraud and conspiracy to commit fraud on the part of HMG and more than likely evidence of a deliberate attempt by OCR cover up this fraud and to ignore my HIPAA complaint altogether.

Your claim that you have previously responded to this FOIA request is false, unless you want to claim that your previous response was to ignore the FOIA request. It seems clear that you are never going to comply with a legal FOIA request regarding OCR transaction Number 17-258405 because the documents will prove that HealthPointe lied about releasing medical records and that Mr. Loez appears to have conspired with HealthPointe to cover up their fraudulent statements.

Every single one of you people have had the opportunity to read Mr. Loez's November 5, 2017 determination letter sent as an attachment to my December 18, 2017 email, and every single one of you people have had the opportunity to review the physical evidence I submitted in my December 18, 2017 email proving that the statements made in Mr. Loez's letter were false. WHAT ACTION HAS ANYONE OF YOU TAKEN?

1. Have anyone of you provided me copies of the false statements made by HMG that should be part of my FOIA request for OCR transaction Number 17-258405 records?
2. Has anyone of you opened an investigation into Obstruction of Justice violations, or violations of HMG lying to a Federal investigator? You already have the physical evidence proving these charges.
3. Where is the investigation regarding why it took Mr. Loez ten months to take any action regarding my HIPAA complaint filed on January 5, 2017? Mr. Loez's assistant has claimed that it took so long because there was numerous exchanges of correspondences between OCR and HMG. Should not copies of these correspondences be part of the document requested in my FOIA and should not at least some of them be dated in the September – October 2017 timeframe to justify Mr. Loez's claim that the actual investigation really took ten months?

It is apparent that none of you people are actually willing to do your jobs and protect the rights of American Citizens. We will now have to see what a US Federal Judge has to say. Let's see if any one you can produce a single piece of evidence showing that HHS or OCR has provided any response whatsoever in regarding to my FOIA request for documents regarding OCR transaction Number 17-258405.

See you in court.

John Sigler
714-697-8576

**From:** michael.bell@hhs.gov [mailto:michael.bell@hhs.gov]
**Sent:** Friday, January 12, 2018 11:26 AM
**To:** john@SWS-LLC.com
**Subject:** FOIA Request # 2017-01205-FOIA-OS

RE: FOIA Request # **2017-01205-FOIA-OS**

**January 12, 2018**

Dear Mr. John Sigler,

Please see the attached letter regarding FOIA request 2017-01205-FOIA-OS regarding OCR transaction numbers 16-247377 and 17-258405. We had previously responded to duplicate request 2017-00737-FOIA-OS on June 22, 2017.

Sincerely,

Michael Bell

**DEPARTMENT OF HEALTH & HUMAN SERVICES** Office of the Secretary

Assistant Secretary for Public Affairs
Washington, D.C. 20201

**Case No: 2017-01205-FOIA-OS**

**January 12, 2018**

Mr. John W Sigler
13129 Stern Ave
La Mirada, CA 90638

Dear Mr. Sigler:

This letter is in response to your May 10, 2017, Freedom of Information Act (FOIA) request. Specifically, you requested the following records: "This is an OCR Transaction numbers #16-247377 and 17-258405.

In August 2016 a HIPAA complaint was filed by John Sigler against HealthPointe Medical Group (transaction numbers 16-247377 and 17-258405). To date no significant progress has been made on this complaint. Congresswoman Linda Sanchez and her office have gotten involved to advocate for the complainant, and have talked to the OCR's Pacific Regional Office and still no progress. It has been approximately ten months since these HIPAA complaints were filed. I am requesting copies of all correspondences sent out by the Office of Civil Rights in their processing of these complaints to determine what, if any, effort is being made by OCR to respond to these HIPAA complaints. Specifically I am interested in correspondences sent to and received from HealthPointe Medical Group, to determine if OCR is even doing their job. This requested information will also be shared with Congresswoman Sanchez's office, especially if it shows that OCR has made false and misleading statements to the Congresswoman's office concerning their efforts in handling these complaints."

On September 21, 2017, the HHS FOI/Privacy Acts Division initially logged-in your FOIA request under case number 2017-01205-FOIA-OS. Upon further review by our office, we have determined that this is a duplicate of request number 2017-00737-FOIA-OS, submitted by you on May 10, 2017. We responded to request 2017-00737-FOIA-OS on June 22, 2017 (see enclosure). If you did not receive this response, please let us know and we will immediately resend the records.

This is to inform you that we have taken administrative action on January 12, 2018, to close request, 2017-01205-FOIA-OS, as a duplicate. If you have any questions or concerns about this correspondence, please do not hesitate to contact Michael Bell on 202-690-7453.

There are no charges in this instance because the billable costs are less than our threshold of $25.

Sincerely yours,

For Michael Bell

Michael S. Marquis
Director
FOI/Privacy Acts Division



**EXHIBIT 10-84**

12/9/16 2:16 PM: (b)(6);(b)(7)(C)
(b)(6);(b)(7)(C)

12/19/16 10:26 AM: Received call from C. He said he got our letter and he still does not have his records. I told him we just mailed the TA letter to CE at the same time we mailed the one to him, so it may take them a few days to comply. He said he has been waiting for these records since July. I told him I was sorry for the inconvenience, but they most likely would take a few days or weeks to comply with the TA letter. I told him if he did not have his records by early January to let us know and we would investigate the matter. He said he had some other records they have yet to provide and asked if he should file a complaint on those. I told him that if they were not addressed in his initial complaint, he could file another complaint if he felt they were not in compliance with HIPAA. He thanked me and said he would be in touch. I thanked him and we ended the call.

1/19/17 10:34 AM: Received call from C. He said he still does not have his records and he wants to know what we can do about it. I told him I would note his case file and determine the next steps with management. He said he filed another complaint on January 5 related to additional records he did not receive from CE. I looked the case up and asked if he mentioned the previous complaint. He said he hadn't because it was less than a month from when the closure letters went out in this case. I told him I would note the cases with this information and determine the next steps with management. I thanked him for calling and we ended the call.

DEPARTMENT OF HEALTH & HUMAN SERVICES OFFICE OF THE SECRETARY

Voice - (415) 437-8310, (800) 368-1019
TDD - (415) 437-8311, (800) 537-7697
(FAX) - (415) 437-8329
http://www.hhs.gov/ocr/

Office for Civil Rights, Pacific Region
90 7th Street, Suite 4-100
San Francisco, California 94103

December 15, 2016

Mr. John Sigler
13129 Stern Avenue
La Mirada, CA 90638

Re: OCR Transaction Number: 16-247377

Dear Mr. Sigler:

On August 25, 2016, the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received your complaint alleging that HealthPointe Medical Group (HMG), the covered entity, has violated the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules). Specifically, you allege that, in June 2016 through July 2016, HMG denied your verbal and written requests for copies of your protected health information. This allegation could reflect a violation of 45 C.F.R. § 164.524.

OCR enforces the Privacy, Security, and Breach Notification Rules, and also Federal civil rights laws which prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and under certain circumstances, sex and religion.

The Privacy Rule provides that an individual or an individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right to access the individual's protected health information (PHI), maintained by a covered entity in a designated record set, for as long as the PHI is maintained in the designated record set (e.g., medical or billing records). 45 C.F.R. §§ 164.502(g) and 164.524 (a)(1). A covered entity must act on the request for access no later than 30 days after receipt of such a request and, in certain circumstances, no later than 60 days after the receipt of such a request.

An individual also has a right to direct the covered entity to transmit the PHI about the individual directly to another designated person or entity. The request to direct the PHI to another person or entity must be in writing, signed by the individual, and clearly identify the person or entity being designated to receive the PHI, and where to send the PHI. A covered entity may accept an electronic copy of a signed request (e.g., PDF), as well as an electronically executed request (e.g., via a secure web portal) that includes an electronic signature.

The right of an individual to have PHI sent directly to a third party is an extension of the individual's right of access; consequently, all of the provisions that apply when an individual obtains access to his/her PHI apply when the individual directs a covered entity to send the PHI to a third party. As a result:

- This right applies to PHI in a designated record set;

- Covered entities must take action within 30 days (or 60 days if an extension is applicable) of the request;
- Covered entities must provide the PHI in the form and format and manner of access requested by the individual if it is "readily producible" in that manner; and
- The individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4).

See 45 C.F.R. § 164.524(c).

Individuals' rights under the HIPAA Privacy Rule to access PHI about themselves extends to PHI in a designated record set maintained by a business associate on behalf of a covered entity. Thus, if an individual submits a request for access to PHI, the covered entity is responsible for providing the individual with access not only to the PHI it holds but also to the PHI held by one or more of its business associates. However, if the same PHI that is the subject of an access request is maintained in both the designated record set of the covered entity and the designated record set of the business associate, the PHI need only be produced once in response to the request for access. See 45 C.F.R. § 164.524(c)(1).

With respect to PHI in a designated record set maintained by a business associate, the business associate agreement between the covered entity and the business associate will govern whether the business associate will provide access directly to the individual or will provide the PHI that is the subject of the individual's access request to the covered entity for the covered entity to then provide access to the individual. However, regardless of how and to what extent a business associate supports or fulfills a covered entity's obligation to provide access to an individual, a request for access still must be acted upon within 30 days (or 60 days if an extension is applicable) of receipt of the request by either the covered entity, or by a business associate if the request was made directly to the business associate because the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate. Further, all of the access requirements that apply with respect to PHI held by the covered entity (e.g., the individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4)) apply with respect to PHI held by the business associate.

An individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right both to receive a copy of PHI about the individual in the designated record set(s) maintained by a covered entity and its business associates, and to direct the covered entity, or its business associate if the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate, to transmit a copy of the PHI to another person or entity, upon request, consistent with the scope of such representation and the requirements of 45 C.F.R. § 164.524. See 45 C.F.R. § 164.502(g). The same requirements for fulfilling an individual's request to send the individual's PHI to a third party (e.g., with respect to timeliness, form and format, bases for denial, fee limitations, etc.) also apply to requests made by an individual's personal representative.

We have carefully reviewed your complaint against HMG and have determined to resolve this matter informally through the provision of technical assistance to HMG. If you continue to experience the issues you described in your complaint, please contact the OCR Investigator named below. Should OCR receive a similar allegation of noncompliance against HMG in the future, OCR may initiate a formal investigation of that matter.

For your informational purposes, OCR encourages you to review its technical assistance materials regarding individuals' right to access their protected health information under 45 C.F.R. § 164.524. Those materials are located at OCR's website at: http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html.

Based on the foregoing, OCR is closing this case without further action, effective the date of this letter. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Lesley Morgan, Investigator, at (206) 615-2283 (Voice) or (206) 615-2296 (TDD).

Sincerely,

Michael Leoz
Regional Manager

**DEPARTMENT OF HEALTH & HUMAN SERVICES** **OFFICE OF THE SECRETARY**

Voice - (415) 437-8310, (800) 368-1019
TDD - (415) 437-8311, (800) 537-7697
(FAX) - (415) 437-8329
http://www.hhs.gov/ocr/

**Office for Civil Rights, Pacific Region**
**90 7th Street, Suite 4-100**
**San Francisco, California 94103**

December 15, 2016

HealthPointe Medical Group
Attn: (b)(6);(b)(7)(C)
16702 Valley View Avenue
La Mirada, CA 90638

Re: OCR Transaction Number: 16-247377

(b)(6);(b)(7)(C)

On August 17, 2016, the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received a complaint from John Sigler (Complainant) alleging that HealthPointe Medical Group (HMG), the covered entity, has violated the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules). Specifically, Complainant alleges that, from June to July 2016, HMG denied Complainant's verbal and written requests for copies of his protected health information. This allegation could reflect a violation of 45 C.F.R. § 164.524.

OCR enforces the Privacy, Security, and Breach Notification Rules, and also Federal civil rights laws which prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and under certain circumstances, sex and religion.

The Privacy Rule provides that an individual or an individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right to access the individual's protected health information (PHI), maintained by a covered entity in a designated record set, for as long as the PHI is maintained in the designated record set (e.g., medical or billing records). 45 C.F.R. §§ 164.502(g) and 164.524 (a)(1). A covered entity must act on the request for access no later than 30 days after receipt of such a request and, in certain circumstances, no later than 60 days after the receipt of such a request.

An individual also has a right to direct the covered entity to transmit the PHI about the individual directly to another designated person or entity. The request to direct the PHI to another person or entity must be in writing, signed by the individual, and clearly identify the person or entity being designated to receive the PHI, and where to send the PHI. A covered entity may accept an electronic copy of a signed request (e.g., PDF), as well as an electronically executed request (e.g., via a secure web portal) that includes an electronic signature.

The right of an individual to have PHI sent directly to a third party is an extension of the individual's right of access; consequently, all of the provisions that apply when an individual obtains access to

his/her PHI apply when the individual directs a covered entity to send the PHI to a third party. As a result:

- This right applies to PHI in a designated record set;
- Covered entities must take action within 30 days (or 60 days if an extension is applicable) of the request;
- Covered entities must provide the PHI in the form and format and manner of access requested by the individual if it is "readily producible" in that manner; and
- The individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4).

See 45 C.F.R. § 164.524(c).

Individuals' rights under the HIPAA Privacy Rule to access PHI about themselves extends to PHI in a designated record set maintained by a business associate on behalf of a covered entity. Thus, if an individual submits a request for access to PHI, the covered entity is responsible for providing the individual with access not only to the PHI it holds but also to the PHI held by one or more of its business associates. However, if the same PHI that is the subject of an access request is maintained in both the designated record set of the covered entity and the designated record set of the business associate, the PHI need only be produced once in response to the request for access. See 45 C.F.R. § 164.524(c)(1).

With respect to PHI in a designated record set maintained by a business associate, the business associate agreement between the covered entity and the business associate will govern whether the business associate will provide access directly to the individual or will provide the PHI that is the subject of the individual's access request to the covered entity for the covered entity to then provide access to the individual. However, regardless of how and to what extent a business associate supports or fulfills a covered entity's obligation to provide access to an individual, a request for access still must be acted upon within 30 days (or 60 days if an extension is applicable) of receipt of the request by either the covered entity, or by a business associate if the request was made directly to the business associate because the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate. Further, all of the access requirements that apply with respect to PHI held by the covered entity (e.g., the individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4)) apply with respect to PHI held by the business associate.

An individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right both to receive a copy of PHI about the individual in the designated record set(s) maintained by a covered entity and its business associates, and to direct the covered entity, or its business associate if the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate, to transmit a copy of the PHI to another person or entity, upon request, consistent with the scope of such representation and the requirements of 45 C.F.R. § 164.524. See 45 C.F.R. § 164.502(g). The same requirements for fulfilling an individual's request to send the individual's PHI to a third party (e.g., with respect to timeliness, form and format, bases for denial, fee limitations, etc.) also apply to requests made by an individual's personal representative.

Pursuant to its authority under 45 C.F.R. §§ 160.304(a) and (b), OCR has determined to resolve this matter informally through the provision of technical assistance to CH. To that end, please review the OCR website for material explaining the Privacy Rule provisions related to Access to Medical Records here: http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html.

You are encouraged to review these materials closely and to share them with your staff as part of the Health Insurance Portability and Accountability Act (HIPAA) training you provide to your workforce. You are also encouraged to assess and determine whether there may have been any noncompliance as alleged by the complainant in this matter, and, if so, to take the steps necessary to ensure such noncompliance does not occur in the future. In addition, OCR encourages you to review the facts of this individual request for access and provide the requested access swiftly if the request meets the requirements of the Privacy Rule. Should OCR receive a similar allegation of noncompliance against your organization in the future, OCR may initiate a formal investigation of that matter. In addition, please note that, after a period of six months has passed, OCR may initiate and conduct a compliance review of your organization related to your organization's compliance with the Access provisions of the Privacy Rule.

Based on the foregoing, OCR is closing this case without further action, effective the date of this letter. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Lesley Morgan, Investigator, at (206) 615-2283 (Voice) or (206) 615-2296 (TDD).

Sincerely,

Michael Leoz
Regional Manager

US Code 45 CFR Section 164.524 (Health Insurance Portability and Accountability Act, HIPAA), clearly states that: â €œExcept as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set."

In addition, under US Code 45 CFR Section 160.103 Definitions., health information is defined as: any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

Based upon the above Federal Regulations, as the patient I am entitled to copies of any information relating to the provision of my health care, which includes any and all written correspondence sent to my health care provider by my insurance carrier which authorizes treatment.

In the Nov. 2015 timeframe there was a dispute as to the timeliness of "authorization to treat" sent to my medical care provider HealthPointe Medical Group from my workers compensation insurance carrier. In June 2016 I became aware of information that could settle the question as to whether the WC carrier violated California law in not providing timely authorization, or whether HealthPointe Medical Group was negligent in processing the authorization in a timely fashion. A key piece of evidence in this determination was correspondences received by HealthPointe from my WC carrier authorizing provision of treatment.

HealthPointe refused verbal requests for these correspondences so on July 25, 2016 a Subpoena Duces Tecum (attached as file HealthPointeSubpoena-served.pdf), authorized by the California Workers Compensation Appeals Board was served on HealthPointe Medical Group's Agent for Service of process. While the subpoena asks for several items, Item 1 which states "All emails, faxes, or US postal letters received by HealthPointe Med Group La Mirada relating to authorization of, or medical treatment for, John Sigler from Nov. 1, 2015 to Dec. 31, 2015" is clearly PROTECTED HEALTH INFORMATION, which I am entitled to.

Copies of this subpoena were emailed to HealthPointe and ignored, and personal service was refused at the local clinic in La Mirada where I receive treatment and where the correspondences were received. The La Mirada employees stated the subpoena had to be served on their office in Temecula California, so on July 14 a 140 mile round trip was made to HealthPointe's Temecula office where employees refused to accept the subpoena. The entire conversation was recorded. Failing in both these attempts, the subpoena was served on HealthPointe Medical Group's Agent for service of process, Kevin Lawrence on July 25, 2016, who is required under California to accept any subpoena for HealthPointe Medical Group. Healthpointe has since refused to respond to the subpoena, including Item 1 which specifically asks for Protected Health Information covered by HIPAA. HealthPointe has also ignored all other efforts and requests to obtain copies of the stated correspondences. I am asking that HealthPointe be ordered to produce copies of all requested correspondences and that penalties and sanction be imposed upon HealthPointe for violating HIPAA regulations.

Since serving the subpoena, the quality of healthcare from HealthPointe has diminished, and I believe that in retaliation for my medical record demands under HIPAA, on 8/8/2016 HealthPointe provided notice that in 30 days they would stop providing me any medical treatment.

**State of California**
**Department of Industrial Relations**
**Division Of Workers' Compensation**

# WORKER'S COMPENSATION APPEALS BOARD

Case No. ADJ2498007

(IF APPLICATION HAS BEEN FILED, CASE NUMBER MUST BE INDICATED REGARDLESS OF DATE OF INJURY)

JOHN SIGLER

Claimant/Applicant

vs.

AEROJET ROCKETDYNE, INC.

Employer/Insurance Carrier/Defendant

## SUBPOENA DUCES TECUM

(When records are mailed, identify them by using above case number or attaching a copy of a subpoena)

Where no application has been filed for injuries on or after January 1, 1990 and before January 1, 1994, subpoena will be valid without case number, but subpoena must be served on claimant and employer and/or insurance carrier.

**NO PERSONAL APPEARANCE NECESSARY** - See instructions below*

*People of the State of California Send Greetings to:* Custodian of Records, HealthPointe Medical Group

We COMMAND YOU to appear before: The Claimant / Applicant in Pro Per

at 13129 Stern Ave. La Mirada, CA. 90638

On the 25 day of July 2016, at 09:00 o'clock A M. to testify in the above-entitled matter and to bring with you and produce the following described documents, papers, books, records:

1) All emails, faxes, or US postal letters received by HealthPointe Med Group La Mirada relating to authorization of, or medical treatment for John Sigler from Nov. 1, 2015 to Dec. 31, 2015.
2) All internal logs, case management notes or any other documentation relating to authorization or attempts to obtain authorization to treat John Sigler from Nov. 1, 2015 to Dec. 31, 2015.
3) All incoming fax logs produced or maintained by HealthPointe or their fax communication software for all faxes received at, or directed to HealthPointe's La Mirada facility for the time period of November 19, 2015 to December 12, 2015. Fax logs will be accepted in hardcopy or in electronic format.
4) All logs or records of incoming US Postal communications received at HealthPointe's La Mirada facility for the time period of November 19, 2015 to December 31, 2015.

(Do not produce X-rays unless specifically mentioned above.)

For failure to attend as required, you may be deemed guilty of contempt and liability to pay to the parties aggrieved all losses and damages sustained thereby and forfeit one hundred dollars in addition thereto.

This subpoena is issued at the request of the person making the declaration on the reverse hereof, or on the copy which is served herewith.

Date 7/13/16

WORKERS' COMPENSATION APPEALS BOARD
OF THE STATE OF CALIFORNIA

Secretary, Assistant Secretary, Workers' Compensation Judge

WORKERS' COMPENSATION APPEALS BOARD EUREKA SEAL

***FOR INJURIES OCCURRING ON OR AFTER JANUARY 1,1990 AND BEFORE JANUARY 1, 1994:***

If no Application for Adjudication of Claim has been filed, a declaration under penalty of perjury that the Employee's Claim for Worker's Compensation Benefits (Form DWC-1) has been filed pursuant to Labor Code Section 5401 must be executed properly.

**SEE REVERSE SIDE**
**[SUBPOENA INVALID WITHOUT DECLARATION]**

You may fully comply with this subpoena by mailing the records described (or authenticated copies, Evid. Code 1561) to the person and place stated above within ten (10) days of the date if service of this subpoena. This subpoena does not apply to any member of the Highway Patrol, Sheriffs Office or city Police Department unless accompanied by notice from this Board that deposit of the witness fee has been made in accordance with Government code 68097.2, et seq.

## DECLARATION FOR SUBPOENA DUCES TECUM

Case No. ADJ2498007

**STATE OF CALIFORNIA**, County of Los Angeles

The undersigned states:
That he/she is (one of) the attorney (s) of records/representative (s) for the applicant/defendant in the action captioned on the reverse hereof that Custodian of Records, HealthPointe Medical Group
has in his/her possession or under his/her control the documents described on the reverse hereof. That the said documents are material to the issues involved in the case for the following reasons:

On November 19, 2015 a written request was submitted to patient John Sigler's Employer requesting authorization for treatment by HealthPointe provider, DR. Kirshnareddy. HealthPointe claims they did not receive authorization until on or about December 9, 2015. Mr. Sigler's Workers Compensation insurer, ESIS, claims that authorization was sent to HealthPointe on or about November 25, 2015 via fax and USPS, and the delay in treatment was due to negligence by HealthPointe employees. This subpoena seeks to discern the truth as to when authorization was provided to HealthPointe.

**Declaration for Injuries on or After January 1, 1990 and Before January 1,1994**

☐ That an Employee's Claim for Worker's Compensation Benefits (DWC Form 1) has been filed in accordance with Labor Code Section 5401 by the alleged injured worker whose records are sought, or if the worker is deceased, by the dependent (s) of the decedent, and that a true copy of the form filed is attached hereto. *(Check box if applicable and part of declaration below. See instructions on front of subpoena)*

I declare under penalty if perjury that the foregoing is true and correct.

Executed on July 17 ,2016 at La Mirada , California.

[signature] 13129 Stern Ave, La Mirada, CA 90638 714-697-8576

Signature Address Telephone

---

## DECLARATION OF SERVICE

STATE OF CALIFORNIA, County of Los Angeles

I, the undersigned, state that I served the foregoing subpoena by showing the original and delivering a true copy thereof, together with a copy of the Declaration in support thereof, to each of the following named persons, personally, at the date and place set forth opposite each name.

| Name of Person Served | Date | Place |
|---|---|---|
| Isabel Portocarrero for Kevin A. Lawrence Agent for service of process for Healthpointe Medical Group | 7/25/2016 | 28720 Roadside Dr. #231 Agoura Hills, CA. |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 25, 2016, at La Mirada, California.

[signature]
Signature

DIA WCAB 32 (Side 2) (Rev. 06/94)

Secretary of State banner

**Secretary of State Main Website** **Business Programs** **Notary & Authentications** **Elections** **Campaign & Lobbying** **State Archives**

**Business Entities (BE)**

Online Services
- **E-File Statements of Information for Corporations**
- **Business Search**
- **Processing Times**
- **Disclosure Search**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information** (annual/biennial reports)

**Filing Tips**

**Information Requests** (certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**

Customer Alerts
- **Business Identity Theft**
- **Misleading Business Solicitations**

## Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Tuesday, August 23, 2016. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| **Entity Name:** | HEALTHPOINTE MEDICAL GROUP, INC. |
| **Entity Number:** | C1386943 |
| **Date Filed:** | 09/24/1986 |
| **Status:** | ACTIVE |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | PO BOX 4499 |
| **Entity City, State, Zip:** | CERRITOS CA 90703-4499 |
| **Agent for Service of Process:** | KEVIN A LAWRENCE |
| **Agent Address:** | 28720 ROADSIDE DR #231 |
| **Agent City, State, Zip:** | AGOURA HILLS CA 91301 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search** **New Search** **Printer Friendly** **Back to Search Results**

**EXHIBIT 10-95**



HHS Sigler Production 18-cv-00683--000092

Form Approved: OMB No. 0990-0269.
See OMB Statement on Reverse.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

OFFICE FOR CIVIL RIGHTS (OCR)

# HEALTH INFORMATION PRIVACY COMPLAINT

| YOUR FIRST NAME | YOUR LAST NAME |
|---|---|
| john | Sigler |
| HOME / CELL PHONE (Please include area code) | WORK PHONE (Please include area code) |
| (714) 697-8576 | |

| STREET ADDRESS | CITY |
|---|---|
| 13129 Stern Ave | La Mirada |

| STATE | ZIP | E-MAIL ADDRESS (If available) |
|---|---|---|
| California | 90638 | john@SWS-LLC.com |

**Are you filing this complaint for someone else?** ☐ Yes ☒ No

If Yes, whose health information privacy rights do you believe were violated?

| FIRST NAME | LAST NAME |
|---|---|
| | |

**Who (or what agency or organization, e.g., provider, health plan) do you believe violated your (or someone else's) health information privacy rights or committed another violation of the Privacy Rule?**

PERSON/AGENCY/ORGANIZATION

HealthPointe Medical Group

| STREET ADDRESS | CITY |
|---|---|
| 16702 Valley View Ave | La Mirada |

| STATE | ZIP | PHONE (Please include area code) |
|---|---|---|
| California | 90638 | (800) 956-2663 |

**When do you believe that the violation of health information privacy rights occurred?**

LIST DATE(S)

08/24/2016

**Describe briefly what happened. How and why do you believe your (or someone else's) health information privacy rights were violated, or the privacy rule otherwise was violated? Please be as specific as possible.** (Attach additional pages as needed)

US Code 45 CFR Section 164.524 (Health Insurance Portability and Accountability Act, HIPAA), clearly states that: "Except as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set."

In addition, under US Code 45 CFR Section 160.103 Definitions., health information is defined as: any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or

This field may be truncated due to size limit. See the "Allegation Description" file in the case folder.

**Please sign and date this complaint. You do not need to sign if submitting this form by email because submission by email represents your signature.**

| SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|
| Sigler, john | 08/25/2016 |

Filing a complaint with OCR is voluntary. However, without the information requested above, OCR may be unable to proceed with your complaint. We collect this information under authority of the Privacy Rule issued pursuant to the Health Insurance Portability and Accountability Act of 1996. We will use the information you provide to determine if we have jurisdiction and, if so, how we will process your complaint. Information submitted on this form is treated confidentially and is protected under the provisions of the Privacy Act of 1974. Names or other identifying information about individuals are disclosed when it is necessary for investigation of possible health information privacy violations, for internal systems operations, or for routine uses, which include disclosure of information outside the Department for purposes associated with health information privacy compliance and as permitted by law. It is illegal for a covered entity to intimidate, threaten, coerce, discriminate or retaliate against you for filing this complaint or for taking any other action to enforce your rights under the Privacy Rule. You are not required to use this form. You also may write a letter or submit a complaint electronically with the same information. To submit an electronic complaint, go to OCR's Web site at: **www.hhs.gov/ocr/privacy/hipaa/complaints/index.html**. To mail a complaint see reverse page for OCR Regional addresses.

**The remaining information on this form is optional. Failure to answer these voluntary questions will not affect OCR's decision to process your complaint.**

**Do you need special accommodations for us to communicate with you about this complaint?** (Check all that apply)

☐ Braille ☐ Large Print ☐ Cassette tape ☐ Computer diskette ☐ Electronic mail ☐ TDD

☐ Sign language interpreter (specify language): ____________________

☐ Foreign language interpreter (specify language): ____________________ ☐ Other: ____________

**If we cannot reach you directly, is there someone we can contact to help us reach you?**

| | | |
|---|---|---|
| FIRST NAME | | LAST NAME |
| HOME / CELL PHONE (Please include area code) | | WORK PHONE (Please include area code) |
| STREET ADDRESS | | CITY |
| STATE | ZIP | E-MAIL ADDRESS (If available) |

**Have you filed your complaint anywhere else? If so, please provide the following.** (Attach additional pages as needed)

PERSON/AGENCY/ORGANIZATION/ COURT NAME(S)

| | |
|---|---|
| DATE(S) FILED | CASE NUMBER(S) (If known) |

**To help us better serve the public, please provide the following information for the person you believe had their health information privacy rights violated (you or the person on whose behalf you are filing).**

ETHNICITY (select one)

☐ Hispanic or Latino

☒ Not Hispanic or Latino

RACE (select one or more)

☐ American Indian or Alaska Native ☐ Asian ☐ Native Hawaiian or Other Pacific Islander

☐ Black or African American ☒ White ☐ Other (specify): ____________

PRIMARY LANGUAGE SPOKEN (if other then English) ____________

**How did you learn about the Office for Civil Rights?**

☒ HHS Website/Internet Search ☐ Family/Friend/Associate ☐ Religious/Community Org ☒ Lawyer/Legal Org ☐ Phone Directory ☐ Employer

☐ Fed/State/Local Gov ☐ Healthcare Provider/Health Plan ☐ Conference/OCR Brochure ☐ Other (specify): ____________

**To mail a complaint, please type or print, and return completed complaint to the OCR Regional Address based on the region where the alleged violation took place. If you need assistance completing this form, contact the appropriate region listed below.**

| | | |
|---|---|---|
| **Region I - CT, ME, MA, NH, RI, VT**<br>Office for Civil Rights, DHHS<br>JFK Federal Building - Room 1875<br>Boston, MA 02203<br>(617) 565-1340; (617) 565-1343 (TDD)<br>(617) 565-3809 FAX | **Region V - IL, IN, MI, MN, OH, WI**<br>Office for Civil Rights, DHHS<br>233 N. Michigan Ave. - Suite 240<br>Chicago, IL 60601<br>(312) 886-2359; (312) 353-5693 (TDD)<br>(312) 886-1807 FAX | **Region IX - AZ, CA, HI, NV, AS, GU, The U.S. Affiliated Pacific Island Jurisdictions**<br>Office for Civil Rights, DHHS<br>90 7th Street, Suite 4-100<br>San Francisco, CA 94103<br>(415) 437-8310; (415) 437-8311 (TDD)<br>(415) 437-8329 FAX |
| **Region II - NJ, NY, PR, VI**<br>Office for Civil Rights, DHHS<br>26 Federal Plaza - Suite 3312<br>New York, NY 10278<br>(212) 264-3313; (212) 264-2355 (TDD)<br>(212) 264-3039 FAX | **Region VI - AR, LA, NM, OK, TX**<br>Office for Civil Rights, DHHS<br>1301 Young Street - Suite 1169<br>Dallas, TX 75202<br>(214) 767-4056; (214) 767-8940 (TDD)<br>(214) 767-0432 FAX | |
| **Region III - DE, DC, MD, PA, VA, WV**<br>Office for Civil Rights, DHHS<br>150 S. Independence Mall West - Suite 372<br>Philadelphia, PA 19106-3499<br>(215) 861-4441; (215) 861-4440 (TDD)<br>(215) 861-4431 FAX | **Region VII - IA, KS, MO, NE**<br>Office for Civil Rights, DHHS<br>601 East 12th Street - Room 248<br>Kansas City, MO 64106<br>(816) 426-7277; (816) 426-7065 (TDD)<br>(816) 426-3686 FAX | |
| **Region IV - AL, FL, GA, KY, MS, NC, SC, TN**<br>Office for Civil Rights, DHHS<br>61 Forsyth Street, SW. - Suite 16T70<br>Atlanta, GA 30303-8909<br>(404) 562-7886; (404) 562-7884 (TDD)<br>(404) 562-7881 FAX | **Region VIII - CO, MT, ND, SD, UT, WY**<br>Office for Civil Rights, DHHS<br>999 18th Street, Suite 417<br>Denver, CO 80202<br>(303) 844-2024; (303) 844-3439 (TDD)<br>(303) 844-2025 FAX | **Region X - AK, ID, OR, WA**<br>Office for Civil Rights, DHHS<br>701 Fifth Avenue, Suite 1600, MS - 11<br>Seattle, WA 98104<br>(206) 615-2290; (206) 615-2296 (TDD)<br>(206) 615-2297 FAX |

**Burden Statement**

Public reporting burden for the collection of information on this complaint form is estimated to average 45 minutes per response, including the time for reviewing instructions, gathering the data needed and entering and reviewing the information on the completed complaint form. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: HHS/OS Reports Clearance Officer, Office of Information Resources Management, 200 Independence Ave. S.W., Room 531H, Washington, D.C. 20201. **Please do not mail complaint form to this address.**

# COMPLAINANT CONSENT FORM

The Department of Health and Human Services' (HHS) Office for Civil Rights (OCR) has the authority to collect and receive material and information about you, including personnel and medical records, which are relevant to its investigation of your complaint.

To investigate your complaint, OCR may need to reveal your identity or identifying information about you to persons at the entity or agency under investigation or to other persons, agencies, or entities.

The Privacy Act of 1974 protects certain federal records that contain personally identifiable information about you and, with your consent, allows OCR to use your name or other personal information, if necessary, to investigate your complaint.

Consent is voluntary, and it is not always needed in order to investigate your complaint; however, failure to give consent is likely to impede the investigation of your complaint and may result in the closure of your case.

Additionally, OCR may disclose information, including medical records and other personal information, which it has gathered during the course of its investigation in order to comply with a request under the Freedom of Information Act (FOIA) and may refer your complaint to another appropriate agency.

Under FOIA, OCR may be required to release information regarding the investigation of your complaint; however, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

Please read and review the documents entitled, *Notice to Complainants and Other Individuals Asked to Supply Information to the Office for Civil Rights* and *Protecting Personal Information in Complaint Investigations* for further information regarding how OCR may obtain, use, and disclose your information while investigating your complaint.

**In order to expedite the investigation of your complaint if it is accepted by OCR, please read, sign, and return one copy of this consent form to OCR with your complaint. Please make one copy for your records.**

- As a complainant, I understand that in the course of the investigation of my complaint it may become necessary for OCR to reveal my identity or identifying information about me to persons at the entity or agency under investigation or to other persons, agencies, or entities.

- I am also aware of the obligations of OCR to honor requests under the Freedom of Information Act (FOIA). I understand that it may be necessary for OCR to disclose information, including personally identifying information, which it has gathered as part of its investigation of my complaint.

- In addition, I understand that as a complainant I am covered by the Department of Health and Human Services' (HHS) regulations which protect any individual from being intimidated, threatened, coerced, retaliated against, or discriminated against because he/she has made a complaint, testified, assisted, or participated in any manner in any mediation, investigation, hearing, proceeding, or other part of HHS' investigation, conciliation, or enforcement process.

**After reading the above information, please check ONLY ONE of the following boxes:**

[X] **CONSENT:** I have read, understand, and agree to the above and give permission to OCR to reveal my identity or identifying information about me in my case file to persons at the entity or agency under investigation or to other relevant persons, agencies, or entities during any part of HHS' investigation, conciliation, or enforcement process.

[ ] **CONSENT DENIED:** I have read and I understand the above and do not give permission to OCR to reveal my identity or identifying information about me. I understand that this denial of consent is likely to impede the investigation of my complaint and may result in closure of the investigation.

Signature: Sigler, john Date: 08/25/2016

**Please sign and date this complaint. You do not need to sign if submitting this form by email because submission by email represents your signature.*

Name (Please print): Sigler, john

Address: 13129 Stern Ave, La Mirada, California, 90638

Telephone Number: (714) 697-8576 (H)

# NOTICE TO COMPLAINANTS AND OTHER INDIVIDUALS ASKED TO SUPPLY INFORMATION TO THE OFFICE FOR CIVIL RIGHTS

**Privacy Act**

The Privacy Act of 1974 (5 U.S.C. §552a) requires OCR to notify individuals whom it asks to supply information that:

— OCR is authorized to solicit information under:
(i) Federal laws barring discrimination by recipients of Federal financial assistance on grounds of race, color, national origin, disability, age, sex, religion under programs and activities receiving Federal financial assistance from the U.S. Department of Health and Human Services (HHS), including, but not limited to, Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794), the Age Discrimination Act of 1975 (42 U.S.C. §6101 et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. §1681 et seq.), and Sections 794 and 855 of the Public Health Service Act (42 U.S.C. §§295m and 296g);
(ii) Titles VI and XVI of the Public Health Service Act (42 U.S.C. §§291 et seq. and 300s et seq.) and 42 C.F.R. Part 124, Subpart G (Community Service obligations of Hill-Burton facilities);
(iii) 45 C.F.R. Part 85, as it implements Section 504 of the Rehabilitation Act in programs conducted by HHS; and
(iv) Title II of the Americans with Disabilities Act (42 U.S.C. §12131 et seq.) and Department of Justice regulations at 28 C.F.R. Part 35, which give HHS "designated agency" authority to investigate and resolve disability discrimination complaints against certain public entities, defined as health and service agencies of state and local governments, regardless of whether they receive federal financial assistance.
(v) The Standards for the Privacy of Individually Identifiable Health Information (The Privacy Rule) at 45 C.F.R. Part 160 and Subparts A and E of Part 164, which enforce the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. §1320d-2).

OCR will request information for the purpose of determining and securing compliance with the Federal laws listed above. Disclosure of this requested information to OCR by individuals who are not recipients of federal financial assistance is voluntary; however, even individuals who voluntarily disclose information are subject to prosecution and penalties under 18 U.S.C. § 1001 for making false statements.

Additionally, although disclosure is voluntary for individuals who are not recipients of federal financial assistance, failure to provide OCR with requested information may preclude OCR from making a compliance determination or enforcing the laws above.

OCR has the authority to disclose personal information collected during an investigation without the individual's consent for the following routine uses:

(i) to make disclosures to OCR contractors who are required to maintain Privacy Act safeguards with respect to such records;
(ii) for disclosure to a congressional office from the record of an individual in response to an inquiry made at the request of the individual;
(iii) to make disclosures to the Department of Justice to permit effective defense of litigation; and
(iv) to make disclosures to the appropriate agency in the event that records maintained by OCR to carry out its functions indicate a violation or potential violation of law.

Under 5 U.S.C. §552a(k)(2) and the HHS Privacy Act regulations at 45 C.F.R. §5b.11 OCR complaint records have been exempted as investigatory material compiled for law enforcement purposes from certain Privacy Act access, amendment, correction and notification requirements.

**Freedom of Information Act**
A complainant, the recipient or any member of the public may request release of OCR records under the Freedom of Information Act (5 U.S.C. §552) (FOIA) and HHS regulations at 45 C.F.R. Part 5.

**Fraud and False Statements**
Federal law, at 18 U.S.C. §1001, authorizes prosecution and penalties of fine or imprisonment for conviction of "whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations or makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry".

# PROTECTING PERSONAL INFORMATION IN COMPLAINT INVESTIGATIONS

To investigate your complaint, the Department of Health and Human Services' (HHS) Office for Civil Rights (OCR) will collect information from different sources. Depending on the type of complaint, we may need to get copies of your medical records, or other information that is personal to you. This Fact Sheet explains how OCR protects your personal information that is part of your case file.

## HOW DOES OCR PROTECT MY PERSONAL INFORMATION?

OCR is required by law to protect your personal information. The Privacy Act of 1974 protects Federal records about an individual containing personally identifiable information, including, but not limited to, the individual's medical history, education, financial transactions, and criminal or employment history that contains an individual's name or other identifying information.

Because of the Privacy Act, OCR will use your name or other personal information with a signed consent and only when it is necessary to complete the investigation of your complaint or to enforce civil rights laws or when it is otherwise permitted by law.

Consent is voluntary, and it is not always needed in order to investigate your complaint; however, failure to give consent is likely to impede the investigation of your complaint and may result in the closure of your case.

## CAN I SEE MY OCR FILE?

Under the Freedom of Information Act (FOIA), you can request a copy of your case file once your case has been closed; however, OCR can withhold information from you in order to protect the identities of witnesses and other sources of information.

## CAN OCR GIVE MY FILE TO ANY ONE ELSE?

If a complaint indicates a violation or a potential violation of law, OCR can refer the complaint to another appropriate agency without your permission.

If you file a complaint with OCR, and we decide we cannot help you, we may refer your complaint to another agency such as the Department of Justice.

## CAN ANYONE ELSE SEE THE INFORMATION IN MY FILE?

Access to OCR's files and records is controlled by the Freedom of Information Act (FOIA). Under FOIA, OCR may be required to release information about this case upon public request. In the event that OCR receives such a request, we will make every effort,

as permitted by law, to protect information that identifies individuals, or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If OCR receives protected health information about you in connection with a HIPAA Privacy Rule investigation or compliance review, we will only share this information with individuals outside of HHS if necessary for our compliance efforts or if we are required to do so by another law.

**DOES IT COST ANYTHING FOR ME (OR SOMEONE ELSE) TO OBTAIN A COPY OF MY FILE?**

In most cases, the first two hours spent searching for document(s) you request under the Freedom of Information Act and the first 100 pages are free. Additional search time or copying time may result in a cost for which you will be responsible. If you wish to limit the search time and number of pages to a maximum of two hours and 100 pages; please specify this in your request. You may also set a specific cost limit, for example, cost not to exceed $100.00.

If you have any questions about this complaint and consent package,
Please contact OCR at http://www.hhs.gov/ocr/office/about/contactus/index.html

*OR*

Contact your OCR Regional Office
(see Regional Office contact information on page 2 of the Complaint Form)

# Fax

RECEIVED

Date: Tuesday, January 31, 2017
Time: 7:51:14 AM

| | |
|---|---|
| To: | OCR - Michael Leoz -Pacifiic Region |
| Fax: | 1,202,619,3818 |
| From: | John Sigler |
| Fax: | 562-902-9867 |
| Phone: | 714-697-8576 |

Regarding: **OCR Complaint to Congresswoman Linda Sanchez**

URGENT - TIME DEPENDENT

Dear Mr. Leoz,
On Wednesday, February 1, 2017 at 4:00pm Congresswoman Linda Sanchez will be holding Community Office Hours at the Whittier Public Library. As you can see from the attached correspondence, I have already contacted her about the improper processing of a HIPAA Complaint filed with your office. Unless your office takes action by 3:00pm tommorrow, I will be attending said Community Office Hours and demanding that Congresswoman Sanchez take action against such misconduct that appears to be occurring in your office under your direction.

If you believe that you and your office staff can simply ignore valid HIPAA complaints with no consequences, you are sadly mistaken. I will be pressuring the Congresswoman, and if need be, I will embarass the Congresswoman in front of the other constituents present, if that is want it takes to get her to force your office to do its job.

If your office is willing to do its job, you can contacat me at 714- 697-8576 prior to 3:00pm tomorrow; otherwise, the Congresswoman will be hearing from me and eventually you will be hearing from her.

Regards,

John Sigler

Attachments: Letter to Congresswoman Linda Sanchez without attachments
Reference: OCR Transaction Number 16-247377

To: Congresswoman Linda Sanchez
Thirty-eight District – California

January 23, 2016

From: John W. Sigler
13129 Stern Ave.
La Mirada, CA. 90638
Ph. No. 714-697-8576

Dear Matt Rumley, Casework Manager for Congresswoman Sanchez,

Thank you very much for talking with me on January 19, 2016. I very much appreciate Congresswoman Sanchez's assistance in resolving this problem I am having in getting the Office for Civil Rights, Pacific Region to act upon a HIPAA compliant I filed with them on August 25, 2016. I believe that what is occurring with the Office of Civil Rights (OCR) is not only negligence and laziness on the part of the staff in the OCR's Pacific Region Office, but may even constitute willful fraud by the OCR to falsely inflate their performance reviews. In addition to asking Congresswoman Sanchez for assistance, the more I look at the behavior of the OCR the more I think that this is willful fraud on the part of the OCR's Pacific Region Office and that this is a case of Government Worker Fraud that should be brought to the attention of the news media. Hopefully between inquires by Congresswoman Sanchez and possibly the news media, something can be done to get the Office of Civil Rights, Pacific Region Office to properly process HIPAA complaints that are filed with that office.

**FEDERAL REGULATIONS**

US Code 45 CFR Section 164.524 (Health Insurance Portability and Accountability Act, HIPAA), states that: "Except as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set."

In addition, under US Code 45 CFR Section 160.103 Definitions., health information is defined as: any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

Following is some background information concerning the HIPAA violations that made up the complaints I filed with the Office of Civil Rights, and a discussion of the failed response I received from the OCR.

**BACKGROUND**

Based upon the above Federal Regulations, as the patient I am entitled to copies of any information relating to the provision of my health care, which includes any and all written correspondences sent to my health care provider by my insurance carrier, as well as copies of all correspondences sent to my insurance company by said healthcare provider. I am currently trying to get my Healthcare Provider, HealthPointe Medical Group (HMG) and Dr. Kirshnarredy to provide me with copies of the following two recordsets from my Protected Health Information (PHI):

1. **Copies of emails received by HMG during the month of December 2015 from my insurance carrier ESIS.** In November 2015 I requested ESIS to authorize a return visit to HMG for my worker's compensation injury. California law requires ESIS to provide authorization within 5 business days. Authorization was not provided as required by law. ESIS claims they sent it and HMG lost the authorization. HMG claims ESIS never sent authorization. I have seen an email sent on or about December 9, 2015 which contains proof as to who is telling the truth. That email contains information regarding the provision of healthcare to the patient, and under Federal law, HMG is required to provide me a copy of said correspondence.
2. **Copies of all Requests for Authorization (RFA) for medical treatment sent to my insurance company ESIS by my healthcare provider, HealthPointe Medical Group (HMG).** Over the last two years HMG has sent multiple RFA's to my insurance company ESIS requesting authorization for a variety of treatments. In June 2016 I obtained a copy of one such RFA and found out that while HMG sent in the basic form, they provided none of the required backup justification that they claimed they were sending in. Without reasonable backup justification, the RFA is denied. Not sending in reasonable justification is simply a way of the doctor doing less work and being able to process more patients per day. This was clearing fraud and I believe this fraud has been occurring for over two years. The RFA paperwork being sent to my insurance company is PHI that clearly regards the provision of healthcare to the patient, and under Federal law, HMG is required to provide me a copy of said correspondences.

**OCR COMPLAINTS**

On August 25, 2016 I filed a HIPAA violation compliant with the Office for Civil Rights (OCR), Pacific Region, a sub division of the U.S. Department of Health and Human Services. The complaint was against

the HealthPointe Medical Group (HMG) who since July 2016 has refused to provide me copies of the PHI described in Recordset 1. On December 15, 2016, four months after I filed this complaint, OCR sent out a letter stating that in response to my complaint, they had "determined to resolve the matter informally through the provision of technical assistance to HMG". In plain language this means that OCR sent HMG a letter saying that they are legally required to provide patients their PHI. OCR also stated that they were closing out my complaint, even though they never actually talked to the healthcare provider, nor had OCR received any evidence that the healthcare provider was complying with Federal Laws.

Obviously this is a clear attempt by OCR personnel to be able to claim a high closure rate on complaints filed with their office while not actually doing the work. If Michael Leoz, (the regional manager of the Office of Civil Rights, Pacific Region), has performance reviews and bonuses based upon his office's Closure Rate, then this appears to be a case of Mr. Leoz and his employee's falsely closing out OCR complaints for the sole purpose of artificially inflating his office's performance. This would be no different than the scandal that all America saw with the Veteran's Administration in 2015 when Government employees falsely closing out cases, claims, and complaints for the sole purpose of artificially inflating their performance reviews.

On December 17, 2016 I contacted OCR after receiving their initial letter stating that they were doing nothing other than sending HMG a letter and then closing out my complaint with absolutely no effort to follow up and insure that Federal Laws were being followed. I was told I had to give HMG a month to comply with OCR's "provision of technical assistance". On January 19, 2017, after still not receiving copies of my medical records from HMG, I contacted OCR for further assistance. In that conversation I was told by OCR Investigator Lesley Morgan that OCR would have to re-open my complaint and see what they could do to get HMG to comply with Federal Law. The fact that OCR has to "RE-OPEN" my complaint is quite disturbing since HMG never provided me copies of my medical records and OCR had no justification to close out my complaint in the first place.

Since HMG continues to refuse to comply with Federal Laws, on January 5, 2017 I filed another complaint with OCR against HMG for not providing me the PHI previously listed as Recordset 2. It should be noted that I have been requesting both of these Recordsets from my PHI since July 2016. I even went as far as getting the California Worker's Compensation Appeals Board to issue a subpoena against HMG to produce the information of Recordset 1, and still HMG refused to comply with the law. I have sent numerous emails to HMG, and I even delivered a written demand and had HMG personnel

sign for receipt of my demand; and still HMG refuses to respond. Dealing with a Healthcare Provider who refuses to comply with Federal Laws is one thing, but what makes matters worse is that a Government Agency, tasked with enforcing Federal Regulations, refuses to do their job and falsely closing out complaints without any evidence of compliance. It is no wonder that HMG refuses to comply with Federal Law. They probably know that the Office of Civil Rights will not take any substantial action to enforce Federal Laws and when there is the chance that a patient is requesting Protected Health Information that could be embarrassing to the Healthcare Provider, the Healthcare Provider can simply refuse to comply with Federal Laws because they know the Office of Civil Rights is not going to enforce those laws.

As you can see from the attachments provided, I have made every possible effort to get this Healthcare Provider to comply with Federal Laws and provide me my requested healthcare information. When the Healthcare Provider refused to comply with Federal Laws I took the next step and filed HIPAA complaints with the OCR, but so far they are refusing to enforce Federal Laws. I desperately need Congresswoman Sanchez to intercede on my behalf with OCR and demand honest handling of valid complaints submitted to this agency. In addition to getting the OCR to honestly process my HIPAA complaint, the Congresswoman may also wish to look into the policy of the Office of Civil Rights, Pacific Region Office's policy of closing out complaints without any evidence that Federal Laws have been complied with.

Feel free to call me at 714-697-8576 should you have any questions or need further information.

Regards,

John W. Sigler

Attachments.

HIPAA complaint filed with Office of Civil Rights on August 25, 2016
Office of Civil Rights Response, dated December 15, 2016
HIPPA complaint filed with Office of Civil Rights on January 5, 2017.
First WCAB subpoena served on HealthPointe Medical Group, July 23, 2016
Second WCAB subpoena served on HealthPointe Medical Group, October 26, 2016.
Written request for Protected Healthcare Information provided to HMG on August 24, 2016.

DEPARTMENT OF HEALTH & HUMAN SERVICES

Office of the Secretary

Assistant Secretary for Public Affairs
Washington, D.C. 20201

**Case No. 2017-00737-FOIA-OS**

**June 22, 2017**

Mr. John W. Sigler
13129 Stern Ave
La Mirada, CA 90638

Dear Mr. Sigler:

This letter is the final response to your May 10, 2017, Freedom of Information Act (FOIA) request. Specifically, you requested the following records: "This request has two OCR Transaction #(1)16-247377; (2)17-258405; Requesting any and all complaint against HealthPointe Medical Group."

The Office for Civil Rights (OCR) conducted a search and located **24 pages** of responsive records. After a careful review of these pages, I have determined to release **21 pages** to you in their entirety, and I am further releasing **two (2) pages** in part, with portions redacted, pursuant to Exemptions 5, 6, and 7C of the FOIA (5 U.S.C. §552 (b)(5), (b)(6), and (b)(7)(C)). I have also determined to withhold **one (1) page** in its entirety, pursuant to Exemption 4 of the FOIA (5 U.S.C. §552 (b)(4)).

FOIA exemption (b)(4) permits the withholding of trade secrets and commercial or financial information that is privileged or confidential. Please note that the one (1) page denied pursuant to Exemption (b)(4) consist of an internal business form from the HealthPointe Medical Group, Incorporated.

FOIA exemption (b)(5) protects inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency. This exemption protects documents that would be covered by any privilege an agency could assert in a civil proceeding. These privileges include, among others, the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. In this instance, the deliberative process privilege applies.

FOIA exemption (b)(6) permits a Federal agency to withhold information and records about individuals in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The definition of "similar files" has historically been broadly interpreted to include a wide variety of files, and the United States Supreme Court has held that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. I have analyzed these records and find they meet the threshold requirement of this exemption. Additionally, I have reviewed and weighed the public interest in disclosure of this information against the privacy interest in nondisclosure, and found that the privacy interest outweighs the public's interest in disclosure.

FOIA exemption (b)(7)(C) provides protection for personal information in records compiled for law enforcement purposes, for witnesses, third parties, and others, when such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

If you believe that the information withheld should not be exempt from disclosure, or this response constitutes an adverse determination, you may appeal. By filing an appeal, you preserve your rights under FOIA and give the agency a chance to review and reconsider your request and the agency's decision.

Your appeal must be mailed within 90 days from the date of receipt of this letter, to:

Ms. Catherine Teti
Deputy Agency Chief FOIA Officer
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Public Affairs
Room 729H
200 Independence Avenue, S.W.
Washington, DC 20201

Please clearly mark both the envelope and your letter "Freedom of Information Act Appeal." You may also e-mail your appeal to: HHS.ACFO@hhs.gov.

If you would like to discuss our response before filing an appeal to attempt to resolve your dispute without going through the appeals process, you may contact the HHS FOIA Public Liaison for assistance at:

Michael Bell
HHS FOIA Public Liaison
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Public Affairs
Room 729H
200 Independence Avenue, S.W.
Washington, DC 20201

Telephone: (202) 260-0793
E-mail: HHS_FOIA_Public_Liaison@hhs.gov

If you are unable to resolve your FOIA dispute through our FOIA Public Liaison, the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, offers mediation services to help resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road–OGIS
College Park, MD 20740-6001

Telephone: 202-741-5770
Toll-Free: 1-877-684-6448
E-mail: ogis@nara.gov
Fax: 202-741-5769

There are no charges in this instance because the billable costs are less than our threshold of $25.

Sincerely yours,

For

Michael S. Marquis
Director
FOI/Privacy Acts Division

Enclosure(s)

**From:** JWSigler
**Sent:** 10 May 2017 08:25:02 -0700
**To:** OS FOIA Request (HHS/ASPA)
**Cc:** 'Rumley, Matt';Morgan, Lesley (HHS/OCR) (CTR)
**Subject:** Freedom of Information Act Request - HHS Office of Civil Rights

Dear HHS,

Following is my Request for Information under the Freedom of Information Act. I have tried numerous times to submit this request through your online PAL system and your system has continually failed to function.

Requester Information:
John W. Sigler
13129 Stern Ave
La Mirada, CA 90638
Cell No. (714) 697-8576
Email: jwsigler@SWS-LLC.com

Requester Status: non-Profit / advocacy

HHS Agency: OFFICE OF CIVIL RIGHTS

Request Description:
In August 2016 a HIPAA complaint was filed by John Sigler against HealthPointe Medical Group (transaction numbers 16-247377 and 17-258405). To date no significant progress has been made on this complaint. Congresswoman Linda Sanchez and her office have gotten involved to advocate for the complainant, and have talked to the OCR's Pacific Regional Office and still no progress. It has been approximately ten months since these HIPAA complaints were filed. I am requesting copies of all correspondences sent out by the Office of Civil Rights in their processing of these complaints to determine what, if any, effort is being made by OCR to respond to these HIPAA complaints. Specifically I am interested in correspondences sent to and received from HealthPointe Medical Group, to determine if OCR is even doing their job. This requested information will also be shared with Congresswoman Sanchez's office, especially if it shows that OCR has made false and misleading statements to the Congresswoman's office concerning their efforts in handling these complaints.

FEE WAIVER REQUEST
Under the DOJ Guidelines for FOIA Fees and Fee Waivers, I am requesting a waiving of all fees because release of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. The Office of Civil Rights has failed to handle this HIPAA complaint in a timely manner. The information requested is going to be provided to Congresswoman Sanchez's Office to show evidence that OCR is not handling HIPAA complaints in a timely manner and to determine whether OCR employees have lied to a member of Congress's office personnel. The information is also going to be incorporated into a free-lance news article being submitted to Los Angeles Channel 7 news in support of a news article disclosing how HIPAA complaints are not being timely processed by OCR. While the requester is also the victim in this case, the requester has an established record of disclosing information to the general public for the public's best interest. In 2003

the requester was the victim of a timeshare scam and used his personal experience to create and maintain for the past 14 years a public website disclosing to the public vital information as to victims' rights and governmental and legal options for other U.S. citizens who have been scammed. The requester will be doing the same thing with this information. In addition to passing this information on to Congresswoman Sanchez's office and the news media, the requester / victim will also use the information to publish another website based upon his experience with the OCR to educate the public on what to do when their HIPAA complaints to OCR are ignored and / or untimely delayed.

Regards,

John W. Sigler
13129 Stern Ave
La Mirada, CA 90638
Office / Cell No. (714) 697-8576
Email: jwsigler@SWS-LLC.com

**From:** Morgan, Lesley (HHS/OCR) (CTR)
**Sent:** 24 Mar 2017 21:03:41 +0000
**To:** (b)(6);(b)(7)(C)
**Subject:** 17-258405 Data Request Letter
**Attachments:** 258405 Notice and Data Request.pdf

Mr. O'Neill,

Thank you for your call. As discussed, attached is a PDF of the data request letter with the complaint date corrected. In addition, this confirms that I have approved your request for an extension and will expect a response no later than April 7, 2017.

Sincerely,

Lesley Morgan, JD
Investigator
Contractor for Office for Civil Rights
U.S. Department of Health and Human Services
Ph: 206-615-2283
Fax: 206-615-2297
leidos



**EXHIBIT 10-114**

Page 086 of 284

Withheld pursuant to exemption

(b)(7)(E)

of the Freedom of Information Act

Page 089 of 284

Withheld pursuant to exemption

(b)(7)(E)

of the Freedom of Information Act

Page 090 of 284

Withheld pursuant to exemption

(b)(7)(E)

of the Freedom of Information Act

## THE PRIVACY, SECURITY, AND BREACH NOTIFICATION RULES ENFORCEMENT AND PENALTIES FOR NONCOMPLIANCE

The HIPAA Privacy, Security, and Breach Notification Rules establish a set of national standards for the use, disclosure, and safeguarding of an individual's health information – called protected health information or "PHI" – by covered entities and their business associates. The Privacy Rule sets standards for the use and disclosure of PHI and for providing individuals with privacy rights to understand and control how their health information is used and disclosed. The Security Rule's standards specify administrative, technical, and physical security procedures to assure the confidentiality, integrity, and availability of electronic PHI. The Breach Notification Rule requires notification to affected individuals, the Department of Health and Human Services, Office for Civil Rights (OCR), and, in some cases the media, in the case of a breach of unsecured PHI. OCR is responsible for administering and enforcing the HIPAA Rules and may conduct investigations.

Consistent with the principles for achieving compliance provided in the HIPAA Rules, OCR will seek the cooperation of covered entities and business associates ("entity" or "entities") and may provide technical assistance to help them comply voluntarily with the HIPAA Rules. Entities that fail to comply voluntarily with the standards may be subject to civil money penalties (CMPs). In addition, certain violations of the HIPAA Rules may be subject to criminal prosecution. These penalty provisions are explained below.

**Civil Money Penalties.** OCR may impose a CMP on an entity for a failure to comply with a requirement of the HIPAA Rules. CMPs will vary significantly depending on factors such as the date of the violation, whether the entity knew or should have known of the failure to comply, or whether the entity's failure to comply was due to willful neglect. Penalties may not exceed a calendar year cap for multiple violations of the same requirement.

| | For violations occurring prior to 11/3/2015 | For violations occurring on or after 11/3/2015* |
|---|---|---|
| **Penalty Amount** | $100 to $50,000 or more per violation | $112 to $55,910 or more per violation |
| **Calendar Year Cap** | $1,500,000 | $1,677,299 |

*The Department of Health and Human Services may make annual adjustments to the civil money penalty amounts pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvement Act of 2015. The annual inflation amounts are found at 45 CFR § 102.3.

A CMP will not be imposed for violations in certain circumstances, such as if:

- # the failure to comply was not due to willful neglect, and was corrected during a 30-day period after the entity knew or should have known the failure to comply had occurred (unless the period is extended at the discretion of OCR); or
- # the Department of Justice has imposed a criminal penalty for the failure to comply (see below).

In addition, OCR may choose to reduce a CMP if the failure to comply was due to reasonable cause and the penalty would be excessive given the nature and extent of the noncompliance.

Before OCR imposes a CMP, it will notify the entity and provide the entity with an opportunity to provide written evidence of those circumstances that would reduce or bar a CMP. This evidence must be submitted to OCR within 30 days of receipt of the notice. In addition, if OCR states that it intends to impose a CMP, an entity has the right to request an administrative hearing to appeal the proposed CMP.

**Criminal Penalties.** A person who knowingly obtains or discloses individually identifiable health information in violation of the HIPAA Rules may face a criminal penalty of up to $50,000 and up to one-year imprisonment. The criminal penalties increase to $100,000 and up to five years imprisonment if the wrongful conduct involves false pretenses, and to $250,000 and up to 10 years imprisonment if the wrongful conduct involves the intent to sell, transfer, or use identifiable health information for commercial advantage, personal gain or malicious harm. The Department of Justice is responsible for criminal prosecutions under the HIPAA Rules.

DEPARTMENT OF HEALTH & HUMAN SERVICES
Voice - (800) 368-1019
TDD - (800) 537-7697
FAX - (415) 437-8329
http://www.hhs.gov/ocr/

OFFICE OF THE SECRETARY
Office for Civil Rights, Pacific Region
90 7th Street, Suite 4-100
San Francisco, CA 94103

November 6, 2017

Mr. John Sigler
13129 Stern Avenue
La Mirada, CA 90638

Mr. Joe O'Neill, Privacy Official
HealthPointe Medical Group
16702 Valley View Avenue
La Mirada, CA 90638

Re: John Sigler vs. HealthPointe Medical Group
OCR Transaction Number: 17-258405

Dear Mr. Sigler and Mr. O'Neill:

The U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received a complaint on January 5, 2017, from Mr. John Sigler (Complainant). The Complainant alleged that HealthPointe Medical Group (HMG) was not in compliance with the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules).

Specifically, the Complainant alleged that HMG refused to provide complete copies of Complainant's protected health information, and that HMG retaliated against Complainant for filing a complaint with OCR by terminating him as a patient on or about August 8, 2016. These allegations reflected potential violations of 45 C.F.R. § 164.524 (individual access to protected health information) and 164.530(g) (refraining from intimidating or retaliatory acts). OCR notified HMG of this complaint by letter dated March 14, 2017.

OCR enforces the Privacy and Security Rules and also enforces Federal civil rights laws that prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and, under certain circumstances, sex and religion.

The Privacy Rule states that an individual has the right to access his/her protected health information (PHI), maintained by a covered entity in a designated record set, for as long as the PHI is maintained in the designated record set (e.g., medical or billing records). *See* 45 C.F.R. § 164.524(a)(1). The individual's right of access to his/her PHI maintained by the covered entity includes all PHI maintained by the covered entity, regardless of whether the covered entity created the PHI or not. *See* 65 Fed. Reg. 82462, 82731-82732 (Dec. 28, 2000). The Privacy Rule prohibits a covered entity from retaliating against anyone for submitting a privacy complaint, assisting or testifying in an investigation, or opposing any act or practice prohibited by the Privacy Rule as long as the manner of opposition is reasonable and the person had a good faith belief that the practice opposed is unlawful. 45 C.F.R. § 164.530(g).

## DISCUSSION AND ANALYSIS

In response to OCR's contact, HMG stated that it provided Complainant with a complete copy of his records within its designated record set, totaling 185 pages of documents, on August 24, 2016, and

provided documentation of mailing the records to the Complainant by certified mail. The Complainant confirmed that he had received some of his records from HMG, but alleged that missing from the records he received were Requests for Authorization (RFA) of treatment and related correspondence (letters, emails and faxes) between HMG and his insurance provider regarding authorization or denial of treatment for him. HMG, however, told OCR it provided the Complainant with all of his RFAs, although they were not packaged together with their supporting documentation (doctor's progress notes), but that all RFAs were provided. HMG also told OCR that it provided the Complainant with copies of all correspondence, including letters and faxes, it sent or received regarding insurance authorization or denial of his treatment. HMG said it did not provide the Complainant with any email messages, as there were none in his designated record set because none existed related to insurance authorization or denial of treatment or any other medical decision-making regarding the Complainant.

As part of this investigation, OCR requested and reviewed HMG's policies and procedures regarding access to records, designated record set, retaliation, and patient termination. OCR provided technical assistance to HMG regarding its designated record set policy and HMG agreed to revise its policy to include images, such as X-rays. OCR also confirmed with HMG that no documents were excluded from the records sent to Complainant under this policy prior to its revision, as HMG reported that it has no images or X-ray records for the Complainant created by HMG or any other health care provider.

HMG stated that it terminated the doctor-patient relationship with Complainant by letter dated August 8, 2016, prior to learning of any HIPAA complaints made by Complainant. Complainant stated that he filed an initial complaint with OCR in July 2016; however, OCR has no record of receiving this complaint. HMG stated it was unaware of any complaint made to OCR on or before August 8, 2016. HMG further stated it terminated the doctor-patient relationship because Complainant became increasingly threatening in his communications with HMG staff. It appears HMG followed its provided policy on terminating patient care when terminating Complainant's care.

## CONCLUSION

After carefully considering all of the information gathered in this investigation, OCR is not able to substantiate Complainant's allegation that HMG has not provided him with a complete copy of his PHI maintained by HMG. Further, OCR is not able to substantiate Complainant's allegation that HMG retaliated against him by terminating him as a patient, because HMG was unaware of any of Complainant's HIPAA complaints before it made its decision. Therefore, OCR is closing this case. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Lesley Morgan, the investigator assigned to this complaint, at 206-615-2283 (Voice) or by email at Lesley.Morgan@hhs.gov. When calling this office, please reference the transaction number we have given this file, which is located at the top left corner of this page.

Sincerely,

Michael Leoz
Regional Manager

OCR needs to understand that this is the third HIPAA complaint I have filed against HealthPointe Medical Group for refusing to release my medical records and so far nothing has happened. I am hoping that in the third time, someone at OCR is finally going to take action, but in case OCR continues to fail to enforce the law, I am sending a copy of this complaint to my Congresswoman Linda Sanchez and asking her office to intercede on my behalf. Hopefully by the time Congresswoman Sanchez's office intercedes, OCR will be able to tell the Congresswoman that the laws of the United States have been enforced.

I have been requesting copies of my private health information from Healthpointe since July 2016 and although I have complied with all of Healthpointe's requests for me to sign their medical records release forms, HealthPointe continues to refuse to provide me copies of my medical records. In Attachment A I am including a copy of HealthPointe's Medical Release form which they required me to sign. Not only did I sign their form, but I listed on the back a complete description of the medical records I wanted disclosed. I also insisted that their personnel sign for receiving the form (signed by Jesica L on 8-24-16) to show that they had a complete list of all the medical records I was requesting. While HealthPointe did send some records, HealthPointe has refused to send Item 2 and Item 4a, 4b, and 4c. This request is in addition to the requests that I made during July 2016 for my medical records which HealthPointe refused to comply with.

HealthPointe is refusing to provide Item 2 because it appears that for the last two years HealthPointe has been submitting sub-standard Requests for Authorization to my insurance company. Said sub-standard RFA's have resulted in the insurance company denying my claims for critical medical treatments. HealthPointe is aware that in July 2016 I obtained evidence of at least one sub-standard RFA that they had submitted; therefore, HealthPointe is refusing me access to my medical records in order to cover up the evidence of their fraud. I also asked for Items 4a, 4b, and 4c because in November 2015 I was denied timely medical treatments and there is a dispute as to whether the insurance company failed to provide authorization in a timely manner or whether HealthPointe was negligent and lost the authorizations. In my second OCR complaint dated August 25, 2016 I stated that I had even had a subpoena served on HealthPointe demanding some of my medical records. I have even gone as far as having HealthPointe served with a second subpoena on October 27, 2016 (Attachment B) from the California Worker's Compensation Appeals Board, ordering HealthPointe to turn over the correspondence item listed in item 4a, 4b, and 4c; and again HealthPointe has refused to comply with the subpoena.

OCR needs to understand that HealthPointe Medical Group and their treating doctor, Dr. Kirshnareddy are committing criminal acts and they are going to get away with it, if OCR does not take action and enforce the law.

( Complaint continues on attached complaint page with discussion of the lack of response by OCR to previous complaints)

2/9/17 1:12 PM - Called CE to verify they received TA letter. They said this was the Temecula office but they could transfer me to the La Mirada office. Thelma Alvarez answered and asked how she could help. I asked if she had record of the letter OCR mailed on December 15. She said they did not receive a letter. I asked if she had released the records requested. She said they had not. I asked if there was a reason they had not released them. She said there was no specific reason, but that the authorization did not come with any other document. I asked if she was sure they did not receive the letter. She said all mail goes to billing initially and then is routed to clinical after billing removes any payments. I told her I could send a PDF of the letter by email and asked for her email address. She spelled out Thelmaalvarez@healthpointe.net. She said she would also let her manager know we called. I thanked her and we ended the call.

3/6/17 9:22 AM - Called to ask the name of the privacy officer. Selected "medical records" from the audio menu and reached a records clerk. I asked the name of the privacy officer and she did not know. She said she would transfer me to her manager's voicemail. I left a voicemail requesting a call back with the information.

3/7/17 3:07 PM: Received call from Joe O'Neill with CE. He said he was returning a voicemail. I asked him the name of the Privacy Officer, he said it is Joe O'Neill (himself). He said the Security Official is James Aviles. I asked if they were both in the La Mirada facility and he said yes. I thanked him for the information. He asked if this was regarding a specific matter and I told him that it was and I was investigating a complaint. He asked what the transaction number was, and I told him both of the numbers and explained that this was in regard to a second complaint. He said he believed they provided the records to the patient in August 2016. I told him the allegation suggested that complete records were not released. He asked if notes kept electronically could be subject to the request and I told him if they were part of a designated record set they would be. I read the text of the definition of Designated Record Set and gave him the citation for the rule. He thanked me for clarifying. I thanked him and we ended the call.

3/24/17 1:54 PM: Received call from Joe O'Neill. He said he wanted to make sure the complaint date in the DRL was correct. He read it to me and I told him that was a typo and I would send a corrected letter in PDF format by email. I verified his email and did so. He also asked if he could get an extension to respond since they just received the letter Tuesday. I asked how long he would need and he said he could have it in by April 7, 2017. I told him that would be fine. He thanked me and we ended the call.

8/22/17 1:36 PM: Called Joe O'Neill, no answer. Left voicemail requesting call back and leaving office hours.

8/24/17 11:35 AM: Called Joe O'Neill back after receiving voicemail from him. I asked if CE takes any radiology images in house. He said yes. I told him I noticed in their designated record set policy that

images were noted as excluded and asked if he could take a look at that because images taken of patients are part of the designated record set. I asked him if C's records had any images either taken by CE or received from other providers. He said he would have to look at the record to be certain. I told him that if he located any images that were taken by or stored by CE that they would need to provide those records to C. He said he would look into these items and get back to me shortly. I thanked him and we ended the call.

2:56: Joe O'Neill called back. He said they do take X-rays but they did not take any of C during his time as a patient there. I asked if they kept any radiology images from outside sources. He said he looked but did not see any images uploaded to their system. I asked if that was where any outside images are stored. He said it was. I thanked him for checking and asked if he had time to review the DRS policy. He said he had and he saw where images were listed as Excluded and he said they would modify that policy to reflect that images are part of the designated record set. I thanked him for calling back and for agreeing to revise the policy and we ended the call.

DEPARTMENT OF HEALTH & HUMAN SERVICES
Voice - (415) 437-8310, (800) 368-1019
TDD - (415) 437-8311, (800) 537-7697
(FAX) - (415) 437-8329
http://www.hhs.gov/ocr/

OFFICE OF THE SECRETARY
Office for Civil Rights, Pacific Region
90 7th Street, Suite 4-100
San Francisco, California 94103

February 2, 2017

Mr. John Sigler
13129 Stern Ave
La Mirada, CA 90638

Re: OCR Transaction Number: 17-258405

Dear Mr. Sigler:

Thank you for your complaint received on January 5, 2017, by the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), alleging that HealthPointe Medical Group is not in compliance with the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules).

OCR enforces the Privacy and Security Rules, and also enforces Federal civil rights laws that prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and, under certain circumstances, sex and religion.

In order for OCR to continue to process your complaint, please provide documentation of the complaint from late July 2016 to which you referred in your allegations.

Please submit your response by February 22, 2017, to the address in the above letterhead and remember to include the OCR reference number in your response. **If you do not provide the requested information, OCR will not be able to investigate your case, your files will be closed, and this letter will serve as our final correspondence to you.**

If your complaint is closed, you may file another complaint with our office when you are ready to provide more information. However, under the law, we only can investigate complaints that are filed within 180 days of the alleged act of discrimination or when you knew or should have known of the alleged violation of the Privacy Rule. In some limited circumstances, OCR can give you more time, but only if you have a very good reason for having filed a late complaint.

Sincerely,

Michael Leoz
Regional Manager



EXHIBIT 10-125

DEPARTMENT OF HEALTH & HUMAN SERVICES
Voice - (415) 437-8310, (800) 368-1019
TDD - (415) 437-8311, (800) 537-7697
FAX - (415) 437-8329
http://www.hhs.gov/ocr/

OFFICE OF THE SECRETARY
Office for Civil Rights, Pacific Region
90 7th Street, Suite 4-100
San Francisco, CA 94103

March 14, 2017

Mr. John Sigler
13129 Stern Avenue
La Mirada, CA 90638

OCR Transaction Number: 17-258405

Dear Mr. Sigler:

On January 5, 2017, the Office for Civil Rights (OCR), Department of Health and Human Services (HHS), received your complaint alleging that HealthPointe Medical Group (HMG) is not in compliance with the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules). Specifically, you allege that HMG refused to provide you with a complete copy of your medical records despite written and verbal attempts to obtain copies. You further allege that HMG retaliated against you for filing a complaint with OCR by terminating you as a patient on or about August 8, 2016. OCR has accepted your complaint for investigation because these allegations could reflect violations of 45 C.F.R. §§ 164.524 and 164.530(g). Please be advised, however, that OCR cannot accept your allegations of fraud by HMG, as such allegations do not fall within OCR's enforcement authority.

OCR enforces the Privacy and Security Rules, and the Breach Notification Rule. OCR also enforces Federal civil rights laws that prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and, under certain circumstances, sex, and religion.

OCR is responsible for enforcing the Privacy and Security Rules as they apply to "covered entities" and "business associates." Covered entities are health care clearinghouses, health plans, and health care providers that transmit health information in electronic form in connection with a transaction for which HHS has adopted standards. See 45 C.F.R. Part 162. Business associates are persons or entities that provide certain services to or perform functions on behalf of covered entities, or other business associates of covered entities, that require access to protected health information.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions, please do not hesitate to contact Ms. Lesley Morgan, J.D., Investigator, at (206) 615-2283 (Voice) or Lesley.Morgan@hhs.gov (Email). When contacting this office, please remember to include the transaction number that we have given this file.

Sincerely,

Michael Leoz
Regional Manager

**From:** Rumley, Matt
**Sent:** 12 May 2017 18:50:26 +0000
**To:** Morgan, Lesley (HHS/OCR) (CTR)
**Subject:** constituent John Sigler follow-up

Hi Lesley,

I was cc'd on Mr. Sigler's most recent email to you requesting a status update and I'm just checking in regarding this matter.

Thanks,

Matt Rumley
Casework Manager
Office of Congresswoman Linda T. Sánchez (CA-38)
12440 E. Imperial Hwy., Ste. 140, Norwalk CA 90650
**P** ((b)(6)
**F** (562) 924 2914

**From:** Nious, Lionel (HHS/OCR)
**Sent:** 1 Feb 2017 16:33:50 +0000
**To:** Leoz, Michael (HHS/OCR);AbadSantos, Robert (HHS/OCR);Yip, Fong (HHS/OCR);Morgan, Lesley (HHS/OCR) (CTR)
**Cc:** Householder, Donna (HHS/OS)
**Subject:** Complaints ICO John Sigler (16-247377 and 17-258405)
**Attachments:** FW: constituent inquiry - John Sigler

Good morning. Please find attached correspondence from Congresswoman Lina Sanchez on behalf of Mr. Sigler in which he is seeking assistance from OCR in obtaining his medical records from HealthPoint Medical Group.

Please assign the latest complaint, 17-258405, to an investigator for review and add this email and its attachments to both cases. Additionally, please contact Mr. Sigler by COB, 2/9/17, and provide him an update regarding the case.

Thanks for your assistance. Lionel

Lionel Nious
Management Analyst
Office for Civil Rights
U.S. Department of Health and Human Services
200 Independence Ave., SW
Washington, D.C. 20201
Ph: (202) 619-2504
Fax: (202) 619-3818

**From:** Joyce, Cynthia (HHS/ASL)
**Sent:** 31 Jan 2017 19:28:11 +0000
**To:** Householder, Donna (HHS/OS);Nious, Lionel (HHS/OCR)
**Subject:** FW: constituent inquiry - John Sigler
**Attachments:** SanchezLetter-01.pdf, OCR-HIPAA-Complaint-1-5-2017.pdf, OCR-Letter-12-15-2016.pdf, HealthPointe-Subpoena-10-26-2016.pdf, RecordsRelease.pdf, HealthPointeSubpoena-7-25-2016.pdf, OCR-HIPAA-Complaint-8-25-2016.pdf, CaseworkAuthorizationForm.pdf
**Importance:** High

Please follow-up on this case ASAP. Thanks

---

**From:** Rumley, Matt [mailto:Matt.Rumley@mail.house.gov]
**Sent:** Tuesday, January 31, 2017 1:57 PM
**To:** Joyce, Cynthia (HHS/ASL)
**Subject:** constituent inquiry - John Sigler

Good morning,

I am writing on behalf of one of Congresswoman Sanchez's constituents John Sigler. Please see his attached privacy release form, documents and complaint and provide me with a response as you are able.

Thank you,

Matt Rumley
Casework Manager
Office of Congresswoman Linda T. Sánchez (CA-38)
12440 E. Imperial Hwy., Ste. 140, Norwalk CA 90650
**P** (562) 860 5050
**F** (562) 924 2914

Dear Mr. Rumley,

I am returning a copy of the signed Privacy Release form you sent me on January 9th.

To fully explain the issue I need Congresswoman Sanchez's assistance with, I have attached the following documents:

1. SanchezLetter-01.pdf – Letter describing my current problems with the Office of Civil Rights
2. CaseworkAuthorizationForm.pdf - signed privacy release form
3. OCR-HIPAA-Complaint-8-25-2016.pdf - HIPAA complaint filed with Office of Civil Rights on August 25, 2016
4. OCR-Letter-12-15-2016.pdf - Office of Civil Rights Response, dated December 15, 2016
5. OCR-HIPPA-Complaint-1-5-2017.pdf - HIPPA complaint filed with Office of Civil Rights on January 5, 2017.
6. HealthPointe-Subpoena-7-25-2016.pdf - First WCAB subpoena served on HealthPointe Medical Group, July 25, 2016

7. HealthPointe-Subpoena-10-26-2016.pdf - Second WCAB subpoena served on HealthPointe Medical Group, October 26, 2016.
8. RecordsRelease.pdf - Written request for Protected Healthcare Information provided to HMG on August 24, 2016.

Please let me know if you need any further information. You can email me or call me at 714-697-8576.

Thanks again for your help.

John W. Sigler
13129 Stern Ave
La Mirada, CA 90638
Cell No. (714) 697-8576

To: Congresswoman Linda Sanchez
Thirty-eight District – California

January 23, 2016

From: John W. Sigler
13129 Stern Ave.
La Mirada, CA. 90638
Ph. No. 714-697-8576

Dear Matt Rumley, Casework Manager for Congresswoman Sanchez,

Thank you very much for talking with me on January 19, 2016. I very much appreciate Congresswoman Sanchez's assistance in resolving this problem I am having in getting the Office for Civil Rights, Pacific Region to act upon a HIPAA compliant I filed with them on August 25, 2016. I believe that what is occurring with the Office of Civil Rights (OCR) is not only negligence and laziness on the part of the staff in the OCR's Pacific Region Office, but may even constitute willful fraud by the OCR to falsely inflate their performance reviews. In addition to asking Congresswoman Sanchez for assistance, the more I look at the behavior of the OCR the more I think that this is willful fraud on the part of the OCR's Pacific Region Office and that this is a case of Government Worker Fraud that should be brought to the attention of the news media. Hopefully between inquires by Congresswoman Sanchez and possibly the news media, something can be done to get the Office of Civil Rights, Pacific Region Office to properly process HIPAA complaints that are filed with that office.

**FEDERAL REGULATIONS**

US Code 45 CFR Section 164.524 (Health Insurance Portability and Accountability Act, HIPAA), states that: "Except as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set."

In addition, under US Code 45 CFR Section 160.103 Definitions., health information is defined as: any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

Following is some background information concerning the HIPAA violations that made up the complaints I filed with the Office of Civil Rights, and a discussion of the failed response I received from the OCR.

**BACKGROUND**

Based upon the above Federal Regulations, as the patient I am entitled to copies of any information relating to the provision of my health care, which includes any and all written correspondences sent to my health care provider by my insurance carrier, as well as copies of all correspondences sent to my insurance company by said healthcare provider. I am currently trying to get my Healthcare Provider, HealthPointe Medical Group (HMG) and Dr. Kirshnarredy to provide me with copies of the following two recordsets from my Protected Health Information (PHI):

1. **Copies of emails received by HMG during the month of December 2015 from my insurance carrier ESIS.** In November 2015 I requested ESIS to authorize a return visit to HMG for my worker's compensation injury. California law requires ESIS to provide authorization within 5 business days. Authorization was not provided as required by law. ESIS claims they sent it and HMG lost the authorization. HMG claims ESIS never sent authorization. I have seen an email sent on or about December 9, 2015 which contains proof as to who is telling the truth. That email contains information regarding the provision of healthcare to the patient, and under Federal law, HMG is required to provide me a copy of said correspondence.
2. **Copies of all Requests for Authorization (RFA) for medical treatment sent to my insurance company ESIS by my healthcare provider, HealthPointe Medical Group (HMG).** Over the last two years HMG has sent multiple RFA's to my insurance company ESIS requesting authorization for a variety of treatments. In June 2016 I obtained a copy of one such RFA and found out that while HMG sent in the basic form, they provided none of the required backup justification that they claimed they were sending in. Without reasonable backup justification, the RFA is denied. Not sending in reasonable justification is simply a way of the doctor doing less work and being able to process more patients per day. This was clearing fraud and I believe this fraud has been occurring for over two years. The RFA paperwork being sent to my insurance company is PHI that clearly regards the provision of healthcare to the patient, and under Federal law, HMG is required to provide me a copy of said correspondences.

**OCR COMPLAINTS**

On August 25, 2016 I filed a HIPAA violation compliant with the Office for Civil Rights (OCR), Pacific Region, a sub division of the U.S. Department of Health and Human Services. The complaint was against

the HealthPointe Medical Group (HMG) who since July 2016 has refused to provide me copies of the PHI described in Recordset 1. On December 15, 2016, four months after I filed this complaint, OCR sent out a letter stating that in response to my complaint, they had "determined to resolve the matter informally through the provision of technical assistance to HMG". In plain language this means that OCR sent HMG a letter saying that they are legally required to provide patients their PHI. OCR also stated that they were closing out my complaint, even though they never actually talked to the healthcare provider, nor had OCR received any evidence that the healthcare provider was complying with Federal Laws.

Obviously this is a clear attempt by OCR personnel to be able to claim a high closure rate on complaints filed with their office while not actually doing the work. If Michael Leoz, (the regional manager of the Office of Civil Rights, Pacific Region), has performance reviews and bonuses based upon his office's Closure Rate, then this appears to be a case of Mr. Leoz and his employee's falsely closing out OCR complaints for the sole purpose of artificially inflating his office's performance. This would be no different than the scandal that all America saw with the Veteran's Administration in 2015 when Government employees falsely closing out cases, claims, and complaints for the sole purpose of artificially inflating their performance reviews.

On December 17, 2016 I contacted OCR after receiving their initial letter stating that they were doing nothing other than sending HMG a letter and then closing out my complaint with absolutely no effort to follow up and insure that Federal Laws were being followed. I was told I had to give HMG a month to comply with OCR's "provision of technical assistance". On January 19, 2017, after still not receiving copies of my medical records from HMG, I contacted OCR for further assistance. In that conversation I was told by OCR Investigator Lesley Morgan that OCR would have to re-open my complaint and see what they could do to get HMG to comply with Federal Law. The fact that OCR has to "RE-OPEN" my complaint is quite disturbing since HMG never provided me copies of my medical records and OCR had no justification to close out my complaint in the first place.

Since HMG continues to refuse to comply with Federal Laws, on January 5, 2017 I filed another complaint with OCR against HMG for not providing me the PHI previously listed as Recordset 2. It should be noted that I have been requesting both of these Recordsets from my PHI since July 2016. I even went as far as getting the California Worker's Compensation Appeals Board to issue a subpoena against HMG to produce the information of Recordset 1, and still HMG refused to comply with the law. I have sent numerous emails to HMG, and I even delivered a written demand and had HMG personnel

sign for receipt of my demand; and still HMG refuses to respond. Dealing with a Healthcare Provider who refuses to comply with Federal Laws is one thing, but what makes matters worse is that a Government Agency, tasked with enforcing Federal Regulations, refuses to do their job and falsely closing out complaints without any evidence of compliance. It is no wonder that HMG refuses to comply with Federal Law. They probably know that the Office of Civil Rights will not take any substantial action to enforce Federal Laws and when there is the chance that a patient is requesting Protected Health Information that could be embarrassing to the Healthcare Provider, the Healthcare Provider can simply refuse to comply with Federal Laws because they know the Office of Civil Rights is not going to enforce those laws.

As you can see from the attachments provided, I have made every possible effort to get this Healthcare Provider to comply with Federal Laws and provide me my requested healthcare information. When the Healthcare Provider refused to comply with Federal Laws I took the next step and filed HIPAA complaints with the OCR, but so far they are refusing to enforce Federal Laws. I desperately need Congresswoman Sanchez to intercede on my behalf with OCR and demand honest handling of valid complaints submitted to this agency. In addition to getting the OCR to honestly process my HIPAA complaint, the Congresswoman may also wish to look into the policy of the Office of Civil Rights, Pacific Region Office's policy of closing out complaints without any evidence that Federal Laws have been complied with.

Feel free to call me at 714-697-8576 should you have any questions or need further information.

Regards,

John W. Sigler

Attachments.

HIPAA complaint filed with Office of Civil Rights on August 25, 2016
Office of Civil Rights Response, dated December 15, 2016
HIPPA complaint filed with Office of Civil Rights on January 5, 2017.
First WCAB subpoena served on HealthPointe Medical Group, July 23, 2016
Second WCAB subpoena served on HealthPointe Medical Group, October 26, 2016.
Written request for Protected Healthcare Information provided to HMG on August 24, 2016.

* Your First Name: john * Your Last Name: sigler

Phone:

| Phone Number | Usage |
|---|---|
| (714) 697-8576 | Home / Cell |

Street Address Line 1:* 13129 Stern Ave

Street Address Line 2:

* City: La Mirada

* State:California Country:USA * ZIP: 90638 Email Address (If available): john@SWS-LLC.com

**Are you filing this complaint for someone else?:** No

**Who (or what agency or organization, e.g., provider, health plan) do you believe violated your (or someone else's) health information privacy rights or committed another violation of the Privacy Rule?**

* Person or Agency/Organization?: Agency/Organization

Agency/Organization: HealthPointe Medical Group

* Street Address Line 1: 16702 Valley View Ave

Street Address Line 2:

* City: La Mirada

* State:California Country:USA ZIP: 90638

ZIP:

| Phone Number | Usage |
|---|---|
| (562) 921-0341 | Work |

*** When do you believe that the violation of health information privacy rights occurred?**

Date(s) Selected:

| Violation Date |
|---|
| 08/25/2016 |
| 10/27/2016 |

**Describe briefly what happened. How and why do you believe your (or someone else's) health information privacy rights were violated, or the privacy rule otherwise was violated? Please be as specific as possible..** (Attach additional pages as needed)

OCR needs to understand that this is the third HIPAA complaint I have filed against HealthPointe Medical Group for refusing to release my medical records and so far nothing has happened. I am hoping that in the third time, someone at OCR is finally going to take action, but in case OCR continues to fail to enforce the law, I am sending a copy of





EXHIBIT 10-135

this complaint to my Congresswoman Linda Sanchez and asking her office to intercede on my behalf. Hopefully by the time Congresswoman Sanchez's office intercedes, OCR will be able to tell the Congresswoman that the laws of the United States have been enforced.

I have been requesting copies of my private health information from Healthpointe since July 2016 and although I have complied with all of Healthpointe's requests for me to sign their medical records release forms, HealthPointe continues to refuse to provide me copies of my medical records. In Attachment A I am including a copy of HealthPointe's Medical Release form which they required me to sign. Not only did I sign their form, but I listed on the back a complete description of the medical records I wanted disclosed. I also insisted that their personnel sign for receiving the form (signed by Jesica L on 8-24-16) to show that they had a complete list of all the medical records I was requesting. While HealthPointe did send some records, HealthPointe has refused to send Item 2 and Item 4a, 4b, and 4c. This request is in addition to the requests that I made during July 2016 for my medical records which HealthPointe refused to comply with.

HealthPointe is refusing to provide Item 2 because it appears that for the last two years HealthPointe has been submitting sub-standard Requests for Authorization to my insurance company. Said sub-standard RFA's have resulted in the insurance company denying my claims for critical medical treatments. HealthPointe is aware that in July 2016 I obtained evidence of at least one sub-standard RFA that they had submitted; therefore, HealthPointe is refusing me access to my medical records in order to cover up the evidence of their fraud. I also asked for Items 4a, 4b, and 4c because in November 2015 I was denied timely medical treatments and there is a dispute as to whether the insurance company failed to provide authorization in a timely manner or whether HealthPointe was negligent and lost the authorizations. In my second OCR complaint dated August 25, 2016 I stated that I had even had a subpoena served on HealthPointe demanding some of my medical records. I have even gone as far as having HealthPointe served with a second subpoena on October 27, 2016 (Attachment B) from the California Worker's Compensation Appeals Board, ordering HealthPointe to turn over the correspondence item listed in item 4a, 4b, and 4c; and again HealthPointe has refused to comply with the subpoena.

OCR needs to understand that HealthPointe Medical Group and their treating doctor, Dr. Kirshnareddy are committing criminal acts and they are going to get away with it, if OCR does not take action and enforce the law.

( Complaint continues on attached complaint page with discussion of the lack of response by OCR to previous complaints)

Filing a complaint with OCR is voluntary. However, without the information requested above, OCR may be unable to proceed with your complaint. We collect this information under authority of the Privacy Rule issued pursuant to the Health Insurance Port ability and Accountability Act of 1996. We will use the information you provide to determine if we have jurisdiction and, if so, how we will

process your complaint. Information submitted on this form is treated confidentially and is protected under the provisions of the Privacy Act of 1974. Names or other identifying information about individuals are disclosed when it is necessary for investigation of possible health information privacy violations, for internal systems operations, or for routine uses, which include disclosure of information outside the Department for purposes associated with health information privacy compliance and as permitted by law. It is illegal for a covered entity to intimidate, threaten, coerce, discriminate or retaliate against you for filing this complaint or for taking any other action to enforce your rights under the Privacy Rule.

You are not required to use this format. You may write a letter or mail a complaint with the same information. To mail a complaint, please send to HHS Office for Civil Rights, Central Intake Unit, 200 Independence Avenue, S.W., Room 509 F, Washington, D.C. 20201.

*** Signature:** AGREE: I have read, understand, and agree to the above.

**Do you need special accommodations for us to communicate with you about this complaint?**

No entries

**If we cannot reach you directly, is there someone we can contact to help us reach you?**

No entries

**Have you filed your complaint anywhere else? If so, please provide the following .** (Attach additional pages as needed )

Filed Elsewheres:

| Person/Agency/Organization /Court Name | Date Filed | Case Number (If known) |
|---|---|---|
| OCR - Previous Complaint | 08/15/2016 | 16-247377 |

**To help us better serve the public, please provide the following information for the person you believe had their health information privacy rights violated (you or the person on whose behalf you are filing).**

Ethnicity: Not Hispanic or Latino

Race: White

Primary Language Spoken (if other than English):

**How did you learn about the Office for Civil Rights?**

HHS Website/Internet Search





**EXHIBIT 10-137**

## COMPLAINANT CONSENT FORM

The Department of Health and Human Services' (HHS) Office for Civil Rights (OCR) has the authority to collect and receive material and information about you, including personnel and medical records, which are relevant to its investigation of your complaint.

To investigate your complaint, OCR may need to reveal your identity or identifying information about you to persons at the entity or agency under investigation or to other persons, agencies, or entities.

The Privacy Act of 1974 protects certain federal records that contain personally identifiable information about you and, with your consent, allows OCR to use your name or other personal information, if necessary, to investigate your complaint.

Consent is voluntary, and it is not always needed in order to investigate your complaint; however, failure to give consent is likely to impede the investigation of your complaint and may result in the closure of your case.

Additionally, OCR may disclose information, including medical records and other personal information, which it has gathered during the course of its investigation in order to comply with a request under the Freedom of Information Act (FOIA) and may refer your complaint to another appropriate agency.

Under FOIA, OCR may be required to release information regarding the investigation of your complaint; however, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

Please read and review the documents entitled, Notice to Complainants and Other Individuals Asked to Supply Information to the Office for Civil Rights and Protecting Personal Informations in Complaint Investigations for further information regarding how OCR may obtain, use, and disclose your information while investigating your complaint.

**In order to expedite the investigation of your complaint if it is accepted by OCR, please read, sign, and returnone copy of this consent form to OCR with your complaint. Please make one copy for your records.**

- As a complainant, I understand that in the course of the investigation of my complaint it may become necessary for OCR to reveal my identity or identifying information about me to persons at the entity or agency under investigation or to other persons, agencies, or entities.
- I am also aware of the obligations of OCR to honor requests under the Freedom of Information Act (FOIA). I understand that it may be necessary for OCR to disclose information, including personally identifying information, which it has gathered as part of its investigation of my complaint.
- In addition, I understand that as a complainant I am covered by theDepartment of Health and Human Services' (HHS) regulations which protect any individual from being intimidated, threatened, coerced, retaliated against,or discriminated against because he/she has made a complaint, testified, assisted, or participated in any manner in any mediation, investigation, hearing, proceeding, or other part of HHS' investigation, conciliation, or enforcement

process.

*** Consent Selection:**

CONSENT: I have read, understand, and agree to the above and give permission to OCR to reveal my identity or identifying information about me in my case file to persons at the entity or agency under investigation or to other relevant persons, agencies, or entities during any part of HHS' investigation, conciliation, or enforcement process.

**File Uploaded:**

| File Name | Size (Byte) | File Type |
|---|---|---|
| OCR Complaint-003.pdf | 48659 | Complaint Description |
| AttachmentA-RecordsRelease.pdf | 1272276 | Complaint Description |
| Attachment B -HealthPointe-Subpoena.pdf | 260757 | Complaint Description |

OCR Complaint dated January 5, 2017

OCR needs to understand that this is the third HIPAA complaint I have filed against HealthPointe Medical Group for refusing to release my medical records and so far nothing has happened. I am hoping that in the third time, someone at OCR is finally going to take action, but in case OCR continues to fail to enforce the law, I am sending a copy of this complaint to my Congresswoman Linda Sanchez and asking her office to intercede on my behalf. Hopefully by the time Congresswoman Sanchez's office intercedes, OCR will be able to tell the Congresswoman that the laws of the United States have been enforced.

I have been requesting copies of my private health information from Healthpointe since July 2016 and although I have complied with all of Healthpointe's requests for me to sign their medical records release forms, HealthPointe continues to refuse to provide me copies of my medical records. In Attachment A I am including a copy of HealthPointe's Medical Release form which they required me to sign. Not only did I sign their form, but I listed on the back a complete description of the medical records I wanted disclosed. I also insisted that their personnel sign for receiving the form (signed by Jesica L on 8-24-16) to show that they had a complete list of all the medical records I was requesting. While HealthPointe did send some records, HealthPointe has refused to send Item 2 and Item 4a, 4b, and 4c. This request is in addition to the requests that I made during July 2016 for my medical records which HealthPointe refused to comply with.

HealthPointe is refusing to provide Item 2 because it appears that for the last two years HealthPointe has been submitting sub-standard Requests for Authorization to my insurance company. Said sub-standard RFA's have resulted in the insurance company denying my claims for critical medical treatments. HealthPointe is aware that in July 2016 I obtained evidence of at least one sub-standard RFA that they had submitted; therefore, HealthPointe is refusing me access to my medical records in order to cover up the evidence of their fraud. I also asked for Items 4a, 4b, and 4c because in November 2015 I was denied timely medical treatments and there is a dispute as to whether the insurance company failed to provide authorization in a

timely manner or whether HealthPointe was negligent and lost the authorizations. In my second OCR complaint dated August 25, 2016 I stated that I had even had a subpoena served on HealthPointe demanding some of my medical records. I have even gone as far as having HealthPointe served with a second subpoena on October 27, 2016 (Attachment B) from the California Worker's Compensation Appeals Board, ordering HealthPointe to turn over the correspondence item listed in item 4a, 4b, and 4c; and again HealthPointe has refused to comply with the subpoena.

OCR needs to understand that HealthPointe Medical Group and their treating doctor, Dr. Kirshnareddy are committing criminal acts and they are going to get away with it, if OCR does not take action and enforce the law.

This is the third HIPAA complaint I have filed against HealthPointe and HealthPointe continues to refuse to provide me copies of my missing medical records and so far OCR has failed to force compliance. I did receive a reply from OCR in response to my second complaint submitted on August 25, 2016. In a letter dated December 15, 2016, (OCR Transaction Number 16-247377), OCR stated that they are handling this matter "through the provision of technical assistance" to HealthPointe. While OCR is "providing technical assistance" to HealthPointe, HealthPointe employees are probably destroying my medical records so they no longer exist in HealthPointe's record set and there is no evidence of their refusal to comply; as well as destroying all evidence of multiple occurrences of fraud that Healthpointe has committed. In July 2016 I obtained information that for the previous two years HealthPointe Medical Group and my treating doctor, Dr. Kirshnareddy, had been filing substandard "Requests for Authorization" to my insurance carrier, resulting in many treatments being denied by the insurance company. To obtain the truth about the submitted RFA's I demanded copies of all the submitted RFA's as listed in Item 2 of Attachment A. It should be noted that copies of all correspondences to my medical healthcare insurance company are part of my PHI. HealthPointe has refused to provide this information and as I previously stated, their employees are probably destroying these documents in an effort to eliminate all evidence of their fraud, and OCR's approach of only "providing technical assistance" is serving to assist

HealthPointe in failing to comply with HIPAA regulations and in willful acts of obstruction of justice.

If OCR believes there is any chance of redemption for HealthPointe and Dr. Kirshnareddy, consider the following.

After HealthPointe and Dr. Kirshnareddy were informed about my first HIPAA complaint in late July 2016; on August 8, 2016 Dr. Kirshnareddy dropped me as a patient in what would apparently be an act of retaliation for me trying to exercise my rights under HIPAA. In addition to dropping me as a patient, on August 15, 2016, in a phone conversation with my insurance company's doctor, Dr. Kirshnareddy made false statements to the insurance company's doctor which resulted in the insurance company denying my claim for pain medications. In his review report, the insurance company doctor stated that "Dr. Krishnareddy was contacted 8/15/16 at 11:37 AM Central. In the discussion Dr. Kirshnareddy indicated the patient is being referred to pain management and they will deal with the Celebrex within the context of weaning from the medication." **Dr. Kirshnareddy has never made any mention of pain management or any effort of weaning to me, the patient.** There has never been any discussion by Dr. Kirshnareddy of referring me to pain management and I can provide OCR with copies of the office visit notes written by Dr. Kirshnareddy dating back for three months, as well as for my final office visit on August 24, 2016. Nowhere within any of Dr. Kirshnareddy's notes is there any reference to pain management or weaning. The statements made by Dr. Kirshnareddy to the insurance company's doctor were a malicious act of retaliation and a violation of HIPAA regulations. I even wrote to Dr. Kirshnareddy and highlighted the discrepancy in his statements to the insurance company verses his office visit notes. I even gave him the chance to contact the insurance company and correct the matter in case the insurance company's doctor had misunderstood. Dr. Kirshnareddy refused to make any effort to correct the discrepancy. One can only conclude that there was no mistake or misunderstanding. Dr. Kirshnareddy intentionally made those false statements in order to cause harm to his patient because his patient had filed a HIPAA complaint.

Unless the OCR takes action other than "providing technical assistance", HealthPointe Medical Group and Dr. Kirshnareddy will simply delete my medical records from their designated record set and in so doing cover up the fraud they have been committing for years of submitting substandard Requests for Authorization to the insurance company. Without the OCR taking action and enforcing the rules, HealthPointe and Dr. Kirshnareddy are going to get away with ignoring the HIPAA regulations and get away with multiple acts of fraud.

**PATIENT'S COPY**

HEALTHPOINTE

# REQUEST FOR RELEASE OF MEDICAL RECORDS

**Date:** August 23, 2016

**Attention:** Divakar R. Kirshnareddy
Physician's Name (Please Print)

16702 Valley View Ave. La Mirada, CA 90638
Address City/State/Zip

Fax

562-921-0341
Phone

I hereby request that all my medical records to be released to:

XXXXXXXXXX ~~Healthpointe~~ – The Patient - John Sigler - Medical Records to include items listed on back.
Physician's Name (Please Print)

13129 Stern Ave. La Mirada, CA 90638
Address City/State/Zip

Fax

714-697-8576
Phone

**Patient Information:**

John Sigler
Patient's Name (Please Print)

13129 Stern Ave
Address

La Mirada, CA 90638
City/State/Zip

09-23-1956
Date of Birth

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
Social Security Number

X
**Patient's Signature**

Received by Jesica .L
Dated: 8-24-16

**Office Use Only**

**Patient Acct#:** ____________ **Follow Up Appt. Date:** ____________

**Date Faxed / E-Mailed:** ____________ **By:** ____________

Updated 3/6/14



**EXHIBIT 10-144**

August 23, 2016

Demand for Medical Records

From HealthPointe Medical Group

For Patient John W. Sigler

As per US Code 45 CFR Section 160.103 Definitions., Health Information is defined as: any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

Based upon the above definition of Health Information, the patient John Sigler demands that HealthPointe Medical Group turn over to the patient the following records:

1. All doctor progress reports
2. Copies of all Requests for Authorization (RFA) submitted to patient's insurance company including all supporting documentation submitted with each RFA.
3. Copies of all external medical reports submitted to HealthPointe from physical therapy, acupuncture, or any other medical services that have been received by HealthPointe.
4. Copies of all correspondences with patient's insurance provider relating to the provision of health care to the patient including the following:
   a. All emails sent or received by HealthPointe regarding authorizing or denying of treatment,
   b. All faxes sent or received by HealthPointe regarding authorizing or denying of treatment,
   c. All letters sent or received by HealthPointe regarding authorizing or denying of treatment,
5. Copies of all Utilization Reviews and Independent Medical Reviews provided to HealthPointe.
6. Copies of all x-rays, MRI's, laboratory reports or any other diagnostic reports provided to HealthPointe.
7. Copies of all prior doctor reports submitted to HealthPointe.
8. Copies of all AME reports provided to HealthPointe.

**State of California**
**Department of Industrial Relations**
**Division Of Workers' Compensation**

# WORKER'S COMPENSATION APPEALS BOARD

Case No. ADJ2498007

(IF APPLICATION HAS BEEN FILED, CASE NUMBER MUST BE INDICATED REGARDLESS OF DATE OF INJURY)

JOHN SIGLER

Claimant/Applicant

vs.

AEROJET ROCKETDYNE, INC.
INSURANCE COMPANY OF NO. AMERICA

Employer/Insurance Carrier/Defendant

## SUBPOENA DUCES TECUM

(When records are mailed, identify them by using above case number or attaching a copy of a subpoena)

Where no application has been filed for injuries on or after January 1, 1990 and before January 1, 1994, subpoena will be valid without case number, but subpoena must be served on claimant and employer and/or insurance carrier.

**NO PERSONAL APPEARANCE NECESSARY** - See instructions below*

*People of the State of California Send Greetings to:* Custodian of Records, HealthPointe Medical Group, Inc.

We COMMAND YOU to appear before: The Claimant / Applicant in Pro Per, John Sigler

at 13129 Stern Ave. La Mirada, CA. 90638

On the 11 day of November 2016, at 05:00 o'clock P M. to testify in the above-entitled matter and to bring with you and produce the following described documents, papers, books, records:

**SEE ATTACHMENT A.**

(Do not produce X-rays unless specifically mentioned above.)

For failure to attend as required, you may be deemed guilty of contempt and liability to pay to the parties aggrieved all losses and damages sustained thereby and forfeit one hundred dollars in addition thereto.

This subpoena is issued at the request of the person making the declaration on the reverse hereof, or on the copy which is served herewith.

Date 10/26/16

WORKERS' COMPENSATION APPEALS BOARD
OF THE STATE OF CALIFORNIA

Secretary, Assistant Secretary, Workers' Compensation Judge




***FOR INJURIES OCCURRING ON OR AFTER JANUARY 1,1990 AND BEFORE JANUARY 1, 1994:**

If no Application for Adjudication of Claim has been filed, a declaration under penalty of perjury that the Employee's Claim for Worker's Compensation Benefits (Form DWC-1) has been filed pursuant to Labor Code Section 5401 must be executed properly.

**SEE REVERSE SIDE**
**[SUBPOENA INVALID WITHOUT DECLARATION]**

You may fully comply with this subpoena by mailing the records described (or authenticated copies, Evid. Code 1561) to the person and place stated above within ten (10) days of the date if service of this subpoena. This subpoena does not apply to any member of the Highway Patrol, Sheriffs Office or city Police Department unless accompanied by notice from this Board that deposit of the witness fee has been made in accordance with Government code 68097.2, et seq.

# DECLARATION FOR SUBPOENA DUCES TECUM

Case No. ADJ2498007

**STATE OF CALIFORNIA,** County of Orange

The undersigned states:
That he/she is (one of) the attorney (s) of records/representative (s) for the applicant/defendant in the action captioned on the reverse hereof that Custodian of Records, HealthPointe Medical Group, Inc.
has in his/her possession or under his/her control the documents described on the reverse hereof. That the said documents are material to the issues involved in the case for the following reasons:

**SEE ATTACHMENT B**

**Declaration for Injuries on or After January 1, 1990 and Before January 1,1994**

☐ That an Employee's Claim for Worker's Compensation Benefits (DWC Form 1) has been filed in accordance with Labor Code Section 5401 by the alleged injured worker whose records are sought, or if the worker is deceased, by the dependent (s) of the decedent, and that a true copy of the form filed is attached hereto. *(Check box if applicable and part of declaration below. See instructions on front of subpoena)*

I declare under penalty if perjury that the foregoing is true and correct.

Executed on October 26 ,2016 at La Mirada , California.

[signature] Signature — 13129 Stern Ave, La Mirada, CA 90638 Address — 714-697-8576 Telephone

---

## DECLARATION OF SERVICE

STATE OF CALIFORNIA, County of Los Angeles

I, the undersigned, state that I served the foregoing subpoena by showing the original and delivering a true copy thereof, together with a copy of the Declaration in support thereof, to each of the following named persons, personally, at the date and place set forth opposite each name.

| Name of Person Served | Date | Place |
|---|---|---|
| Ysabel Portocarrero for Kevin A. Lawrence Agent for service of process for HealthPointe Medical Group | October 27, 2016 | 28720 Roadside Dr. #231 Agoura Hills, CA |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 27 , 2016 , at La Mirada , California.

[signature] Signature

# ATTACHMENT A

## Subpoenaed Documents

Item 1. Electronic copy of emails received by HealthPointe Medical Group, La Mirada, California from ESIS Inc. from December 4, 2015 to December 15, 2015 regarding authorization of medical treatment for HealthPointe Patient John W. Sigler, DOB 9/23/56. Emails to be provided in electronic format and include all attachments within said electronic format. Acceptable electronic format shall be Outlook pst file. To minimize any burden on HealthPointe, copies of emails, including attachments, can be emailed to evidence@SWS-LLC.com prior to subpoena deadline to satisfy subpoena requirements.

Item 2. Copies of all incoming fax logs produced by the fax communication software used by HealthPointe Medical Group at their La Mirada, California office location which shows any and all data for faxes received by HealthPointe at their La Mirada location for the time period of November 19, 2015 to December 15, 2015. Fax log information can be provided in printed format or in electronic format. Acceptable electronic formats include Microsoft Excel (xls or xlsx), tab-delimited text file, or CSV format. To minimize any burden on HealthPointe, electronic copies of the incoming fax log information can be emailed to evidence@SWS-LLC.com prior to subpoena deadline to satisfy subpoena requirements.

Item 3. Copies of all faxes, and their companion receipts, received by HealthPointe Medical Group at their La Mirada, California office location from ESIS Inc. that in any fashion relate to HealthPointe patient John Sigler for the time period of November 19, 2015 to December 15, 2015. Faxes can be supplied in printed format or in electronic format. Acceptable electronic formats are pdf. To minimize any burden on HealthPointe, electronic copies of the faxes and their receipts can be emailed to evidence@SWS-LLC.com prior to subpoena deadline to satisfy subpoena requirements.

## ATTACHMENT B

## Justification for Subpoenaed Documents

**Item 1. Electronic copy of emails received by HealthPointe Medical Group, La Mirada, California from ESIS Inc. from November 19, 2015 to December 15, 2015 regarding authorization of medical treatment for HealthPointe Patient John W. Sigler, DOB 9/23/56. Emails to be provided in electronic format and include all attachments within said electronic format. Acceptable electronic format shall be Outlook pst file, or copies of emails, including attachments, can be emailed to evidence@SWS-LLC.com prior to subpoena deadline to satisfy subpoena requirements.**

1. The electronic records / documents requested in Item 1 are material to the issue of timely authorization of medical treatment for the Applicant John W. Sigler and are required as evidence in an upcoming WCAB hearing before Judge Nancy Gordon to determine whether the Defendants improperly delayed authorizing medical treatment.

2. On November 19, 2015 the Applicant John Sigler submitted a written request to ESIS for authorization of medical treatment by HealthPointe Medical Group. Currently there is a dispute as to the timeliness of ESIS Inc. providing authorization to HealthPointe Medical Group. HealthPointe Medical Group's position is that they received authorization in an email on or about December 10, 2015, and ESIS's position is that authorization was sent to HealthPointe on or about November 25, 2015.

3. HealthPointe Medical Group personnel informed the Applicant John Sigler that on or about December 10, 2015 HealthPointe received one or more emails from ESIS Inc., the subject of said email being authorization for medical treatment of HealthPointe patient John Sigler, and said email stated that authorization had been previously provided to HealthPointe on or about November 25, 2015 by both fax and USPS mail. A copy of said email was shown to the Applicant, John Sigler, on or about February 12, 2016 by HealthPointe employee Yvette Madrigal. Copies of said emails are now required as material evidence to be presented before the WCAB court in order to determine the timeliness of ESIS providing of "authorization to treat".

4. To the best of the Applicant's knowledge, said emails received on or about December 10, 2015 by HealthPointe Medical Group from ESIS stated that authorization had been provided to HealthPointe Medical Group on or about November 23, 2015 by both fax and USPS letter. Said email received by HealthPointe on or about December 10, 2015 is said to have contained an attachment contain a copy of said "authorization to treat" which ESIS claims was sent on or about November 25, 2015. The claim of

this previous delivery of authorization to HealthPointe is in dispute and any and all emails received by HealthPointe Medical Group from ESIS Inc. discussing the authorization of medical treatment for the Applicant John Sigler between the dates of November 19, 2015 and December 15, 2015 are material to the upcoming hearing.

5. Electronic version of all emails are requested in order to provide not only copies of the content of the emails and any attachments themselves, but also all electronic copies of the emails and their attachments will contain metadata which will provide information as to when each email and any attached documents were created.

**Item 2. Copies of all incoming fax logs produced by the fax communication software used by HealthPointe Medical Group at their La Mirada, California office location which shows any and all data for faxes received by HealthPointe at their La Mirada location for the time period of November 19, 2015 to December 15, 2015. Fax log information can be provided in printed format or in electronic format. Acceptable electronic formats include Microsoft Excel (xls or xlsx), tab-delimited text file, or CSV format. Electronic copies of the incoming fax log information can be emailed to evidence@SWS-LLC.com prior to subpoena deadline to satisfy subpoena requirements.**

1. The said documents requested in Item 3 are material to the issue of timely receipt of "authorization to treat" by HealthPointe Medical Group from ESIS Inc. and are critical in proving either the guilt or innocence of the Defendant.

2. On November 19, 2015 the Applicant John Sigler submitted a written request to ESIS for authorization of medical treatment by HealthPointe Medical Group. Currently there is a dispute as to the timeliness of ESIS Inc. providing "authorization to treat" to HealthPointe Medical Group. HealthPointe Medical Group's position is that the first that they received authorization was in an email on or about December 10, 2015. ESIS's position is that authorization was sent to HealthPointe on or about November 25, 2015 by both fax and USPS letter.

3. HealthPointe Medical Group utilizes a computer based software system to handle incoming and outgoing faxes. As part of its normal functions, said fax communication software creates and maintains a log of all incoming faxes. The information contained within said log in vital in determining the truthfulness of ESIS's claim that "authorization to treat" was sent in a timely manner on or about November 25, 2015.

**Item 3. Copies of all faxes and companion receipts received by HealthPointe Medical Group at their La Mirada, California office location from ESIS Inc. that in any fashion relate to HealthPointe patient John Sigler for the time period of November 19, 2015 to December 15, 2015. Faxes can be supplied in printed format or in electronic format. Acceptable electronic formats are pdf. Electronic copies of the faxes and their receipts can be emailed to evidence@SWS-LLC.com prior to subpoena deadline to satisfy subpoena requirements.**

1. The said documents requested in Item 3 are material to the issue of timely receipt of "authorization to treat" by HealthPointe Medical Group from ESIS Inc. and are critical in proving either the guilt or innocence of the Defendant.

2. On November 19, 2015 the Applicant John Sigler submitted a written request to ESIS for authorization of medical treatment by HealthPointe Medical Group. Currently there is a dispute as to the timeliness of ESIS Inc. providing "authorization to treat" to HealthPointe Medical Group. HealthPointe Medical Group's position is that the first that they received authorization was in an email on or about December 10, 2015. ESIS's position is that authorization was sent to HealthPointe on or about November 25, 2015 by both fax and USPS letter.

3. HealthPointe Medical Group utilizes a computer based software system to handle incoming and outgoing faxes. As part of its normal functions, said fax communication software stores electronic copies of all incoming faxes. A thorough search of all incoming faxes for the time period of November 19, 2015 through December 15, 2015, and a complete printout of all faxes received from ESIS Inc regarding the Applicant John Sigler will provide evidence necessary to prove the guilt or innocence of whether ESIS Inc. failed to provide "authorization to treat" in a timely manner.

DEPARTMENT OF HEALTH & HUMAN SERVICES OFFICE OF THE SECRETARY

Voice - (415) 437-8310, (800) 368-1019
TDD - (415) 437-8311, (800) 537-7697
(FAX) - (415) 437-8329
http://www.hhs.gov/ocr/

Office for Civil Rights, Pacific Region
90 7th Street, Suite 4-100
San Francisco, California 94103

December 15, 2016

Mr. John Sigler
13129 Stern Avenue
La Mirada, CA 90638

Re: OCR Transaction Number: 16-247377

Dear Mr. Sigler:

On August 25, 2016, the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received your complaint alleging that HealthPointe Medical Group (HMG), the covered entity, has violated the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules). Specifically, you allege that, in June 2016 through July 2016, HMG denied your verbal and written requests for copies of your protected health information. This allegation could reflect a violation of 45 C.F.R. § 164.524.

OCR enforces the Privacy, Security, and Breach Notification Rules, and also Federal civil rights laws which prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and under certain circumstances, sex and religion.

The Privacy Rule provides that an individual or an individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right to access the individual's protected health information (PHI), maintained by a covered entity in a designated record set, for as long as the PHI is maintained in the designated record set (e.g., medical or billing records). 45 C.F.R. §§ 164.502(g) and 164.524 (a)(1). A covered entity must act on the request for access no later than 30 days after receipt of such a request and, in certain circumstances, no later than 60 days after the receipt of such a request.

An individual also has a right to direct the covered entity to transmit the PHI about the individual directly to another designated person or entity. The request to direct the PHI to another person or entity must be in writing, signed by the individual, and clearly identify the person or entity being designated to receive the PHI, and where to send the PHI. A covered entity may accept an electronic copy of a signed request (e.g., PDF), as well as an electronically executed request (e.g., via a secure web portal) that includes an electronic signature.

The right of an individual to have PHI sent directly to a third party is an extension of the individual's right of access; consequently, all of the provisions that apply when an individual obtains access to his/her PHI apply when the individual directs a covered entity to send the PHI to a third party. As a result:

- This right applies to PHI in a designated record set;

- Covered entities must take action within 30 days (or 60 days if an extension is applicable) of the request;
- Covered entities must provide the PHI in the form and format and manner of access requested by the individual if it is "readily producible" in that manner; and
- The individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4).

See 45 C.F.R. § 164.524(c).

Individuals' rights under the HIPAA Privacy Rule to access PHI about themselves extends to PHI in a designated record set maintained by a business associate on behalf of a covered entity. Thus, if an individual submits a request for access to PHI, the covered entity is responsible for providing the individual with access not only to the PHI it holds but also to the PHI held by one or more of its business associates. However, if the same PHI that is the subject of an access request is maintained in both the designated record set of the covered entity and the designated record set of the business associate, the PHI need only be produced once in response to the request for access. See 45 C.F.R. § 164.524(c)(1).

With respect to PHI in a designated record set maintained by a business associate, the business associate agreement between the covered entity and the business associate will govern whether the business associate will provide access directly to the individual or will provide the PHI that is the subject of the individual's access request to the covered entity for the covered entity to then provide access to the individual. However, regardless of how and to what extent a business associate supports or fulfills a covered entity's obligation to provide access to an individual, a request for access still must be acted upon within 30 days (or 60 days if an extension is applicable) of receipt of the request by either the covered entity, or by a business associate if the request was made directly to the business associate because the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate. Further, all of the access requirements that apply with respect to PHI held by the covered entity (e.g., the individual may be charged only a reasonable, cost-based fee that complies with 45 C.F.R. § 164.524(c)(4)) apply with respect to PHI held by the business associate.

An individual's personal representative (generally, a person with authority under State law to make health care decisions for the individual) has the right both to receive a copy of PHI about the individual in the designated record set(s) maintained by a covered entity and its business associates, and to direct the covered entity, or its business associate if the covered entity instructed individuals through its notice of privacy practices (or otherwise) to submit access requests directly to the business associate, to transmit a copy of the PHI to another person or entity, upon request, consistent with the scope of such representation and the requirements of 45 C.F.R. § 164.524. See 45 C.F.R. § 164.502(g). The same requirements for fulfilling an individual's request to send the individual's PHI to a third party (e.g., with respect to timeliness, form and format, bases for denial, fee limitations, etc.) also apply to requests made by an individual's personal representative.

We have carefully reviewed your complaint against HMG and have determined to resolve this matter informally through the provision of technical assistance to HMG. If you continue to experience the issues you described in your complaint, please contact the OCR Investigator named below. Should OCR receive a similar allegation of noncompliance against HMG in the future, OCR may initiate a formal investigation of that matter.

For your informational purposes, OCR encourages you to review its technical assistance materials regarding individuals' right to access their protected health information under 45 C.F.R. § 164.524. Those materials are located at OCR's website at: http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html.

Based on the foregoing, OCR is closing this case without further action, effective the date of this letter. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Lesley Morgan, Investigator, at (206) 615-2283 (Voice) or (206) 615-2296 (TDD).

Sincerely,

Michael Leoz
Regional Manager

**State of California**
**Department of Industrial Relations**
**Division Of Workers' Compensation**

# WORKER'S COMPENSATION APPEALS BOARD

Case No. ADJ2498007

(IF APPLICATION HAS BEEN FILED, CASE NUMBER MUST BE INDICATED REGARDLESS OF DATE OF INJURY)

JOHN SIGLER

Claimant/Applicant

vs.

AEROJET ROCKETDYNE, INC.
INSURANCE COMPANY OF NO. AMERICA

Employer/Insurance Carrier/Defendant

## SUBPOENA DUCES TECUM

(When records are mailed, identify them by using above case number or attaching a copy of a subpoena)

Where no application has been filed for injuries on or after January 1, 1990 and before January 1, 1994, subpoena will be valid without case number, but subpoena must be served on claimant and employer and/or insurance carrier.

**NO PERSONAL APPEARANCE NECESSARY** - See instructions below*

*People of the State of California Send Greetings to:* Custodian of Records, HealthPointe Medical Group, Inc.
We COMMAND YOU to appear before: The Claimant / Applicant in Pro Per, John Sigler

at 13129 Stern Ave. La Mirada, CA. 90638

On the 11 day of November 2016, at 05:00 o'clock P M. to testify in the above-entitled matter and to bring with you and produce the following described documents, papers, books, records:

**SEE ATTACHMENT A.**

(Do not produce X-rays unless specifically mentioned above.)
For failure to attend as required, you may be deemed guilty of contempt and liability to pay to the parties aggrieved all losses and damages sustained thereby and forfeit one hundred dollars in addition thereto.

This subpoena is issued at the request of the person making the declaration on the reverse hereof, or on the copy which is served herewith.

Date 10/26/16

WORKERS' COMPENSATION APPEALS BOARD
OF THE STATE OF CALIFORNIA

Secretary, Assistant Secretary, Workers' Compensation Judge

**<u>*FOR INJURIES OCCURRING ON OR AFTER JANUARY 1,1990 AND BEFORE JANUARY 1, 1994:</u>**

If no Application for Adjudication of Claim has been filed, a declaration under penalty of perjury that the Employee's Claim for Worker's Compensation Benefits (Form DWC-1) has been filed pursuant to Labor Code Section 5401 must be executed properly.

**SEE REVERSE SIDE**
**[SUBPOENA INVALID WITHOUT DECLARATION]**

You may fully comply with this subpoena by mailing the records described (or authenticated copies, Evid. Code 1561) to the person and place stated above within ten (10) days of the date if service of this subpoena. This subpoena does not apply to any member of the Highway Patrol, Sheriffs Office or city Police Department unless accompanied by notice from this Board that deposit of the witness fee has been made in accordance with Government code 68097.2, et seq.

# DECLARATION FOR SUBPOENA DUCES TECUM

Case No. ADJ2498007

**STATE OF CALIFORNIA,** County of Orange

The undersigned states:
That he/she is (one of) the attorney (s) of records/representative (s) for the applicant/defendant in the action captioned on the reverse hereof that Custodian of Records, HealthPointe Medical Group, Inc. has in his/her possession or under his/her control the documents described on the reverse hereof. That the said documents are material to the issues involved in the case for the following reasons:

**SEE ATTACHMENT B**

**Declaration for Injuries on or After January 1, 1990 and Before January 1,1994**

☐ That an Employee's Claim for Worker's Compensation Benefits (DWC Form 1) has been filed in accordance with Labor Code Section 5401 by the alleged injured worker whose records are sought, or if the worker is deceased, by the dependent (s) of the decedent, and that a true copy of the form filed is attached hereto. *(Check box if applicable and part of declaration below. See instructions on front of subpoena)*

I declare under penalty if perjury that the foregoing is true and correct.

Executed on October 26 ,2016 at La Mirada , California.

| Signature | 13129 Stern Ave, La Mirada, CA 90638<br>Address | 714-697-8576<br>Telephone |
|---|---|---|

---

# DECLARATION OF SERVICE

STATE OF CALIFORNIA, County of Los Angeles

I, the undersigned, state that I served the foregoing subpoena by showing the original and delivering a true copy thereof, together with a copy of the Declaration in support thereof, to each of the following named persons, personally, at the date and place set forth opposite each name.

| Name of Person Served | Date | Place |
|---|---|---|
| Ysabel Portocarrero<br>for Kevin A. Lawrence<br>Agent for service of process for<br>HealthPointe Medical Group | October 27, 2016 | 28720 Roadside Dr. #231<br>Agoura Hills, CA |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 27 , 2016 , at La Mirada , California.

Signature

# ATTACHMENT A

## Subpoenaed Documents

Item 1. Electronic copy of emails received by HealthPointe Medical Group, La Mirada, California from ESIS Inc. from December 4, 2015 to December 15, 2015 regarding authorization of medical treatment for HealthPointe Patient John W. Sigler, DOB 9/23/56. Emails to be provided in electronic format and include all attachments within said electronic format. Acceptable electronic format shall be Outlook pst file. To minimize any burden on HealthPointe, copies of emails, including attachments, can be emailed to evidence@SWS-LLC.com prior to subpoena deadline to satisfy subpoena requirements.

Item 2. Copies of all incoming fax logs produced by the fax communication software used by HealthPointe Medical Group at their La Mirada, California office location which shows any and all data for faxes received by HealthPointe at their La Mirada location for the time period of November 19, 2015 to December 15, 2015. Fax log information can be provided in printed format or in electronic format. Acceptable electronic formats include Microsoft Excel (xls or xlsx), tab-delimited text file, or CSV format. To minimize any burden on HealthPointe, electronic copies of the incoming fax log information can be emailed to evidence@SWS-LLC.com prior to subpoena deadline to satisfy subpoena requirements.

Item 3. Copies of all faxes, and their companion receipts, received by HealthPointe Medical Group at their La Mirada, California office location from ESIS Inc. that in any fashion relate to HealthPointe patient John Sigler for the time period of November 19, 2015 to December 15, 2015. Faxes can be supplied in printed format or in electronic format. Acceptable electronic formats are pdf. To minimize any burden on HealthPointe, electronic copies of the faxes and their receipts can be emailed to evidence@SWS-LLC.com prior to subpoena deadline to satisfy subpoena requirements.