196314-86285-1697122: John Sigler
DOI: 04/08/1994
DOS: 07/13/2016

State of California
Division of Workers' Compensation

Additional pages attached [X]

1 of 2

# PRIMARY TREATING PHYSICIAN'S PROGRESS REPORT (PR-2)

- [ ] Periodic Report (required 45 days after last report)
- [ ] Change in work status
- [ ] Change in patient's condition
- [ ] Condition is not related to an industrial injury or illness
- [ ] Need for referral or consultation
- [ ] Need for surgery or hospitalization
- [ ] Change in treatment plan
- [ ] Released from care
- [ ] Response to request for information
- [ ] Request for authorization
- [ ] Other:

**Patient** **DATE OF VISIT:** 7/13/2016 **TIME IN:** 9:04 AM **TIME OUT:** 10:38 AM

Last Sigler First John M.I. Sex M
Address 13129 Stern Ave City La Mirada State CA Zip 90638
Date of Injury 04/08/1994 Date of Birth 09/23/1956
Occupation SS# 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 Phone (714) 697-8576

**Claims Administrator**
Name ESIS 6569 Claim Number 345C3004870
Address PO BOX 6569 City Scranton State PA Zip 18505-6569
Phone (800) 992-7578 Fax (800) 208-8281

**Employer Name:** Aerojet Employer Phone (916) 355-4000

Since the last exam, condition has: [ ] Improved [ ] Not improved [ ] Plateaued [✓] Worsened

**Surgery Date:**

**Subjective Complaints**
(See additional page.)

Grip
R | L

**Objective Findings** (Include significant physical examination, laboratory, imaging, or other diagnostic findings.)
(See additional page.)

X-Rays (or other) Results:

**ASSESSMENT / DIAGNOSIS / COMMENTS:**
trigger point pain
rom limited
no neuro deficit

Girth
R | L

**Diagnoses**

1 Other intervertebral disc displace **ICD-10 Code** M51.24
2 Pain in thoracic spine **ICD-10 Code** M54.6
3 Unsp thoracic, thoracolum and lı **ICD-10 Code** M51.9

**Treatment Plan**
(See additional page.)

[ ] Medication Dispensed
The patient has been couseled on the management, use of the prescribed medication, its indications, potential side effects and is to immediately report any side effects noted back to this office or private medical doctor.

[ ] Physical Therapy

**Work Status:**

[X] Remain off-work until 7/20/2016 .
[ ] Return to modified work on with the following limitations or restrictions**
- Use of
- Forceful pulling or squeezing
- Overhead work
- Standing / walking over hrs
- Stooping and bending

[ ] No lifting over lbs
[ ] No sitting over
[ ] Sedentary work only
[ ] No driving
[ ] No climbing
[ ] Keep wound / bandage clean and dry
[ ] Other Restrictions:

[ ] Above limited activities can be performed hrs / day Discussed with:
[ ] Return to full duty on with no limitations, or restrictions.

[ ] 45DR [ ] Dict
[ ] Init [ ] COS Next:
[ ] P+S Dict #:
[ ] Post P+S FU
[ ] Post P+S Con

**RETURN VISIT**
DATE Wed, Jul 20, 2016
TIME 3:00 PM

I declare under penalty of perjury that this report is true and correct to the best of my knowledge and that I have not violated Labor Code § 139.3.

[signature]

Divakar R Krishnareddy, M.D.
EXAMINING PHYSICIAN / ASSISTANT
CA Lic # A35665
Speciality Orthopedic Surgery

Date of exam 07/13/2016
Date 7/13/2016
Address 16702 Valley View Ave.
La Mirada CA 90638-5824
Telephone (562) 921-0341

** If the work restrictions are not available, then consider patient temporarily totally disabled.

196314-86285-1697122: John Sigler
DOI: 04/08/1994
DOS: 07/13/2016

State of California
Division of Workers' Compensation

Additional pages attached ☐

# PRIMARY TREATING PHYSICIAN'S PROGRESS REPORT (PR-2)



**SUBJECTIVE COMPLAINTS**

CC: LUMBAR SPINE

HPI: PATIENT STATES THE PAIN INCREASD SINCE LAST VISIT WITH PAIN LEVEL OF 8-9/10,HIS MEDS WAS DENIED...MF

MEDS: CELBREX, NORCO    ALL: NKDA    ILL: DENIES    TETANUS: N/A

MUSCULOSKELETAL: MID BACK PAIN

EYES:PT WEARS GLASSES
RESPIRATORY: DENIES ASTHMA
ENT: DENIES SYMPTOMS
CARDIOVASCULAR: DENIES CHEST PAIN
GASTROINTESTINAL: DENIES ABD PAIN
GENITOURINARY: DENIES BLADDER INFECTION
SKIN: DENIES SKIN RASH
NEUROLOGIC: DENIES MIGRAINES
ENDOCRINE: DENIES DIABETES
CONSTITUTIONAL: DENIES WEIGHT CHANGE
HEMATOLOGIC: DENIES ACTIVE BLEEDING
PSYCHIATRIC: DENIES INSOMNIA
CONSTITUTIONAL: DENIES BEING FATIGUE
ALL OTHER SYSTEMS ARE REVIEWED AND ARE NEGATIVE
PMH:LT KNEE SURGERY AND RT ANKLE SURGERY
FH: CANCER(DAD)
SH: DENIES SMOKING AND OCC DRINKING

**OBJECTIVE FINDINGS**

B/P: 130/80    P: 69
continues to complain of pain in thoracic region
local tenderness over the t6-7 bil facets
rom limited
discogenic pain t6-7

**PLAN**

may benefit from local trigger point injection
rx given neurontin #90
rtc 1 week for injection

To: Legal Counsel
Healthpointe Medical Group
16702 Valley View Ave
La Mirada, CA 90638

October 5, 2016

Copy To: Dr. Divakar Krishnareddy
6231 Oakbrook Circle
Huntington Beach, CA 92648

From: John Sigler
13129 Stern Ave
La Mirada, CA 90638
Tel: 714-697-8576

RE: Request for Authorization submitted by Healthpointe - July 26, 2016

Dear Sirs,

On July 26, 2016 HealthPointe and Dr. Krishnareddy submitted a Request For Authorization (RFA) to my Workers Compensation insurance carrier ESIS, requesting authorization for several prescription medications. This RFA for prescription medications was denied in an initial Utilization Review (UR), as well as a second UR which was performed through ESIS's voluntary in-house re-evaluation program.

I have now initiated a request for an Independent Medical Review (IMR) of the UR denials of my pain relieving medications. Within the next week I expect to receive from Maximus Federal a request for all additional medical information that would be pertinent to the IMR. I will be forwarding a copy of Maximus Federal's request to HealthPointe La Mirada office manager, Yvette Madrigal. **I am contacting HealthPointe and Dr. Krishnareddy to provide you with the opportunity to correct the damage you have done through your negligence and what appears to be intentional and willful retaliatory actions.**

Classifying the original RFA submission as dismal, unprofessional, and a "lazy piece of work", would be a generous statement. The backup data submitted as medical justification for the RFA request consisted of two previous progress reports by Dr. Krishnareddy, even though neither progress report contained a single sentence or phase providing any medical rational supporting the RFA request for medications. If this refusal to submit any supporting medical justification with the RFA was not a sufficient act of medical negligence, on August 15th false statements were made to ESIS concerning the patient's medical treatment. During ESIS's re-evaluation of their initial UR, the second UR doctor contacted Dr.

Krishnareddy on August 15, 2016 at 11:37 AM Central. During said conversation Dr. Krishnareddy stated **"that the patient was being referred to pain management and would be weaned off of these medications"**. These comments were documented in the second UR denial report and were used as the basis for the second denial of the prescription medications. (see Attachment A). Fortunately for the patient, ESIS's UR doctor documented the above referenced phone conversation otherwise the patient would have never known about these false and malicious statements.

Needless to say, Dr. Krishnareddy has never once mentioned the phase "pain management" to the patient and there is no record in any of his progress reports of any such pain management referral or any plan to "wean" the patient off of any medications. During the patient's final office visit with Dr. Krishnareddy on August 24, 2016, Dr. Krishnareddy never brought up the subject of pain management or weaning the patient off any medications. Dr. Krishnareddy 's claims of pain management and "weaning" are further refuted by the doctor's own actions during the patient's last appointment on August 24, 2016 when Dr. Krishnareddy willingly provided new prescriptions for all the medications the patient had previously been taking.

Considering the fact that on August 8, 2016 Dr. Krishnareddy, in a written letter, terminated medical care to the patient in response to the patient's complaints about sub-standard care regarding the July 26th RFA, and considering that Dr. Krishnareddy never once mentioned pain management or weaning to the patient himself; the false statements made on August 15th appear to be a deliberate attempt to retaliate against the patient and undermine the patient's access to vital pain relieving medications. While HealthPointe employee Yvette Madrigal may claim that ESIS's claim adjuster agreed to approve all prescription medications requested in the July 26th RFA, after the false statements that were made on August 15, ESIS has reigned on any promised approval of prescription medications.

The negligent actions by HealthPointe and Dr. Krishnareddy, along with the false statements claiming the patient has been referred to pain management and is being weaned off of these medications, has resulted in the patient being denied critical pain relieving medication. If the UR denials are upheld by the IMR review, then in accordance with California labor code the patient will be denied access to these prescription medications for at least 12 months before another RFA request for these medications can be submitted.

The patient is providing HealthPointe and Dr. Krishnareddy an opportunity to mitigate the damage they have done as the result of the sub-standard RFA that was initially submitted and the false statements made on August 15th concerning pain management and weaning of the patient off of pain medications.

Once Maximus Federal notifies the patient of their request for additional medical information, the patient will forward Maximus Federal's notice to HealthPointe and Dr. Krishnareddy in the hope that HealthPointe and Dr. Krishnareddy will chose to undo the damage that has been done. If HealthPointe and Dr. Krishnareddy fail to take advantage of this opportunity and fail to provide sufficient medical justification to convince the IMR to overturn the UR denials of the prescription medications, then the patient will have no other choice but to take legal action against HealthPointe and Dr. Krishnareddy for negligence and willful infliction of harm on the patient due to the sub-standard RFA that was submitted on July 26th with essentially no reasonable medical justification, and for the false statements made on August 15th claiming that the patient has been referred to pain management and is being weaned off of these pain medications.

The patient has done everything possible to address the reasoning behind the UR denials, including obtaining a blood test report as referred to in the second UR denial; a supposedly standard practice that HealthPointe and Dr. Krishnareddy have negligently never requested. While the patient will submit this lab report to Maximus Federal when requested, it is doubtful this lab report will be sufficient to counteract the lack of medical justification that was initially never submitted, and the false statements made on August 15th concerning pain management and weaning.

HealthPointe and Dr. Krishnareddy are being provided an opportunity to correct the damage that has been done and they would be wise to take advantage of this opportunity. Should the IMR support the UR denials then legal action will be taken for damages to the patient caused by the sub-standard RFA and the false statement of August 15th. If HealthPointe and Dr. Krishnareddy refuse to make an effort to correct their previous negligence and address the false statements made on August 15th, their refusal to correct these damaging incidents will also be used as evidence that HealthPointe and Dr. Krishnareddy willfully submitted a sub-standard RFA with no medical justification, and willfully made false statements to the insurance carrier regarding the patient's treatment.

Regards,

John Sigler

the use of prior NSAIDs. Given the chronicity of the injury (1994), there should be a routine lab testing to confirm safety with the renal hepatic system as per standard of care. Also, there was a denial of this request dated 08/02/16. Thus, the medical necessity is not supported.

Dr. Krishnareddy was contacted 8/15/16 at 11:37 AM Central. In the discussion Dr. Krishnareddy indicated the patient is being referred to pain management and they will deal with the Celebrex within the context of weaning from the medication. The request is non-certified.

Primary Reason(s) for Determination
Based on the clinical information submitted for this review and using the evidence-based, peer-reviewed guidelines referenced below, this request is non-certified. Evidence-based guidelines recommend anti-inflammatories as the traditional first line of treatment, to reduce pain so activity and functional restoration can resume, but long-term use may not be warranted. The patient complained of increasing back pain and was taking Celebrex. However, the length of use was not indicated. There were limited objective findings along with the lack of efficacy of the use of prior NSAIDs. Given the chronicity of the injury (1994), there should be a routine lab testing to confirm safety with the renal hepatic system as per standard of care. Also, there was a denial of this request dated 08/02/16. Thus, the medical necessity is not supported.

Medical records reviewed
13 pages of medical and administrative records were reviewed including:
07/13/16, Primary Treating Physician's Progress Report (PR-2), Divakar Krishnareddy, MD
07/26/16, Request for Authorization (RFA), Divakar Krishnareddy, MD
08/02/16, Medical Peer Review Records, Lawrence Koss, MD

Criteria used in analysis (Guidelines / Screening Criteria)
California Medical Treatment Utilization Schedule (MTUS), 2016
§ 9792.24.2 Chronic Pain Medical Treatment Guidelines (2009) Page 30
Celebrex®
Celebrex® is the brandname for celecoxib, and it is produced by Pfizer. Celecoxib is a nonsteroidal anti-inflammatory drug (NSAID) that is a COX-2 selective inhibitor, a drug that directly targets COX-2, an enzyme responsible for inflammation and pain. See Antiinflammatory medications. See NSAIDs (non-steroidal anti-inflammatory drugs) for specific patient decision-making criteria. Unlike other NSAIDs, celecoxib does not appear to interfere with the antiplatelet activity of aspirin and is bleeding neutral when patients are being considered for surgical intervention or interventional pain procedures.
§ 9792.24.2 Chronic Pain Medical Treatment Guidelines (2009) Page 68
NSAIDs (non-steroidal anti-inflammatory drugs)
Specific recommendations:
Back Pain - Chronic low back pain: Recommended as an option for short-term symptomatic relief. A Cochrane review of the literature on drug relief for low back pain (LBP) suggested that NSAIDs were no more effective than other drugs such as acetaminophen, narcotic analgesics, and muscle relaxants. The review also found that NSAIDs had more adverse effects than placebo and acetaminophen but fewer effects than muscle relaxants and narcotic analgesics. In addition, evidence from the review suggested that no one NSAID, including COX-2 inhibitors, was clearly more effective than another. (Roelofs-Cochrane, 2008) See also Anti-inflammatory medications.

HEALTHPOINTE[SM]

**PERSONAL and CONFIDENTIAL**

*Certified/Return Receipt Requested and emailed*

*October 6, 2016*

John Sigler
13129 Stern Ave.
La Mirada, Ca. 90638

Dear Mr. Sigler:

In response to your letter dated October 5, 2016, please reference our certified letter mailed to you via certified mail dated August 8, 2016.

In addition, a complete copy of your medical file was sent to you on 09/06/16 via certified mail.

We wish you well.

Sincerely,

Divakar R. Krishnareddy, M.D.
American Board of Orthopedic Surgery
License Number A35665

HEALTHPOINTE MEDICAL GROUP, INC.

**(Copy to be placed in patient's medical record.)**

HEALTHPOINTE

<u>*Certified/Return Receipt Requested*</u>

*August 8, 2016*

John Sigler
13129 Stern Ave.
La Mirada, Ca. 90638

Dear Mr. Sigler:

*A good relationship between a provider and his or her patient is essential for quality and safe medical care. There are times when this relationship is no longer effective, and it becomes necessary to discontinue the physician-patient relationship.*

*By this letter, we are informing you that Healthpointe Medical Group, Inc. and all of its providers will cease treating you as of September 9, 2016 because the physician-patient relationship has ceased being effective. Including but limited to, some of your comments of your dissatisfaction with our services. Many of your comments are unfounded and self serving.*

***Our records indicate that you have an appointment scheduled August 24, 2016. If you require treatment or a prescription refill within 30 days of the date of this letter, a Healthpointe provider will be available to you as long as you cooperate fully with the provider and all other Healthpointe staff. You may also choose to seek treatment during this 30 day period with another provider outside of Healthpointe. We will be happy to talk to your new physician and send any necessary records. After the 30 day period, Healthpointe providers will NOT provide you medical diagnosis, advice or treatment, prescribe medications or authorize prescription refills under any circumstance. If you require emergency care, please go immediately to the nearest hospital emergency room for evaluation either before or after the 30 day period.***

*If you are receiving ongoing care from a Healthpointe provider, or if you have prescription medications that must be refilled, it is extremely important that you place yourself under the care of another qualified provider without delay. If you* are unable to locate a physician on your own, please call the Orange County Medical Association at

HEALTHPOINTE[SM]

949-398-8100 for referrals, or your claims administrator ESIS. Healthpointe is unable to refer you to another provider.

Enclosed is an authorization to release a copy of your medical record to a provider of your choice or to you directly. Upon receipt of the signed form, Healthpointe will prepare a copy and mail it to your selected recipient. Note that it may take as long as 15 business days for Healthpointe staff to compile and copy your medical record. Therefore, please submit any request for records in sufficient time before your appointment with your new provider to enable Healthpointe to send him or her the records. Healthpointe providers will also be available to discuss prior treatment with your new provider.

We wish you well.

Sincerely,

HEALTHPOINTE MEDICAL GROUP, INC.

Divakar R. Krishnareddy, M.D.
American Board of Orthopedic Surgery
License Number A35665

Enclosure: Authorization to Release Medical Records

DEPARTMENT OF HEALTH AND HUMAN SERVICES

OFFICE FOR CIVIL RIGHTS (OCR)

# HEALTH INFORMATION PRIVACY COMPLAINT

Form Approved: OMB No. 0990-0269. See OMB Statement on Reverse.

| YOUR FIRST NAME | YOUR LAST NAME |
|---|---|
| john | sigler |

| HOME / CELL PHONE (Please include area code) | WORK PHONE (Please include area code) |
|---|---|
| (714) 697-8576 | |

| STREET ADDRESS | CITY |
|---|---|
| 13129 Stern Ave | La Mirada |

| STATE | ZIP | E-MAIL ADDRESS (If available) |
|---|---|---|
| California | 90638 | john@SWS-LLC.com |

**Are you filing this complaint for someone else?** ☐ Yes ☒ No

If Yes, whose health information privacy rights do you believe were violated?

| FIRST NAME | LAST NAME |
|---|---|
| | |

**Who (or what agency or organization, e.g., provider, health plan) do you believe violated your (or someone else's) health information privacy rights or committed another violation of the Privacy Rule?**

PERSON/AGENCY/ORGANIZATION

HealthPointe Medical Group

| STREET ADDRESS | CITY |
|---|---|
| 16702 Valley View Ave | La Mirada |

| STATE | ZIP | PHONE (Please include area code) |
|---|---|---|
| California | 90638 | (562) 921-0341 |

**When do you believe that the violation of health information privacy rights occurred?**

LIST DATE(S)

08/25/2016, 10/27/2016

**Describe briefly what happened. How and why do you believe your (or someone else's) health information privacy rights were violated, or the privacy rule otherwise was violated? Please be as specific as possible.** (Attach additional pages as needed)

OCR needs to understand that this is the third HIPAA complaint I have filed against HealthPointe Medical Group for refusing to release my medical records and so far nothing has happened. I am hoping that in the third time, someone at OCR is finally going to take action, but in case OCR continues to fail to enforce the law, I am sending a copy of this complaint to my Congresswoman Linda Sanchez and asking her office to intercede on my behalf. Hopefully by the time Congresswoman Sanchez's office intercedes, OCR will be able to tell the Congresswoman that the laws of the United States have been enforced.

I have been requesting copies of my private health information from Healthpointe since July 2016 and

This field may be truncated due to size limit. See the "Allegation Description" file in the case folder.

**Please sign and date this complaint. You do not need to sign if submitting this form by email because submission by email represents your signature.**

| SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|
| sigler, john | 01/05/2017 |

Filing a complaint with OCR is voluntary. However, without the information requested above, OCR may be unable to proceed with your complaint. We collect this information under authority of the Privacy Rule issued pursuant to the Health Insurance Portability and Accountability Act of 1996. We will use the information you provide to determine if we have jurisdiction and, if so, how we will process your complaint. Information submitted on this form is treated confidentially and is protected under the provisions of the Privacy Act of 1974. Names or other identifying information about individuals are disclosed when it is necessary for investigation of possible health information privacy violations, for internal systems operations, or for routine uses, which include disclosure of information outside the Department for purposes associated with health information privacy compliance and as permitted by law. It is illegal for a covered entity to intimidate, threaten, coerce, discriminate or retaliate against you for filing this complaint or for taking any other action to enforce your rights under the Privacy Rule. You are not required to use this form. You also may write a letter or submit a complaint electronically with the same information. To submit an electronic complaint, go to OCR's Web site at: **www.hhs.gov/ocr/privacy/hipaa/complaints/index.html**. To mail a complaint see reverse page for OCR Regional addresses.

**The remaining information on this form is optional. Failure to answer these voluntary questions will not affect OCR's decision to process your complaint.**

**Do you need special accommodations for us to communicate with you about this complaint?** (Check all that apply)

☐ Braille ☐ Large Print ☐ Cassette tape ☐ Computer diskette ☐ Electronic mail ☐ TDD

☐ Sign language interpreter (specify language): __________

☐ Foreign language interpreter (specify language): __________ ☐ Other: __________

**If we cannot reach you directly, is there someone we can contact to help us reach you?**

| FIRST NAME | LAST NAME |
|---|---|
| HOME / CELL PHONE (Please include area code) | WORK PHONE (Please include area code) |

| STREET ADDRESS | CITY |
|---|---|

| STATE | ZIP | E-MAIL ADDRESS (If available) |
|---|---|---|

**Have you filed your complaint anywhere else? If so, please provide the following.** (Attach additional pages as needed)

PERSON/AGENCY/ORGANIZATION/ COURT NAME(S)

OCR - Previous Complaint

| DATE(S) FILED | CASE NUMBER(S) (If known) |
|---|---|
| 08/15/2016 | 16-247377 |

**To help us better serve the public, please provide the following information for the person you believe had their health information privacy rights violated (you or the person on whose behalf you are filing).**

ETHNICITY (select one)
- ☐ Hispanic or Latino
- ☒ Not Hispanic or Latino

RACE (select one or more)
- ☐ American Indian or Alaska Native ☐ Asian ☐ Native Hawaiian or Other Pacific Islander
- ☐ Black or African American ☒ White ☐ Other (specify): __________

PRIMARY LANGUAGE SPOKEN (if other then English) __________

**How did you learn about the Office for Civil Rights?**

☒ HHS Website/Internet Search ☐ Family/Friend/Associate ☐ Religious/Community Org ☐ Lawyer/Legal Org ☐ Phone Directory ☐ Employer

☐ Fed/State/Local Gov ☐ Healthcare Provider/Health Plan ☐ Conference/OCR Brochure ☐ Other (specify): __________

**To mail a complaint, please type or print, and return completed complaint to the OCR Regional Address based on the region where the alleged violation took place. If you need assistance completing this form, contact the appropriate region listed below.**

| | | |
|---|---|---|
| **Region I - CT, ME, MA, NH, RI, VT**<br>Office for Civil Rights, DHHS<br>JFK Federal Building - Room 1875<br>Boston, MA 02203<br>(617) 565-1340; (617) 565-1343 (TDD)<br>(617) 565-3809 FAX | **Region V - IL, IN, MI, MN, OH, WI**<br>Office for Civil Rights, DHHS<br>233 N. Michigan Ave. - Suite 240<br>Chicago, IL 60601<br>(312) 886-2359; (312) 353-5693 (TDD)<br>(312) 886-1807 FAX | **Region IX - AZ, CA, HI, NV, AS, GU, The U.S. Affiliated Pacific Island Jurisdictions**<br>Office for Civil Rights, DHHS<br>90 7th Street, Suite 4-100<br>San Francisco, CA 94103<br>(415) 437-8310; (415) 437-8311 (TDD)<br>(415) 437-8329 FAX |
| **Region II - NJ, NY, PR, VI**<br>Office for Civil Rights, DHHS<br>26 Federal Plaza - Suite 3312<br>New York, NY 10278<br>(212) 264-3313; (212) 264-2355 (TDD)<br>(212) 264-3039 FAX | **Region VI - AR, LA, NM, OK, TX**<br>Office for Civil Rights, DHHS<br>1301 Young Street - Suite 1169<br>Dallas, TX 75202<br>(214) 767-4056; (214) 767-8940 (TDD)<br>(214) 767-0432 FAX | |
| **Region III - DE, DC, MD, PA, VA, WV**<br>Office for Civil Rights, DHHS<br>150 S. Independence Mall West - Suite 372<br>Philadelphia, PA 19106-3499<br>(215) 861-4441; (215) 861-4440 (TDD)<br>(215) 861-4431 FAX | **Region VII - IA, KS, MO, NE**<br>Office for Civil Rights, DHHS<br>601 East 12th Street - Room 248<br>Kansas City, MO 64106<br>(816) 426-7277; (816) 426-7065 (TDD)<br>(816) 426-3686 FAX | |
| **Region IV - AL, FL, GA, KY, MS, NC, SC, TN**<br>Office for Civil Rights, DHHS<br>61 Forsyth Street, SW. - Suite 16T70<br>Atlanta, GA 30303-8909<br>(404) 562-7886; (404) 562-7884 (TDD)<br>(404) 562-7881 FAX | **Region VIII - CO, MT, ND, SD, UT, WY**<br>Office for Civil Rights, DHHS<br>999 18th Street, Suite 417<br>Denver, CO 80202<br>(303) 844-2024; (303) 844-3439 (TDD)<br>(303) 844-2025 FAX | **Region X - AK, ID, OR, WA**<br>Office for Civil Rights, DHHS<br>701 Fifth Avenue, Suite 1600, MS - 11<br>Seattle, WA 98104<br>(206) 615-2290; (206) 615-2296 (TDD)<br>(206) 615-2297 FAX |

**Burden Statement**

Public reporting burden for the collection of information on this complaint form is estimated to average 45 minutes per response, including the time for reviewing instructions, gathering the data needed and entering and reviewing the information on the completed complaint form. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: HHS/OS Reports Clearance Officer, Office of Information Resources Management, 200 Independence Ave. S.W., Room 531H, Washington, D.C. 20201. **Please do not mail complaint form to this address.**

# COMPLAINANT CONSENT FORM

The Department of Health and Human Services' (HHS) Office for Civil Rights (OCR) has the authority to collect and receive material and information about you, including personnel and medical records, which are relevant to its investigation of your complaint.

To investigate your complaint, OCR may need to reveal your identity or identifying information about you to persons at the entity or agency under investigation or to other persons, agencies, or entities.

The Privacy Act of 1974 protects certain federal records that contain personally identifiable information about you and, with your consent, allows OCR to use your name or other personal information, if necessary, to investigate your complaint.

Consent is voluntary, and it is not always needed in order to investigate your complaint; however, failure to give consent is likely to impede the investigation of your complaint and may result in the closure of your case.

Additionally, OCR may disclose information, including medical records and other personal information, which it has gathered during the course of its investigation in order to comply with a request under the Freedom of Information Act (FOIA) and may refer your complaint to another appropriate agency.

Under FOIA, OCR may be required to release information regarding the investigation of your complaint; however, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

Please read and review the documents entitled, *Notice to Complainants and Other Individuals Asked to Supply Information to the Office for Civil Rights* and *Protecting Personal Information in Complaint Investigations* for further information regarding how OCR may obtain, use, and disclose your information while investigating your complaint.

**In order to expedite the investigation of your complaint if it is accepted by OCR, please read, sign, and return one copy of this consent form to OCR with your complaint. Please make one copy for your records.**

- As a complainant, I understand that in the course of the investigation of my complaint it may become necessary for OCR to reveal my identity or identifying information about me to persons at the entity or agency under investigation or to other persons, agencies, or entities.

- I am also aware of the obligations of OCR to honor requests under the Freedom of Information Act (FOIA). I understand that it may be necessary for OCR to disclose information, including personally identifying information, which it has gathered as part of its investigation of my complaint.

- In addition, I understand that as a complainant I am covered by the Department of Health and Human Services' (HHS) regulations which protect any individual from being intimidated, threatened, coerced, retaliated against, or discriminated against because he/she has made a complaint, testified, assisted, or participated in any manner in any mediation, investigation, hearing, proceeding, or other part of HHS' investigation, conciliation, or enforcement process.

**After reading the above information, please check ONLY ONE of the following boxes:**

[X] **CONSENT:** I have read, understand, and agree to the above and give permission to OCR to reveal my identity or identifying information about me in my case file to persons at the entity or agency under investigation or to other relevant persons, agencies, or entities during any part of HHS' investigation, conciliation, or enforcement process.

[ ] **CONSENT DENIED:** I have read and I understand the above and do not give permission to OCR to reveal my identity or identifying information about me. I understand that this denial of consent is likely to impede the investigation of my complaint and may result in closure of the investigation.

Signature: sigler, john Date: 01/05/2017

**Please sign and date this complaint. You do not need to sign if submitting this form by email because submission by email represents your signature.*

Name (Please print): sigler, john

Address: 13129 Stern Ave, La Mirada, California, 90638

Telephone Number: (714) 697-8576 (H)

# NOTICE TO COMPLAINANTS AND OTHER INDIVIDUALS ASKED TO SUPPLY INFORMATION TO THE OFFICE FOR CIVIL RIGHTS

**Privacy Act**

The Privacy Act of 1974 (5 U.S.C. §552a) requires OCR to notify individuals whom it asks to supply information that:

— OCR is authorized to solicit information under:
(i) Federal laws barring discrimination by recipients of Federal financial assistance on grounds of race, color, national origin, disability, age, sex, religion under programs and activities receiving Federal financial assistance from the U.S. Department of Health and Human Services (HHS), including, but not limited to, Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794), the Age Discrimination Act of 1975 (42 U.S.C. §6101 et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. §1681 et seq.), and Sections 794 and 855 of the Public Health Service Act (42 U.S.C. §§295m and 296g);
(ii) Titles VI and XVI of the Public Health Service Act (42 U.S.C. §§291 et seq. and 300s et seq.) and 42 C.F.R. Part 124, Subpart G (Community Service obligations of Hill-Burton facilities);
(iii) 45 C.F.R. Part 85, as it implements Section 504 of the Rehabilitation Act in programs conducted by HHS; and
(iv) Title II of the Americans with Disabilities Act (42 U.S.C. §12131 et seq.) and Department of Justice regulations at 28 C.F.R. Part 35, which give HHS "designated agency" authority to investigate and resolve disability discrimination complaints against certain public entities, defined as health and service agencies of state and local governments, regardless of whether they receive federal financial assistance.
(v) The Standards for the Privacy of Individually Identifiable Health Information (The Privacy Rule) at 45 C.F.R. Part 160 and Subparts A and E of Part 164, which enforce the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. §1320d-2).

OCR will request information for the purpose of determining and securing compliance with the Federal laws listed above. Disclosure of this requested information to OCR by individuals who are not recipients of federal financial assistance is voluntary; however, even individuals who voluntarily disclose information are subject to prosecution and penalties under 18 U.S.C. § 1001 for making false statements.

Additionally, although disclosure is voluntary for individuals who are not recipients of federal financial assistance, failure to provide OCR with requested information may preclude OCR from making a compliance determination or enforcing the laws above.

OCR has the authority to disclose personal information collected during an investigation without the individual's consent for the following routine uses:

(i) to make disclosures to OCR contractors who are required to maintain Privacy Act safeguards with respect to such records;
(ii) for disclosure to a congressional office from the record of an individual in response to an inquiry made at the request of the individual;
(iii) to make disclosures to the Department of Justice to permit effective defense of litigation; and
(iv) to make disclosures to the appropriate agency in the event that records maintained by OCR to carry out its functions indicate a violation or potential violation of law.

Under 5 U.S.C. §552a(k)(2) and the HHS Privacy Act regulations at 45 C.F.R. §5b.11 OCR complaint records have been exempted as investigatory material compiled for law enforcement purposes from certain Privacy Act access, amendment, correction and notification requirements.

**Freedom of Information Act**
A complainant, the recipient or any member of the public may request release of OCR records under the Freedom of Information Act (5 U.S.C. §552) (FOIA) and HHS regulations at 45 C.F.R. Part 5.

**Fraud and False Statements**
Federal law, at 18 U.S.C. §1001, authorizes prosecution and penalties of fine or imprisonment for conviction of "whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations or makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry".

# PROTECTING PERSONAL INFORMATION IN COMPLAINT INVESTIGATIONS

To investigate your complaint, the Department of Health and Human Services' (HHS) Office for Civil Rights (OCR) will collect information from different sources. Depending on the type of complaint, we may need to get copies of your medical records, or other information that is personal to you. This Fact Sheet explains how OCR protects your personal information that is part of your case file.

## HOW DOES OCR PROTECT MY PERSONAL INFORMATION?

OCR is required by law to protect your personal information. The Privacy Act of 1974 protects Federal records about an individual containing personally identifiable information, including, but not limited to, the individual's medical history, education, financial transactions, and criminal or employment history that contains an individual's name or other identifying information.

Because of the Privacy Act, OCR will use your name or other personal information with a signed consent and only when it is necessary to complete the investigation of your complaint or to enforce civil rights laws or when it is otherwise permitted by law.

Consent is voluntary, and it is not always needed in order to investigate your complaint; however, failure to give consent is likely to impede the investigation of your complaint and may result in the closure of your case.

## CAN I SEE MY OCR FILE?

Under the Freedom of Information Act (FOIA), you can request a copy of your case file once your case has been closed; however, OCR can withhold information from you in order to protect the identities of witnesses and other sources of information.

## CAN OCR GIVE MY FILE TO ANY ONE ELSE?

If a complaint indicates a violation or a potential violation of law, OCR can refer the complaint to another appropriate agency without your permission.

If you file a complaint with OCR, and we decide we cannot help you, we may refer your complaint to another agency such as the Department of Justice.

## CAN ANYONE ELSE SEE THE INFORMATION IN MY FILE?

Access to OCR's files and records is controlled by the Freedom of Information Act (FOIA). Under FOIA, OCR may be required to release information about this case upon public request. In the event that OCR receives such a request, we will make every effort,

as permitted by law, to protect information that identifies individuals, or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If OCR receives protected health information about you in connection with a HIPAA Privacy Rule investigation or compliance review, we will only share this information with individuals outside of HHS if necessary for our compliance efforts or if we are required to do so by another law.

**DOES IT COST ANYTHING FOR ME (OR SOMEONE ELSE) TO OBTAIN A COPY OF MY FILE?**

In most cases, the first two hours spent searching for document(s) you request under the Freedom of Information Act and the first 100 pages are free. Additional search time or copying time may result in a cost for which you will be responsible. If you wish to limit the search time and number of pages to a maximum of two hours and 100 pages; please specify this in your request. You may also set a specific cost limit, for example, cost not to exceed $100.00.

If you have any questions about this complaint and consent package,
Please contact OCR at http://www.hhs.gov/ocr/office/about/contactus/index.html

*OR*

Contact your OCR Regional Office
(see Regional Office contact information on page 2 of the Complaint Form)

**DEPARTMENT OF HEALTH & HUMAN SERVICES** **OFFICE OF THE SECRETARY**
Voice - (800) 368-1019
TDD - (800) 537-7697
FAX - (415) 437-8329
http://www.hhs.gov/ocr/

**Office for Civil Rights, Pacific Region**
**90 7th Street, Suite 4-100**
**San Francisco, CA 94103**

November 6, 2017

Mr. John Sigler
13129 Stern Avenue
La Mirada, CA 90638

Mr. Joe O'Neill, Privacy Official
HealthPointe Medical Group
16702 Valley View Avenue
La Mirada, CA 90638

Re: John Sigler vs. HealthPointe Medical Group
OCR Transaction Number: 17-258405

Dear Mr. Sigler and Mr. O'Neill:

The U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received a complaint on January 5, 2017, from Mr. John Sigler (Complainant). The Complainant alleged that HealthPointe Medical Group (HMG) was not in compliance with the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules).

Specifically, the Complainant alleged that HMG refused to provide complete copies of Complainant's protected health information, and that HMG retaliated against Complainant for filing a complaint with OCR by terminating him as a patient on or about August 8, 2016. These allegations reflected potential violations of 45 C.F.R. § 164.524 (individual access to protected health information) and 164.530(g) (refraining from intimidating or retaliatory acts). OCR notified HMG of this complaint by letter dated March 14, 2017.

OCR enforces the Privacy and Security Rules and also enforces Federal civil rights laws that prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and, under certain circumstances, sex and religion.

The Privacy Rule states that an individual has the right to access his/her protected health information (PHI), maintained by a covered entity in a designated record set, for as long as the PHI is maintained in the designated record set (e.g., medical or billing records). *See* 45 C.F.R. § 164.524(a)(1). The individual's right of access to his/her PHI maintained by the covered entity includes all PHI maintained by the covered entity, regardless of whether the covered entity created the PHI or not. *See* 65 Fed. Reg. 82462, 82731-82732 (Dec. 28, 2000). The Privacy Rule prohibits a covered entity from retaliating against anyone for submitting a privacy complaint, assisting or testifying in an investigation, or opposing any act or practice prohibited by the Privacy Rule as long as the manner of opposition is reasonable and the person had a good faith belief that the practice opposed is unlawful. 45 C.F.R. § 164.530(g).

**DISCUSSION AND ANALYSIS**

In response to OCR's contact, HMG stated that it provided Complainant with a complete copy of his records within its designated record set, totaling 185 pages of documents, on August 24, 2016, and

provided documentation of mailing the records to the Complainant by certified mail. The Complainant confirmed that he had received some of his records from HMG, but alleged that missing from the records he received were Requests for Authorization (RFA) of treatment and related correspondence (letters, emails and faxes) between HMG and his insurance provider regarding authorization or denial of treatment for him. HMG, however, told OCR it provided the Complainant with all of his RFAs, although they were not packaged together with their supporting documentation (doctor's progress notes), but that all RFAs were provided. HMG also told OCR that it provided the Complainant with copies of all correspondence, including letters and faxes, it sent or received regarding insurance authorization or denial of his treatment. HMG said it did not provide the Complainant with any email messages, as there were none in his designated record set because none existed related to insurance authorization or denial of treatment or any other medical decision-making regarding the Complainant.

As part of this investigation, OCR requested and reviewed HMG's policies and procedures regarding access to records, designated record set, retaliation, and patient termination. OCR provided technical assistance to HMG regarding its designated record set policy and HMG agreed to revise its policy to include images, such as X-rays. OCR also confirmed with HMG that no documents were excluded from the records sent to Complainant under this policy prior to its revision, as HMG reported that it has no images or X-ray records for the Complainant created by HMG or any other health care provider.

HMG stated that it terminated the doctor-patient relationship with Complainant by letter dated August 8, 2016, prior to learning of any HIPAA complaints made by Complainant. Complainant stated that he filed an initial complaint with OCR in July 2016; however, OCR has no record of receiving this complaint. HMG stated it was unaware of any complaint made to OCR on or before August 8, 2016. HMG further stated it terminated the doctor-patient relationship because Complainant became increasingly threatening in his communications with HMG staff. It appears HMG followed its provided policy on terminating patient care when terminating Complainant's care.

## CONCLUSION

After carefully considering all of the information gathered in this investigation, OCR is not able to substantiate Complainant's allegation that HMG has not provided him with a complete copy of his PHI maintained by HMG. Further, OCR is not able to substantiate Complainant's allegation that HMG retaliated against him by terminating him as a patient, because HMG was unaware of any of Complainant's HIPAA complaints before it made its decision. Therefore, OCR is closing this case. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Lesley Morgan, the investigator assigned to this complaint, at 206-615-2283 (Voice) or by email at Lesley.Morgan@hhs.gov. When calling this office, please reference the transaction number we have given this file, which is located at the top left corner of this page.

Sincerely,

Michael Leoz
Regional Manager