# United States District Court
# Central District of California

| | |
|---|---|
| JOHN W. SIGLER,<br><br>          Plaintiff,<br><br>     v.<br><br>U.S. DEPARTMENT OF HEALTH &<br>HUMAN SERVICES,<br><br>          Defendant. | Case № 2:18-cv-00683-ODW (JCx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [20]** |

## I. INTRODUCTION

This matter is before the Court on Defendant U.S. Department of Health and Human Services's ("HHS") Motion for Summary Judgment ("Motion") on *pro se* Plaintiff John W. Sigler's ("Sigler") Complaint pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* (ECF No. 20.) For the reasons that follow, the Court **GRANTS** HHS's Motion.[1]

## II. BACKGROUND

The parties agree on all material facts. On May 10, 2017, Sigler submitted a FOIA request to HHS seeking correspondence records related to Sigler's 2016 and 2017 Health Insurance Portability and Accountability Act ("HIPAA") complaints

---

[1] Having carefully considered the papers filed in connection with the motion, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

against his former health insurance provider, HealthPointe Medical Group ("HMG").[2] (HHS Separate Statement of Uncontroverted Facts ("SUF") 1, ECF No. 20-1.) As the Office of Civil Rights ("OCR") investigated Sigler's HIPAA complaints, HHS's FOIA office forwarded Sigler's FOIA request to OCR to search for responsive records. (SUF 5.)

OCR maintains records organized by OCR transaction number, regarding complaint investigations for HIPAA enforcement in the Program Information Management System ("PIMS"). (SUF 6–8.) HHS thus determined that it was reasonably likely that all records responsive to Sigler's FOIA request would be located in a search of PIMS. (SUF 9.) OCR searched PIMS for records responsive to Sigler's FOIA request by targeting the OCR transaction numbers Sigler provided. (SUF 10.) OCR identified records relating to Sigler's 2016 HIPAA complaint and, in June 2017, HHS released those documents to Sigler after applying FOIA exemptions to three pages. (SUF 11–12; Decl. of Michael S. Marquis[3] ("Marquis Decl.") ¶ 14, ECF No. 20-3.) Documents pertaining to Sigler's 2017 HIPAA complaint were not included in this release because OCR was continuing to investigate the matter. (SUF 13.)

In September 2017, Sigler filed an administrative appeal contending HHS was withholding documents related to the 2017 HIPAA complaint. He also re-filed his original FOIA request. (SUF 14–15.) In October 2017, HHS sent Sigler an

---

[2] Sigler disputes whether HHS sent a formal acknowledgment letter of his initial FOIA request (SUF 3) on the basis that Sigler does not have such a letter in his records (*see* Pl.'s Statement of Genuine Issues of Material Fact ("SGI") 3, ECF No. 22). However, whether HHS sent a letter and whether Sigler currently possesses one are two distinct questions, neither of which is material to the disposition of this Motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* 5 U.S.C. § 552(b).

[3] Sigler contends that Mr. Marquis lacks personal knowledge concerning the FOIA letters and responses because Mr. Marquis did not sign the letters. However, Mr. Marquis makes his declaration based on his personal knowledge and information available to him in his official capacity managing FOIA request searches and responses. (Marquis Decl. ¶¶ 1–3.) Generally, "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy" the personal knowledge requirement of Federal Rule of Civil Procedure 56(e). *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 990 (9th Cir. 2009).

acknowledgement letter of the appeal and assigned Sigler's re-filed FOIA request a tracking number. (SUF 16–17.) However, HHS closed the second request in January 2018 after discovering it was a duplicate of the first. (SUF 18; *see also* Marquis Decl. ¶ 20.) Also, in January 2018, HHS notified Sigler that OCR had conducted an additional search for records responsive to his 2017 HIPAA Complaint and HHS would review and process those records. (SUF 19–21; Marquis Decl. ¶¶ 22–25.)

HHS provided Sigler with supplemental responses in February 2018, October 2018, and November 2018. (SUF 21–26.) With each supplemental release, HHS reviewed and re-processed the responsive documents and reduced the withheld material. (SUF 21–26.) The final supplemental release resulted in 308 pages, consisting of 212 pages released in full, 9 pages with partial redactions, and 87 pages withheld entirely. (Marquis Decl. Ex. 10; *id.* ¶¶ 26–27.)[4]

On January 26, 2018, before HHS provided Sigler with its supplemental responses, Sigler filed the Complaint in this action. (*See* Compl., ECF No. 1.) Through his Complaint, Sigler asserts that HHS improperly withheld documents responsive to his FOIA request. (Compl. ¶ 1.) He filed the FOIA request "to obtain the status of the OCR HIPAA violation investigation." (Compl. ¶ 19.) Sigler alleges that HHS "purposely failed to conclude the investigation for the sole purpose of denying the Plaintiff access to the documentation." (Compl. ¶ 20.)

HHS moves for summary judgment on the basis that it conducted an adequate search for records responsive to Sigler's FOIA request and properly withheld exempted information pursuant to FOIA Exemptions 4, 5, 6, 7(C), and 7(E), 5 U.S.C.

---

[4] The parties do not dispute that, in October 2017, HHS released 193 pages in their entirety, 8 pages with partial redactions, and 107 pages withheld entirely. (SUF 24.) They also do not dispute that the November 2017 supplemental release removed an exemption from twenty pages and recoded one prior withholding as Exemptions 6(b) and 7(C). (SUF 26–27; Marquis Decl. ¶ 27.) After careful review of the *Vaughn* Index and the 308 pages released (Marquis Decl. Ex. 10), the Court finds this resulted in a total of 212 pages released in full, 9 pages partially redacted, and 87 pages entirely withheld. Although the parties do not clarify the results of this supplemental modification in the moving or opposition papers, the *Vaughn* Index and Marquis Declaration are consistent on this point.

§§ 552(b)(4), (5), (6), (7)(C), (7)(E). (Mot. 1, ECF No. 21-1.).[5]

### III.   LEGAL STANDARD

As is true in most FOIA cases, the material facts here are not in dispute. The only disputes are whether HHS: (1) properly determined that certain documents responsive to Sigler's FOIA request fall within Exemption 7(E); and (2) disclosed all reasonably segregable, nonexempt material. *See* 5 U.S.C. §§ 552(b), (7)(C); (*see generally* Opp'n*,* ECF No. 23). These disputes are properly resolved on a motion for summary judgment. *See* Fed. R. Civ. P. 56(a) (summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

"Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc); *see also Cameranesi v. Dep't of Def.*, 856 F.3d 626, 636 (9th Cir. 2017) ("We have now overruled [the] FOIA–specific summary judgment standard, and instead apply our usual summary judgment standard."). Summary judgment is appropriate only if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 248. However, "if there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing." *Animal Legal Def. Fund*, 836 F.3d at 990. The district's court's review of the agency's decision is *de novo* and the agency bears the burden of persuasion. 5 U.S.C. § 552(a)(4)(B).

---

[5] Although both parties initially expressed the intent to file cross-motions for summary judgment, Sigler did not file a motion. (*See* Joint Report 17–18, ECF No. 17.) As such, Sigler's "Reply" constitutes an impermissible sur-reply to HHS's Motion. *See* L.R. 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply."). Accordingly, the Court **does not consider** Sigler's "Reply." (ECF No. 33.)

## IV. DISCUSSION

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Act "was not intended to function as a private discovery tool." *Id.*

"Upon request, FOIA mandates disclosure of records held by a federal agency unless the documents fall within enumerated exemptions." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001) (internal citations omitted); *see* 5 U.S.C. § 552(b). The Act provides nine, narrowly construed exemptions, "reflect[ing] a recognition that 'legitimate governmental and private interests could be harmed by release of certain types of information.'" *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Justice ("ACLU-NC")*, 880 F.3d 473, 483 (9th Cir. 2018) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). An agency may withhold only exempted information and must provide all "reasonably segregable" portions of that record to the requester. 5 U.S.C. § 552(b).

The agency bears the burden to justify withholding under FOIA's exemptions and "establish that all reasonably segregable portions of a document have been segregated and disclosed." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 779 (9th Cir. 2015) (quoting *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008)). "The agency can meet this burden by providing the district court with a reasonably detailed description of the withheld material and alleging facts sufficient to establish an exemption."[6] *Id.* (internal quotation marks omitted).

An agency's declarations are given substantial weight regarding the application of a FOIA exemption and are not required "to 'specify . . . objections [to disclosure] in

---

[6] "Government agencies must submit an affidavit pursuant to *Vaughn* [*v. Rosen,*] 484 F.2d 820 [(D.C. Cir. 1973)], identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." *Lahr*, 569 F.3d at 986 (internal quotation marks omitted); *see also ACLU-NC*, 880 F.3d at 491 n.6.

such detail as to compromise the secrecy of the information.'" *Bowen v. FDA*, 925 F.2d 1225, 1227 (9th Cir. 1991) (first alteration in original) (quoting *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987)); *see also Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) ("We accord substantial weight to an agency's declarations . . . ."). "Agency affidavits that are sufficiently detailed are presumed to be made in good faith and may be taken at face value." *Hamdan*, 797 F.3d at 779. Thus, where an agency's declarations "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Lewis*, 823 F.2d at 378 (citation and internal quotation marks omitted).

## A. FOIA R<small>EQUEST</small>

HHS moves for summary judgment on the basis that it conducted an adequate search for documents responsive to Sigler's request, appropriately applied FOIA Exemptions 4, 5, 6, 7(C), and 7(E), and reasonably segregated and disclosed any nonexempt material. (Mot. 1.) Sigler does not challenge the adequacy of HHS's search or the application of Exemptions 4, 5, 6, or 7(C). Rather, Sigler contends that HHS improperly withheld sixty-three pages under Exemption 7(E) and did not reasonably segregate and disclose nonexempt material. (*See* Opp'n 17–20; SGI 25.)

*1. Adequate Search*

"FOIA requires an agency responding to a request to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents. This showing may be made by reasonably detailed, nonconclusory affidavits submitted in good faith." *Lahr*, 569 F.3d at 986 (citation and internal quotation marks omitted). Plaintiffs are "entitled to a reasonable search for records, not a perfect one." *Hamdan*, 797 F.3d at 772.

HHS contends its search was reasonably calculated to locate the relevant documents. (Mot. 5–6.) Sigler raises no genuine dispute of material fact regarding the adequacy of HHS's search. (*See generally* Opp'n; SGI 4–10 (undisputed).) HHS supported the adequacy of its search with the Marquis Declaration, which explained

that: (1) the FOIA office forwarded Sigler's request to OCR as the investigating agency; (2) OCR maintains records having to do with complaints in PIMS and organized by OCR transaction number; (3) Sigler requested records related to his HIPAA complaints, which had been assigned OCR transaction numbers; and (4) OCR conducted records searches of PIMS using the transaction numbers Sigler provided. These undisputed facts demonstrate that HHS conducted a search "reasonably calculated to uncover all relevant documents" relating to the investigation of Sigler's HIPAA complaints. Accordingly, HHS is entitled to summary judgment on this issue.

        2.     *Exemptions 4, 5, 6, and 7(C)*

HHS contends it properly withheld certain information under FOIA Exemptions 4, 5, 6, 7(C), and 7(E). (Mot. 6–7; Marquis Decl. ¶ 26.) Sigler raises no genuine dispute of material fact and does not challenge HHS's application of FOIA Exemptions 4, 5, 6, and 7(C). (*See generally* Opp'n; SGI 25–27 (disputing only SUF 25 as to Exemption 7(E) and segregability).)

HHS applied Exemption 4 to twenty-one pages. (Mot. 7; Marquis Decl. Ex. 10 ("*Vaughn* Index") 3, ECF No. 20-13.) Exemption 4 exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). HHS withheld twenty-one pages pursuant to Exemption 4 "consist[ing] of confidential commercial information" provided by HMG and relating to HMG's internal policies. (Mot. 7.) HHS submitted a *Vaughn* index explaining the documents were withheld because they constituted "confidential, commercial information obtained from HMG" and "release would impair HHS's ability to obtain these types of internal policies in the future." (*Vaughn* Index 3.) The *Vaughn* Index further described the documents' contents as "HMG's internal training policies [11 pages]" and "list[s] of HMG employees and whether they have completed training course [6 and 4 pages]." (*Vaughn* Index 3.) The Marquis Declaration also explained that the withheld documents were confidential, commercial internal policies, not available to the public. (*See* Marquis Decl. ¶¶ 31–34.) As such, HHS has

met its burden to justify the Exemption 4 withholdings. *See Hamdan*, 797 F.3d at 772 (noting an agency can meet its burden by providing reasonably detailed descriptions of withheld material and facts sufficient to establish the exemption).

HHS applied Exemption 5 to portions of one document consisting of two pages. (Mot. 8–9.) Exemption 5 exempts disclosures of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption encompasses communications from government contractors and consultants. *See Klamath*, 532 U.S. at 9–10. HHS withheld portions of two pages of an email exchange between OCR employees and an OCR contractor "regarding the handling and status of a complaint and interpretations of what that status means." (Mot. 9.) Mr. Marquis explained the redacted portions are exempted under the deliberative process privilege, as a "predecisional, deliberative, intra-agency discussion" regarding an OCR complaint. (*See* Marquis Decl. ¶¶ 35–37.) The *Vaughn* Index describes the portions of the documents redacted and the reasoning for application of the Exemption, consistent with the above. (*Vaughn* Index 2.) Accordingly, HHS has met its burden to justify the Exemption 5 withholdings.

HHS applied Exemption 6 to portions of seven pages and Exemption 7(C) to portions of six of those seven pages. (Mot. 9–11; *see Vaughn* Index 1–3.) Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). "[T]o determine whether a record is properly withheld [under Exemptions 6 and 7(C)], [courts] must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure." *Lahr*, 569 F.3d at 973 (citing *Nat'l Archives &*

*Records Admin. v. Favish,* 541 U.S. 157, 171 (2004)).

HHS applied targeted redactions under Exemptions 6 and 7(C) to portions of seven pages, to withhold "notes by OCR investigator from a telephone interview"; "name[s] of employee[s] at HMG" who received information from OCR or were referenced in investigation emails; the "email address of employee at HMG"; and the "phone number of congressional staffer." (*Vaughn* Index 1–3.) The Court agrees with HHS that disclosure of this identifying information, the names and contact information of individuals who provided information to OCR, can reasonably be expected to constitute an "unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6), (7)(C). (*See also* Marquis Decl. ¶¶ 38–40.) Further, disclosure of this personal identifying information sheds no light on HHS's "performance of its statutory duties." *Lahr*, 569 F.3d at 974 ("[T]he *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.") Finally, Sigler does not challenge these withholdings and has not shown that the interest in disclosure is a "significant one, an interest more specific than having the information for its own sake" or that disclosure is likely to advance such an interest. *See id.*; (*see generally* Opp'n). Accordingly, HHS has met its burden to justify the Exemptions 6 and 7(C) withholdings.

HHS provided a reasonably detailed description of the withheld material and alleged facts sufficient to establish each of the above exemptions. As such, HHS has satisfied its burden to justify the withholdings under FOIA Exemptions 4, 5, 6, and 7(C) and the Court grants summary judgment as to these exemptions.

3. *Exemption 7(E)*

HHS applied Exemption 7(E) to sixty-six pages. (Mot. 12.) Sigler challenges HHS's withholding of sixty-three of those pages, specifically those identified as "HMG's response to data request." (Opp'n 18.) "Exemption 7(E) protects records

compiled for law enforcement purposes from disclosure if those records 'would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'" *Hamdan*, 797 F.3d at 777 (quoting 5 U.S.C. § 552(b)(7)(E)).

Under Exemption 7(E), HHS withheld pages consisting of the investigative "[d]ata request sent to HMG" and "HMG's response to data request." (*Vaughn* Index 2–3.) Sigler argues that the *Vaughn* Index and Marquis Declaration are insufficient because they are vague and inadequate. (Opp'n 18.) However, in the *Vaughn* Index, Marquis Declaration, and HHS's moving papers, HHS describes the documents withheld, identifies the exemption claimed, and explains that the documents fall within Exemption 7(E) because they reflect procedures and techniques used during the investigation of HIPAA complaints. *See Lahr*, 569 F.3d at 989 (listing requirements for a *Vaughn* Index); (*see Vaughn* Index 2, 3; Marquis Decl. ¶¶ 39, 41; Reply 3–4, ECF No. 32).

Further, the *Vaughn* Index explains that information was withheld under 7(E) because it "includes information on types of questions asked and documents requested by OCR investigators during the course of an investigation" and "[r]elease of this information would enable entities named in complaints to interfere with OCR's complaint investigation and information collection." (*Vaughn* Index 3.) Mr. Marquis explained that "[f]ailure to protect [the] techniques and procedures [that OCR used during the investigation of Sigler's HIPAA complaints] would allow those entities being investigated to circumvent the law by revealing the types of questions and information that OCR uses in an investigation." (Marquis Decl. ¶ 41.) Thus, HHS's supporting declarations provide sufficient facts and reasoning to establish the exemption. *See Bowen*, 925 F.2d at 1227 (discussing that an agency may describe the general nature of the investigative technique and need not disclose full details).

Sigler also challenges the veracity and good faith of the Marquis Declaration. (Opp'n 13–15.) Sigler argues that Marquis's Declaration must be disregarded entirely because Marquis states HHS sent Sigler a letter in May 2017 (Marquis Decl. ¶ 9; SUF 3), but Sigler does not have this letter in his records (Opp'n 13–15; SGI 3; Decl. of John. W. Sigler—Formal Acknowledgement Letter, ECF No. 24). Sigler does not challenge any other statements in the Marquis Declaration but argues that the Court should impute falsehood to the entire declaration. (*See* Opp'n 13–15.) "Affidavits submitted by an agency to demonstrate the adequacy of its FOIA response are presumed to be in good faith." *Hamdan*, 797 F.3d at 772. After a careful and searching review of all materials submitted by both parties, the Court finds no reason to doubt HHS's and Mr. Marquis's good faith. "As the Supreme Court cautioned in a case involving FOIA, government misconduct is 'easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing.'" *Id.* (quoting *Nat'l Archives*, 541 U.S. at 175). Sigler has made no such meaningful showing here.

As the Court concludes that HHS appropriately withheld information pursuant to Exemption 7(E), the Court grants summary judgment as to this exemption.

*4. Reasonably Segregated*

HHS contends it has reasonably segregated and released all nonexempt material. (Mot. 12–13.) Sigler disagrees. (Opp'n 19–20.) Under the FOIA, any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "The district court may rely on an agency's declaration in making its segregability determination. Agency affidavits that are sufficiently detailed are presumed to be made in good faith and may be taken at face value." *Hamdan*, 797 F.3dat 779 (citing *Pac. Fisheries*, 539 F.3d at 1148 and *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)).

HHS has met its burden "to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries*, 539 F.3d at 1148.

HHS released non-exempt documents and, where redactions were required, narrowly targeted those redactions to omit only the exempt information. The documents that HHS withheld in their entirety were commercial information under Exemption 4 and investigative procedures and techniques for law enforcement purposes under Exemption 7(E), which HHS asserts have no segregable parts. (Mot. 13.) The Marquis Declaration further explains why the documents at issue are exempt, what information was withheld, and that "[a]ll reasonably segregable non-exempt information was segregated and released." (Marquis Decl. ¶¶ 29–42.)

The case of *Hamdan v. U.S. Department of Justice* is instructive. 797 F.3d at 778–81. There, the Ninth Circuit provided guidance regarding the sufficiency of a segregability analysis by comparing declarations from three agencies: the State Department, the Federal Bureau of Investigation ("FBI"), and the Defense Intelligence Agency ("DIA"). *Id.* The court found the State Department's declarations more than sufficient; they were highly detailed, identified each document individually, and provided an individualized explanation for the material being withheld. *Id.* at 780. Although less "robust," the court found the FBI's declarations sufficiently detailed to be taken at face value. The court explained the FBI's declarations were sufficient because they "provide specific reasons why the disclosure of information would be harmful" and "specifically state[] that no reasonably segregable nonexempt portions were withheld." *Id.* The court noted the FBI declarations were "supported by the partially redacted documents that the FBI produced" demonstrating that the FBI released what it could after redacting "the bare minimum of information." *Id.* In contrast, the court found the DIA declarations "lack sufficient detail to allow the district court to determine that the claimed exemptions apply throughout all of the documents." *Id.* at 781. The DIA withheld documents in their entirety, where the documents varied in length and classification, but were withheld for the same reason. Further, the DIA's declarations were self-contradictory and the DIA failed to indicate that it "considered releasing reasonably segregable information." *Id.* The court

determined that it the DIA's declarations could not be taken at face value. *Id.*

Here, the HHS declarations most closely resemble the FBI's declarations described in *Hamdan*. HHS withheld information by targeting specific redactions where possible and releasing the remainder of the non-exempt document; for example, when applying Exemptions 6 and 7(C). HHS explained why the information withheld was exempt. Finally, like the FBI in *Hamdan*, HHS specifically states that "[a]ll reasonably segregable non-exempt information was segregated and released." (Marquis Decl. ¶ 42.) Although declarations more closely resembling the State Department declarations in *Hamdan* may be preferred, HHS has carried its burden to provide sufficiently detailed information to allow the Court to take HHS's declarations at face value. Accordingly, the Court finds that HHS segregated and released all reasonably segregable, nonexempt information and grants HHS summary judgment as to segregability.

## B. ADDITIONAL MATTERS

### 1. Meet and Confer

Sigler contends the Court should deny HHS's Motion outright because HHS failed to meet and confer pursuant to Local Rule 7-3. (Opp'n 9.) Local Rule 7-3 requires counsel or parties contemplating motion practice to "contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. L.R. 7-3. The parties met and conferred regarding the Rule 26f Joint Report, discussing at that time that HHS and Sigler both anticipated filing a motion for summary judgment and the issues in dispute. (*See* Decl. of Matthew J. Barragan ¶ 3, ECF No. 20-2; Joint Report 17–18.) The Court finds the parties conference regarding the Joint Report sufficient under the circumstances and declines to deny HHS's Motion on this basis.

### 2. Discovery

Sigler requests that summary judgment be denied or deferred to allow him to take discovery. (Opp'n 10–12.) District courts typically resolve actions to enforce

FOIA on summary judgment. *See, e.g.*, *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008). As the issue in a FOIA case is whether one party will disclose documents to the other, "courts may allow the government to move for summary judgment before the plaintiff conducts discovery." *Id.* Accordingly, discovery is only appropriate where "an agency has not taken adequate steps to uncover responsive documents," and discovery requests will be denied "where an agency's declarations are reasonably detailed, submitted in good faith, and the court is satisfied that no factual dispute exists." *Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1132 (N.D. Cal. 2008). The Court previously denied Sigler's request to conduct discovery, noting that he may renew his request in his opposition to HHS's motion for summary judgment if he "still contends that HHS has not met its burden in establishing it effectively searched for" responsive documents. (*See* Suppl. Order Setting Briefing Schedule 2–3, ECF No. 19.) First, Sigler does not challenge the adequacy of HHS's search. (*See generally* Opp'n.) Second, as discussed, the Court finds HHS's search adequate and its declarations reasonably detailed and in good faith. Third, there are no genuine disputes of material fact here. (*See* SGI.) Thus, discovery is not warranted.

## V. CONCLUSION

For the reasons discussed above, the Court finds that no genuine disputes of material fact exist and the Motion and supporting materials entitle HHS to summary judgment as a matter of law. Accordingly, the Court **GRANTS** HHS's Motion for Summary Judgment. (ECF No. 20.) The Court will issue Judgment.

**IT IS SO ORDERED.**

September 30, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**